UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSHUA RAWA, on behalf of himself and all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) MONSANTO COMPANY, ) ) Defendant. ) | Case No. 4:17CV01252 AFG |

## MEMORANDUM AND ORDER

This putative class action filed under the Missouri Merchandise Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*, ("MMPA") is before the Court on Defendant Monsanto Company's motion to dismiss Plaintiff's complaint for failure to state a claim. Plaintiff claims that Defendant overstated, on its products' labels, the number of gallons of spray solution Monsanto's Roundup Concentrates would make. For the reasons set forth below, the motion will be granted in part and denied in part.

## BACKGROUND

The record establishes the following as relevant to the motion to dismiss. In the spring of 2016, Plaintiff purchased a 35.2oz container of Roundup Weed & Grass Killer Super Concentrate ("Super Concentrate"). On the front of the container near the top, a small separate label stated, "Makes Up to 23 Gallons." Near the bottom of the main front label, appeared the statement, "KILLS THE ROOTS GUARANTEED."



On the back of the container, a multipage booklet label was attached. The front of the booklet label included a circular diagram indicating "WHERE TO USE," "WHAT TO KNOW," and "HOW TO USE." Within the "HOW TO USE" section, the circular diagram had two statements: "2½ fl oz Per Gallon of Water" and "Use a Tank Sprayer." Using a ratio of 2½ fluid ounces of the concentrate per gallon of water would yield 14.08 gallons of solution.

Below the circular diagram, on the front of the booklet label, was the statement,

>Guaranteed Satisfaction
>Open booklet for details

Also on the back of the container, vertically alongside the booklet label, appears the statement, "Resealable Label for Directions & Precautions." On the front of the booklet

label there is a symbol indicating that the label could be peeled back, with the instruction, "OPEN," in the top right corner.



When the front of the booklet label is peeled back as instructed, the contents include "DIRECTIONS FOR USE," "PRODUCT FACTS," "MIXING INSTRUCTIONS," and "ADDITIONAL TIPS." Under the mixing instructions, the directions provide two different dilution options: "For best results, add 2-1/2 fl oz (5 Tbs) to 1 gallon of water," and "For easy to kill weeds such as seedlings, add 1-1/2 fl oz (3 Tbs) to 1 gallon of water." Using a ratio of 1-1/2 fluid ounces of the concentrate per gallon of water would yield 23.46 gallons of solution.

Plaintiff purchased and used the product without opening the back booklet label, instead relying on the dilution rate provided by the circular diagram on the front of the booklet label, "2½ fl oz Per Gallon of Water." As a result, Plaintiff obtained 14.08

gallons of the solution, not approximately 23 gallon as represented on the front of the container. Defendant sells Super Concentrate in other sizes, as well as Roundup Concentrate Plus in various sizes. All of these products have essentially the same labelling scheme as the container Plaintiff purchased.

Plaintiff claims that the "up to" amount displayed on the front of the container was deceptive, as it was based, not on the mixing direction on the front of the back booklet label, but on a mixing instruction "buried" inside the booklet label, an instruction reasonable consumers would not see before purchasing the product in that they would not feel they were permitted to open the booklet label before purchase. Plaintiff asserts that this labeling and marketing practice violates the MMPA, citing to all acts prohibited by the statute: deception; fraud; false pretense; false promise; misrepresentation; unfair practice; and concealment, suppression, or omission of material fact.

Plaintiff seeks to represent a class of all persons who, on or after April 5, 2012, purchased in the United States, other than in California, for personal or household use, various sizes of Super Concentrate or Concentrate Plus. Plaintiff alleges that he and the other putative class members have suffered an ascertainable loss within the meaning of the MMPA, because the actual value of the Roundup Concentrate they purchased was less than the value of the product as represented. Plaintiff asks for an order appointing Plaintiff as class representative and his counsel as class counsel, and requiring Defendant to bear the cost of class notice. For relief, Plaintiff requests an order compelling

Defendant to conduct a corrective advertising campaign; actual and punitive damages, including interest; and attorney's fees and costs.

## ARGUMENTS OF THE PARTIES

Defendant first argues that the "Up to X Gallons" labeling statement is not in violation of the MMPA because it is objectively true and not a misrepresentation. According to Defendant, "makes up to" describes the upper boundary of a range of gallons that can be made, and a reasonable consumer would understand this and be on notice that there are different dilution rates. Defendant characterizes the "2½ fl oz Per Gallon of Water" statement in the circular diagram on the back label as just an example of how to use the product. Defendant cites several cases holding, under other states' consumer protection laws, that where "up to" was claimed on a product's package with an explanation of how that amount would vary, a reasonable consumer would not have been deceived.

Defendant next asserts that regulations of the Environmental Protection Agency ("EPA") under the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136-136y ("FIFRA"), mandate that herbicides such as Roundup have labels that include directions for use and mixing instructions, and allow such information to be on a booklet label securely attached to the container. Defendant submits an exhibit (ECF No. 21-2) that shows that the EPA approved the labelling scheme that Plaintiff challenges. Defendant argues that, therefore, Plaintiff's claims of concealment, suppression, or omission, presumably based on the allegation that the two possible mixing options were

"buried" in the back booklet label, are pre-empted by FIFRA. According to Defendant, "Plaintiff is not alleging that any statement is false, but is rather alleging that the placement of mixing instructions in Monsanto's EPA-approved label is wrong. But because the presentation and location of these mixing instructions are set by federal law, a conflict would occur if Plaintiff's claims were allowed to go forward." ECF No. 21 at 8.

Defendant further argues that Plaintiff failed to allege the required scienter to support his claims for false pretenses, false promises, and omissions of material fact. Defendant also argues that Plaintiff failed to allege an ascertainable loss under the MMPA because the actual value of the product is the same as the value that was represented. Lastly, Defendant argues that Plaintiff lacks standing to bring claims, on his own behalf or as a class representatives, based on Concentrate Plus because he did not purchase that product, and the plain language of the MMPA only allows claims for products purchased by the party bringing an action.

In response to the motion to dismiss, Plaintiff asserts that even if the "Up to X Gallons" statement is "in some sense true," the question of whether a reasonable consumer would be deceived by it, in light of the dilution directions in the circular diagram on the front of the booklet label, is a question properly left to a jury. Plaintiff contends that Defendant mischaracterized Plaintiff's MMPA claims of concealment, suppression, and omission, and that these claims are not pre-empted by FIFRA because they are based on alleged deception, not placement of information. Plaintiff asserts that

6

he has alleged sufficient facts to state MMPA claims for false pretenses, false promises, and omission because the Court could draw a reasonable inference from Plaintiff's allegations as a whole that Defendant knew or should have known of the deceptive nature of its labeling. Plaintiff requests leave to amend if the Court disagrees, so that he may allege specific facts to satisfy the scienter requirement.

Plaintiff argues that he has also sufficiently alleged an ascertainable loss because the actual value of the Super Concentrate product at issue was worth less than what he paid for it because the packaging led him to believe the Super Concentrate would produce more gallons than it actually yielded. And Plaintiff argues that he has standing regarding Concentrate Plus claims because the labelling on that product is substantially similar to that of the product actually purchased by Plaintiff and results in substantially the same injury. In the alternative, if the Court disagrees, Plaintiff requests leave to amend the complaint to join as a plaintiff an individual who purchased Concentrate Plus. In Reply, Defendant essentially reasserts its arguments for dismissal.

## **DISCUSSION**

### **Motion to Dismiss Standard**

For a plaintiff to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The reviewing court must accept the

plaintiff's factual allegations as true and construe them in the plaintiff's favor, but the court is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Id.*; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). The Court must draw on its judicial experience and common sense, and consider "the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *See Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

The only cause of action brought in this diversity suit is a violation of the MMPA. A federal court sitting in diversity is bound by the decisions of the state's highest court on issues of state law. Absent controlling law from the highest court of the state, the federal court must attempt to predict what the state supreme court would decide if it were to address the issue; in pursuing such endeavor, the federal court may consider "relevant state precedent, analogous decisions, . . . and any other reliable data." *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011) (citation omitted).

**MMPA Claims**

The MMPA, in relevant part, declares unlawful the "use . . . of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise . . ." Mo. Rev. Stat. § 407.020.1. Civil actions may be brought under the MMPA to recover actual damages by "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an

8

ascertainable loss of money or property, real or personal, as a result of [an unlawful practice]." § 407.025.1. The MMPA also specifically authorizes class actions where an unlawful practice "has caused similar injury to numerous other persons." § 407.025.2.

Missouri courts have explained the pleading requirements as follows:

The MMPA . . . protects consumers by expanding the common law definition of fraud "to preserve fundamental honesty, fair play and right dealings in public transactions." To prevail on a claim under the MMPA, a plaintiff must plead and prove he or she (1) purchased merchandise (which includes services) from defendants; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the Merchandising Practices Act.

*Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 310–11 (Mo. Ct. App. 2016) (citations omitted).

On a motion to dismiss, the "MMPA requires courts to make case-by-case determinations of whether a defendant's conduct violates principles of fair dealing." *Toben v. Bridgestone Retail Operations, LLC*, 2013 WL 5406463, at *2 (E.D. Mo. Sept. 25, 2013), *aff'd*, 751 F.3d 888 (8th Cir. 2014). Where a court "can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 761 (W.D. Mo. 2015) (citation omitted). Courts applying the MMPA often recognize, however, that whether a reasonable consumer would be deceived by a product label is often a question of fact that cannot be resolved on a motion to dismiss. *See Bratton v. Hershey Co.*, No. 2:16-CV-4322-C-NKL, 2017 WL 2126864, at *7 (W.D. Mo. May 16, 2017) (stating, "how a reasonable consumer would perceive certain packaging

information was a question appropriately addressed on a motion for summary judgment or trial, not a motion to dismiss"; and holding that a label stating net weight and number of candy pieces per serving was insufficient to defeat a plaintiff's claim that candy boxes were made with excessive empty space that deceived consumers into thinking there was more candy inside than there actually was); *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312 (Mo. Ct. App. 2016) (holding that it could not be said, as a matter of law, that the term "all natural" on the front of a cupcake mix package would not mislead consumers when the list of ingredients on the back included as an ingredient, "SAPP," a chemical that acts as a leavening agent).

Here, the Court believes that the Missouri Supreme Court would hold that it cannot be said as a matter of law that Super Concentrate's labelling was not deceiving. The Court takes due regard of "up to" cases from other jurisdictions, that generally reason that where "up to" was claimed and accompanied by an explanation of how to achieve that amount, or how that amount would vary, a reasonable consumer would not have been deceived. *See, e.g., Maloney v. Verizon Internet Servs., Inc.*, 413 F. App'x 997, 999 (9th Cir. 2011). The "Makes Up to 23 Gallons" label on the front of Super Concentrate may well put a reasonable consumer on notice to check elsewhere on the container's labelling for mixing directions to obtain that yield. And indeed, mixing directions were provided on the circular diagram on the front of the back booklet label. But those directions, if followed, would result in much less than 23 gallons of weed killer. Significantly, the front of the booklet label did not direct a consumer to check the

inside of the booklet label for other mixing options; nor did any part of the labelling on the front of the container. And the front of the back label did not qualify that the listed ratio was for the strongest solution, with more diluted options available. Under these circumstances, the Court find persuasive Plaintiff's argument that a fact question is presented as to whether a reasonable consumer would open the booklet label to search for a mixing option that would yield 23 gallons of weed killer.

**FIFRA Preemption**

FIFRA requires all pesticides, such as Roundup, to be registered with the EPA prior to sale or distribution. 7 U.S.C. § 136a(a). The EPA will not register a pesticide if it is "misbranded"; a pesticide is "misbranded" if, inter alia, "its labeling bears any statement, design, or graphic representation relative thereto or to its ingredients which is false or misleading in any particular." *Id*. § 136(q)(1). FIFRA has an express preemption provision, which provides that a "State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." *Id*. § 136v(b). It is undisputed that the EPA has registered Roundup Concentrates and approved the labeling Plaintiff now challenges.

In *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), the Supreme Court held that "a state-law labeling requirement is not pre-empted by § 136v(b) if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions." *Bates*, 544 U.S. at 447. In *Martin v. Monsanto Co*., No. EDCV162168JFWSPX, at *4 (C.D. Cal. Feb. 16, 2017), a case against Defendant now pending in California district court, raising, under

11

California's consumer protection statute, identical claims as those raised here, the district court rejected the preemption argument now advanced by Defendant in this case. The court stated that Defendant failed to demonstrate that the California statue, which is analogous to the MMPA, imposed any labeling or packaging requirements that were "in addition to or different from those required under [FIFRA]." This Court believes the Missouri Supreme Court would likewise reject Defendant's FIFRA preemption argument.

**Scienter**

As Defendant argues, claims of omission of material fact, false promise, and false pretense under the MMPA, "involve the intent of the person making the false representation." *Claxton v. Kum & Go, L.C*., No. 6:14-CV-03385-MDH, 2014 WL 6685816, at *5 (W.D. Mo. Nov. 26, 2014); *see also Daryl White v. Just Born, Inc*., No. 2:17-CV-04025-C-NKL, 2017 WL 3130333, at *8 (W.D. Mo. July 21, 2017) ("A plaintiff claiming omission of material fact under the MMPA must show the defendant failed to disclose material facts that were 'known to [it], or upon reasonable inquiry would [have been] known to [it].'") (citation omitted). Here, the Court agrees with Plaintiff that this level of intent can be inferred from the complaint as a whole. *See White*, 2017 WL 3130333, at *9.

**Ascertainable Loss**

Defendant's argument that Plaintiff has failed to allege an ascertainable loss is without merit. "A plaintiff adequately pleads this element of an MMPA claim if he alleges an ascertainable loss under the benefit-of-the-bargain rule, which compares the

actual value of the item to the value of the item if it had been as represented at the time of the transaction." *Murphy*, 503 S.W.3d at 313. "[U]nder the benefit of the bargain rule as applied to MMPA claims, Plaintiff need only allege that the actual value of the product as purchased was less than the value of the product as represented to state a claim for an ascertainable loss." *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 758–59 (W.D. Mo. 2015). Here, Plaintiff sufficiently alleged that the value of the Super Concentrate he purchased was less than the value of the products as represented because he believed the dilution instructions on the front of the booklet label would yield 23 gallons of solution, but the actual yield was significantly less. Plaintiff also sufficiently alleged that his product purchasing decision was dependent on the quantity of solution the product would yield.

**<u>Standing</u>**

As noted above, Defendant argues that Plaintiff does not have standing to bring claims related to Concentrate Plus because he did not purchase it. Plaintiff contends that he has standing because the Concentrate Plus labelling and alleged injury are substantially similar those related to Super Concentrate. The Missouri Supreme Court has not addressed whether a consumer may bring a claim under the MMPA for a substantially similar product to the one he or she purchased. A federal district court addressing the issue held that a plaintiff did not have standing for a putative class action suit for products that the plaintiff had not purchased, despite the facts that the products and alleged misrepresentation substantially similar to a product he did purchase. *Kelly*,

81 F. Supp. 3d at 763 (holding that a plaintiff did not have standing to maintain a MMPA action based on the labelling of 12 of 16 varieties of chips that allegedly misrepresented that the chips had only "natural" ingredients, because the plaintiff did not purchase those varieties, and only purchased the other four varieties). This Court believes that the Missouri Supreme Court would hold that Plaintiff may not bring a claim under the MMPA for products he did not purchase. Plaintiff's allegations involving Concentrate Plus will be disregarded, with leave granted to amend the complaint to add a representative purchaser of Concentrate Plus.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim is **GRANTED** in part, and **DENIED** in part. The complaint is dismissed with respect to individual and class claims related to Roundup Concentrate Plus, and denied in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff shall have **14 days** from the date of this Memorandum and Order to file an amended complaint with respect to claims related to Roundup Concentrate Plus.

Dated this 7th day of August, 2017.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE