**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JOSHUA RAWA, ELISABETH MARTIN, ROBERT RAVENCAMP, AMY WARD, CYNTHIA DAVIES, CHRISTOPHER ABBOTT, OWEN OLSON, JEANNIE A. GILCHRIST, ZACHARY SHOLAR, MATTHEW MYERS, JOHN W. BEARD, JR., and MICHAEL OVERSTREET on behalf of themselves, all others similarly situated, and the general public, | Case No.: 4:17-cv-01252-AGF |
| Plaintiffs, | |
| v. | |
| MONSANTO COMPANY, | |
| Defendant. | |

**DECLARATION OF JACK FITZGERALD IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Jack Fitzgerald, declare:

1.      I am a member in good standing of the State Bars of California and New York; and of the United States District Courts for the Northern, Central, and Southern Districts of California, the Southern and Eastern Districts of New York, and the Western District of Wisconsin; and of the United States Court of Appeals for the Ninth Circuit. I make this declaration based on my own personal knowledge, in support of plaintiffs' motion for preliminary approval of a proposed nationwide class action settlement in this action.

2.      Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the parties' Settlement Agreement.

3.      Attached hereto as <u>Exhibit 2</u> is the parties' proposed Long Form Notice.

4.      Attached hereto as <u>Exhibit 3</u> is the parties' proposed Postcard/Summary Notice.

5.      Attached hereto as <u>Exhibit 4</u> is the parties' proposed Claim Form.

6.      Attached hereto as <u>Exhibit 5</u> is the parties' proposed Opt-Out Form.

7.      There were no settlement negotiations in this case until after the California class was certified in March, but shortly afterwards, the parties agreed to go to mediation in Chicago, on June 21, before the Honorable James F. Holderman (Ret.), former Chief Judge of the Northern District of Illinois.

8.      Before the mediation, Judge Holderman gave the parties a briefing schedule, and they exchanged multiple, lengthy briefs such that each was well informed of the others' position.

9.      On June 21, the parties participated in a full-day mediation session with Judge Holderman. Before doing so, Class Counsel conducted a focus group to help determine (and convince Monsanto) of the strength of the Class's claims. The mediation began with a joint session, during which Class Counsel presented the focus group results to Monsanto.

10.     Although the parties negotiated for a full day, they did not reach an agreement during the first session. However, they had made enough progress that they, and Judge Holderman, agreed it was worth engaging in a second session. The parties thus scheduled a second session on July 11, during which—only in the evening, after another full day of negotiating—the parties reached a tentative nationwide settlement.

11.     Over the next few weeks, the parties memorialized the settlement in the form of a full Settlement Agreement.

12.     My firm, and Jackson & Foster represented Ms. Martin when she filed the first action alleging Monsanto falsely advertised the Roundup Concentrates. We also represented Mr. Rawa in this action. In addition to these two cases, ten other plaintiffs, represented by different counsel, filed actions, including in Missouri state court (Robert Ravencamp),[1] and in the Northern

---

[1] *Ravencamp v. Monsanto Co.*, No. 1716-CV03336 (Mo. Cir. Ct., Jackson County, filed Feb. 9, 2017).

District of Illinois (Amy Ward),[2] the Western District of Kentucky (Christopher Abbott and Cynthia Davie),[3] the District of Colorado (Owen Olson),[4] the Eastern District of North Carolina (Jeannie Gilchrist),[5] the Southern District of Indiana (Zachary Sholar),[6] the Northern District of Georgia (Mathew Myers),[7] the Eastern District of Tennessee (John Beard),[8] and the Eastern District of Pennsylvania (Michael Overstreet).[9] After reaching the nationwide settlement, my co-counsel, Sid Jackson, and I, reached out to counsel for each of these parties, describing the proposed nationwide settlement, and requesting their support for it. Each of the plaintiffs agreed to support the settlement, with their counsel referring the plaintiffs to Class Counsel. Under the referral agreements, Class Counsel has agreed to join these plaintiffs in seeking incentive awards, to compensate each of the referred plaintiffs' counsel their reasonable out-of-pocket expenses, and to compensate each of the referred plaintiffs' counsel for at least some of their reasonable fees incurred in the matters, in amounts solely at Class Counsel's discretion.

13.    Although the parties have not reached any specific agreement regarding attorneys' fees or incentive awards, Class Counsel may apply for fees of up to one-third of the Common Fund, and plaintiffs and Class Counsel may apply for incentive awards of up to $10,000 for Ms. Martin and up to $5,000 each for Mr. Rawa and Mr. Ravencamp, and up to $2,500 each for the

---

[2] *Ward v. Monsanto Co.*, No. 17-cv-3335 (N.D. Ill., filed April 5, 2017).

[3] *Abbott v. Monsanto Co.*, No. 17-cv-315 (W.D. Ky., filed May 22, 2017).

[4] *Olson v. Monsanto Co.*, No. 17-cv-1333 (D. Colo., filed June 1, 2017).

[5] *Gilchrist v. Monsanto Co.*, No. 17-cv-266 (E.D.N.C., filed June 2, 2017).

[6] *Sholar v. Monsanto Co.*, No. 17-cv-100 (S.D. Ind., filed June 2, 2017).

[7] *Myers v. Monsanto Co.*, No. 17-cv-2045 (N.D. Ga., filed June 5, 2017).

[8] *Beard v. Monsanto Co.*, No. 17-cv-171 (E.D. Tenn., filed June 19, 2017).

[9] *Overstreet v. Monsanto Co.*, No. 17-2740 (E.D. Pa., filed June 19, 2017).

remaining plaintiffs.

14.    Monsanto removed the gallons statement from Concentrate Plus in 2014, but it remained on Super Concentrate until recently. In April 2017, after Ms. Martin obtained certification, Monsanto began the process of removing it from Super Concentrate. Monsanto acknowledges the lawsuit accelerated this action.

15.    Based on information obtained in discovery and in negotiating the Settlement, I am aware that the Settlement covers 4,050,000 units, representing about $164 million in retail sales.

16.    I have discussed each of the referred plaintiffs' involvement in their actions with their referring counsel and believe each to be an adequate class representative who has standing, has no conflict of interest, is aware of his or her duties, and has acted and will continue to act in the best interests of the Class.

17.    Attached hereto as Exhibit 6 is a true and correct copy of a resume for my firm.

18.    Attached hereto as Exhibit 7 is a true and correct copy of a declaration about Mr. Jackson's experience.

19.    This amount of the Settlement's Common Fund, $21.5 million, is so great that claimants will likely obtain refunds for all units purchased, with no pro rata reduction, even if notice and administration costs $1 million and the Court awards the maximum amount of fees, expenses, and incentive awards that may be requested—after which there will *still* be *significant* money left over to be donated *cy pres*. This is demonstrated below.

20.    First, the Settlement covers $164 million in retail sales. Claimants are entitled to 50% refunds, so the maximum amount that be claimed is $82 million. Based on hypothetical 2%, 5%, 10%, and 15% claims rates, the amount claimed would be as follows:

| | |
|---|---|
| 2% | $1.64 million |
| 5% | $4.1 million |
| 10% | $8.2 million |
| 15% | $12.3 million |

At those same hypothetical 2%, 5%, 10%, and 15% claims rates, after deducting the maximum possible other expenses, there would be about $12.7 million - $13.5 million left for claimants, thus not requiring any *pro rata* reduction unless and until the claims rate reached about 16%.

| | Claims Rate | | | |
|---|---|---|---|---|
| | 2% | 5% | 10% | 20% |
| Common Fund | $21.5 million | | | |
| Max Notice & Admin estimated by Dahl | $694,000 | $802,464 | $982,993 | $1,344,064 |
| Max Attorney Fees | ($7.17 million) | | | |
| Mas Expenses | < $150,000 | | | |
| Max Incentive Awards | $37,500 | | | |
| Remainder (Claim Funds) | **$13,448,500** | **$13,340,036** | **$13,159,507** | **$12,798,436** |

21.    In my experience, in consumer class actions involving low-value retail products like this, typical claims rates are 1-2%, and 5% is considered high. Here, with robust notice and monetary relief available, we are hoping for a very healthy claims rate. Nevertheless, I believe it is highly-likely that all claimants will get the maximum 50% refund for all units claimed, without any need for a pro rata reduction, even if the Court awards the maximum attorneys' fees, expenses, and incentive awards that may be requested, and even if class notice and administration expenses total $1 million or more (which would exceed estimates for even a 20% claims rate).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Signed this 4th day of October, 2017, in San Diego, California.

/s/ Jack Fitzgerald
Jack Fitzgerald

# Exhibit 1

October 4, 2017

## CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement and Release (the "Agreement"), effective upon the date of the signatories below, is made by and between Monsanto Company ("Monsanto") and the Class (defined below) (collectively, the "Parties"), in the matters *Elisabeth Martin v. Monsanto Company*, originally case No. 5:16-cv-02168 (C.D. Cal.), later transferred and given case no. 4:17-cv-02300 (E.D. Mo) ("*Martin*"); and *Joshua Rawa v. Monsanto Company*, Case No. 4:17-cv-01252 (E.D. Mo.) ("*Rawa*").

**WHEREAS**, Class Representative Elisabeth Martin commenced the *Martin* lawsuit for violations of the Magnuson-Moss Warranty Act and California law of unfair competition and false advertising against Monsanto in the United States District Court for the Central District of California on October 13, 2016.

**WHEREAS**, on March 24, 2017, the Honorable John F. Walter, District Judge for the United States District Court for the Central District of California granted Plaintiff Martin's motion for certification of a class persons who, on or after October 13, 2012, purchased in California for personal or household use and not for resale or distribution, Roundup® Weed & Grass Killer Concentrate Plus, or Roundup® Weed & Grass Killer Super Concentrate, in packaging of certain sizes.

**WHEREAS**, putative Class Representative Joshua Rawa commenced the *Rawa* lawsuit for violations of Missouri law of unfair competition and false advertising against Monsanto in the United States District Court for the Eastern District of Missouri on April 5, 2017, on similar grounds. Rawa seeks to certify a class that includes all states except California. A class has not yet been certified in that case.

**WHEREAS**, the Parties sharply disagree on the merits and viability of the claims set forth in each Action's complaint. Monsanto denies any and all liability or wrongdoing. Plaintiffs believe that all claims are viable and subject to class certification.

**WHEREAS**, the Parties have engaged in deposition, interrogatory and document discovery, have exchanged opening and rebuttal expert reports addressing issues related to the merits and class certification, and have briefed class certification in the *Martin* action.

**WHEREAS**, while discovery has continued, the Parties engaged in multiple mediation sessions before the Hon. James Holderman (Ret.), of JAMS, to determine if a settlement of the Actions could be reached. At the end of the mediation sessions, the Parties reached an agreement in principle.

**WHEREAS**, Plaintiffs have concluded that it is in the best interest of the Class to settle the Actions on the terms set forth in this Agreement in order to avoid further expense, inconvenience, delay, and based on other factors bearing on the merits of settlement.

**WHEREAS**, Monsanto enters into this Agreement in order to avoid further expense, inconvenience, delay, interference with business operations, and to dispose of the Actions and to put to rest all controversy concerning the claims which have been or could be asserted.

**WHEREAS**, the Class (as defined below) and Monsanto wish to resolve, on a nationwide basis, any and all past, present, and future claims the Class has or may have against Monsanto of any nature whatsoever, as they relate to the allegations in the Actions. To that end, the Class and Monsanto intend that the United States District Court for the Eastern District of Missouri conditionally certify a Class for settlement, and that this Agreement will encompass and end all related pending, threatened, or possible litigation and/or claims by any parties against Monsanto. To effectuate this Agreement, the Parties agreed to jointly move to transfer the *Martin* case to the Eastern District of Missouri for the purpose of seeking approval of a nationwide settlement agreement.  Such transfer was ordered by Judge Walter on August 23, 2017.

**NOW, THEREFORE**, the Parties for good and valuable consideration, the sufficiency of which is hereby acknowledged, understand and agree to the following terms and conditions:

## A. Definitions

As used in this Agreement, the following terms enclosed within quotation marks have the meanings specified below:

1.  "Actions" mean the matters *Elisabeth Martin v. Monsanto Company*, originally case No. 5:16-cv-02168 (C.D. Cal.), later transferred and given case no. 4:17-cv-02300 (E.D. Mo) ("*Martin*"); and *Joshua Rawa v. Monsanto Company*, Case No. 4:17-cv-01252 (E.D. Mo.) ("*Rawa*"), as amended to include the Related Cases on September 22, 2017 (collectively, the "Actions").

2.  "Agreement" means this Class Action Settlement Agreement.

3.  "Approved Claim" means a claim approved by the Claims Administrator, according to the terms of this Agreement.

4.  "Authorized Claimant" means any Claimant who has timely and completely submitted a Claim Form that has been reviewed and validated by the Claims Administrator.

5.  "Claim" means a request for relief submitted by or on behalf of a Class Member on a Claim Form filed with the Claims Administrator in accordance with the terms of this Agreement.

6.  "Claimant" means any Class Member who submits a claim for benefits as described in Section J of this Agreement.

7.  "Claims Deadline" means the date by which all Claim Forms must be postmarked or received by the Claims Administrator to be considered timely. The Claims Deadline shall end 90 days after the Preliminary Approval Date.

October 4, 2017

8.  "Claim Form" means the document to be submitted by Claimants seeking benefits pursuant to this Agreement.

9.  "Claims Administrator" means the independent company agreed by the Parties and approved by the Court to provide the Class Notice and to administer the claims process.

10. "Claims Administration Expenses" means the fees charged and expenses incurred by the Claims Administrator in completing the claims administration process set forth in this Agreement.

11. "Class" or "Class Member(s)" means all persons in the United States, who, during the Class Period, purchased in the United States, for personal or household use and not for resale or distribution, Roundup® Weed & Grass Killer Concentrate Plus ("Concentrate Plus") or Roundup® Weed & Grass Killer Super Concentrate ("Super Concentrate," collectively, the "Concentrates"), in packaging whose neck or shoulder label stated that the product "makes up to" a specified number of gallons as follows:

| Roundup® Product | Label Statement |
|---|---|
| Super Concentrate 35.2 fl. oz. | "Makes Up to 23 Gallons" |
| Super Concentrate 53.7 oz. (0.42 gal.) | "Makes Up to 35 Gallons" |
| Super Concentrate 64 fl. oz. (1/2 gal.) | "Makes Up to 42 Gallons" |
| Super Concentrate 128 fl. oz. (1 gal.) | "Makes Up to 85 Gallons" |
| Concentrate Plus 32 oz. (1 qt.) | "Makes Up to 10 Gallons" |
| Concentrate Plus 36.8 oz. | "Makes Up to 12 Gallons" |
| Concentrate Plus 40 oz. | "Makes Up to 13 Gallons" |
| Concentrate Plus 64 oz. (1/2 gal.) | "Makes Up to 21 Gallons" |

Members of the Class are limited to the products and issues listed above.  Any person who received a full refund is excluded from the Class definition.

12. "Class Counsel" means the following attorneys of record for *Martin* and *Rawa*:

Jack Fitzgerald
The Law Office of Jack Fitzgerald PC
Hillcrest Professional Building
3636 Fourth Avenue Suite 202
San Diego, CA 92103
Phone: 619-692-3840
Facsimile: 619-362-9555
Emails: jack@jackfitzgeraldlaw.com

Sidney W. Jackson, III
Jackson and Foster LLC
75 St Michael Street
Mobile, AL 36602
Phone: 251-433-6699
Facsimile: 251-433-6127
Email: sid@jacksonfosterlaw.com

and any attorneys at those firms assisting in the representation of the Class in this Action.

13. "Class Counsel's Fees" means the amount awarded as attorneys' fees to Class Counsel by the Court for prosecuting the Actions and implementing this Agreement.

14. "Class Notice" means collectively, the "Notice of Class Action Settlement" and the "Publication Notice," substantially in the forms to be agreed upon by the Parties and that will be submitted to the Court in connection with the Motion for Preliminary Approval of Settlement.

15. "Class Period" shall mean and refer to a time period not to exceed the applicable statute of limitations for the false advertising law in the state where each Claimant is domiciled, triggered by the date the Complaint was filed in *Martin* for California residents (October 13, 2016), and by the date the Complaint was filed in *Rawa* for all other states' residents (April 5, 2017). A full list of the applicable periods for each state, district, or territory included in this Agreement is appended here to as **Exhibit A**.

16. "Class Released Claims" means the claims released by the Class Members via this Agreement.

17. "Class Representatives" means named plaintiffs Elisabeth Martin and Joshua Rawa, as well as Robert Ravencamp, Amy Ward, Cynthia Davies, Christopher Abbott, Owen Olson, Jeannie Gilchrist, Zachary Sholar, Matthew Myers, John Beard Jr., and Michael Overstreet, who were added to the Amended Complaint in *Rawa* on September 22, 2017, and any other individuals who may be added as plaintiffs to any amended, consolidated pleading.

18. "Common Fund" means the 21.5 million dollars ($21,500,000) set aside as part of the Settlement Consideration.

19. "Concentrates" means Roundup® Weed & Grass Killer Concentrate Plus ("Concentrate Plus") or Roundup® Weed & Grass Killer Super Concentrate ("Super Concentrate") in the eight sizes specified in the table within the definition of "Class," above.

20. "Court" means the Eastern District of Missouri.

21. "Effective Date" means the date on which the Judgment approving this Agreement becomes final. For purposes of this definition, the Judgment shall become final at the latest date of the following options: (a) if no appeal from the Judgment is filed, the date of expiration of the time for filing or noticing any appeal from the Judgment; or (b) if an appeal from the Judgment is filed, and the Judgment is affirmed or the appeal dismissed, and the deadline to file a petition for certiorari has passed, the date of such affirmance or dismissal; or (c) if a petition for certiorari seeking review of the appellate judgment is filed and denied, the date the petition is denied; or (d) if a petition for writ of certiorari is filed and granted, the date of final affirmance or final dismissal of the review proceeding initiated by the petition for a writ of certiorari.

22. "Final Settlement Hearing" or "Final Approval Hearing" means the hearing to be conducted by the Court to determine whether to enter the Judgment.

23. "Judgment" means the Court's order approving the Agreement and dismissing the Actions with prejudice.

24. "Martin" means the plaintiff in the *Martin* action, Elisabeth Martin.

25. "Notice Period" means the notice period to potential Class Members.  Class Notice shall run for a period of 60 days, and shall commence within 14 days after the Preliminary Approval Date.

26. "Notice Plan" means the plan for dissemination of the Class Notice to be agreed upon by the Parties and that will be submitted to the Court in connection with the Motion for Preliminary Approval of Settlement.

27. "Objection Deadline" means the first business day on or after ten (10) calendar days from the filing of the Motion for Final Approval of the Settlement and Application for Fees, or such other date as the Court may order in its Preliminary Approval Order.  It is the date by which the Class Members must file with the Court and serve on all Parties (i) a written statement objecting to any terms of the Settlement or to Class Counsel's fees or expenses and (ii) a written notice of intention to appear if they expect to present in person at the Final Approval Hearing objections to any terms of the Settlement or to Class Counsel's fees or expenses.

28. "Opt-Out Deadline" means ninety (90) days after the Preliminary Approval Date (to be concurrent with the Claims Deadline), or such other date as the Court may order in its Preliminary Approval Order.

29. "Other Counsel" means any other attorney(s), representing any Class Member, who is not Class Counsel.

30. "Party" or "Parties" means Plaintiffs, to include the Class, and Monsanto.

31. "Person" means any individual, corporation, partnership, association, or any other type of legal entity.

32. "Plaintiffs" means Elisabeth Martin, Joshua Rawa, and the Class Members.

33. "Preliminary Approval Date" means the date of entry of the Court's order granting preliminary approval of the Agreement substantially in the form of the Preliminary Approval Order that will be submitted in connection with the Motion for Preliminary Approval of Settlement.

34. "Rawa" means the plaintiff in the *Rawa* action, Joshua Rawa.

35. "Related Actions" include the following cases:

    a. *Robert Ravencamp v. Monsanto Company*, Case No. 1716-CV0336, Division 12 (Circuit Court of Jackson County, Missouri, at Independence)

    b. *Amy Ward v. Monsanto Company*, Case No. 1:17-cv-03335 (N.D. Ill.)

    c. *Christopher Abbott v. Monsanto Company*, Case No. 3:17-cv-00315 (W.D. Ky.)

     d. *Owen Olson v. Monsanto Company*, Case No. 1:17-cv-01333 (D. Colo.)

     e. *Jeannie A. Gilchrist v. Monsanto Company*, Case No. 5:17-cv-266 (E.D.N.C.)

     f. *Zachary Sholar v. Monsanto Company*, Case No. 4:17-cv-00100 (S.D. Ind.)

     g. *Matthew Myers v. Monsanto Company*, Case No. l:l 7-cv-02045 (N.D. Ga.)

     h. *John Beard et al v. Monsanto Company*, Case No. l:l 7-cv-00171 (E.D. Tenn.)

     i. *Michael Overstreet v. Monsanto Company*, Case No. 2:17-cv-2740 (E.D. Penn.)

36. "Released Monsanto Persons" and "Released Scotts Persons" means, respectively, Monsanto or Scotts, and any current or future parent companies (including intermediate parents and ultimate parents) and subsidiaries, affiliates, predecessors, successors, and assigns, and each of their respective officers, directors, employees, agents, attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors and assigns, and any other person or entity acting on either Monsanto's or Scotts' behalf.

37. "Scotts" means The Scotts Company LLC, Monsanto's exclusive marketing and distribution agent for Roundup consumer products.

38. "Settlement Payment" means the amount to be paid to Authorized Claimants as described in Section F.

39. "Settlement Website" means a website maintained by the Claims Administrator to provide the Class with information relating to the Settlement.

## B.  Conditional Class Certification for Settlement Purposes Only

1. This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in this Agreement, nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as an admission of: (1) the validity of any claim or allegation by Martin, Rawa, the plaintiff(s) in any Related Action, or any Class Member, or of any defense asserted by Monsanto in these or any other actions or proceedings; (2) any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, Released Party, Class Member or their respective counsel; or (3) the propriety of class certification in the Actions, Related Actions, or any other action or proceeding.

2. For the sole and limited purpose of settlement only, the Parties stipulate to and request that the Court conditionally certify the Class under Rule 23(b)(3), which stipulation is contingent upon the occurrence of the Effective Date.  Should the Effective Date not occur, this Agreement shall be void and will not constitute, be construed as, or be admissible in evidence as, an admission of any kind or be used for any purpose in the Actions, Related Actions, or in any other pending or future action.  In the event that the Agreement is terminated pursuant to its terms or the Final Settlement Hearing does not occur for any reason, the certification of the Class shall be vacated, and the Actions shall proceed as they existed prior to execution of this Agreement.

3. The Court's certification of the Class shall not be deemed to be an adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Agreement,

and shall not be considered the law of the case, res judicata, or collateral estoppel in the Actions, Related Actions, or any other proceeding unless and until the Court enters a Judgment, and regardless of whether the Effective Date occurs, the Parties' agreement to class certification for settlement purposes only (and any statements or submissions made by the Parties in connection with seeking the Court's approval of this Agreement) shall not be deemed to be a stipulation as to the propriety of class certification, or any admission of fact or law regarding any request for class certification, in any other action or proceeding, whether or not involving the same or similar claims.

4.   In the event the Court does not enter a Judgment, or the Effective Date does not occur, or the Agreement is otherwise terminated or rendered null and void, the Parties' agreement to certification of the Class for settlement purposes shall be null and void and the Court's certification order shall be vacated, and thereafter no new class or classes will remain certified; provided, however, that the class in *Martin* will remain, subject to any future motions, oppositions, or defenses by Monsanto on any available grounds.

5.   Nothing in this Agreement shall be argued as support for, or admissible in, an effort to certify any new class in this Court or any other court if the Court does not enter a Judgment, or the Effective Date does not occur, nor shall anything herein be admissible in any proceeding to certify this or any other classes in any other court under any circumstances.

6.   Subject to the Court's approval, and for settlement purposes only, Monsanto consents to the appointment of Elisabeth Martin, Joshua Rawa, Robert Ravencamp, Amy Ward, Cynthia Davies, Christopher Abbott, Owen Olson, Jeannie Gilchrist, Zachary Sholar, Matthew Myers, John Beard Jr., and Michael Overstreet as Class Representatives of the Class, and the appointment of Jack Fitzgerald, Sidney W. Jackson, III, and any attorneys at their firms assisting in the representation of the Class in this Action, as Class Counsel.

7.   The Preliminary Approval Order shall contain a provision enjoining Class Members who have not opted-out of the Agreement from proceeding with any competing claims against the Released Monsanto Persons and/or Released Scotts Persons related or similar to those claims that are asserted in this Actions.

8.   Upon final approval of the Agreement by the Court, a Judgment substantially in the form agreed by the Parties, will be entered by the Court, providing for the dismissal of the Actions with prejudice.

## C.  Benefits of the Agreement

Class Counsel and Class Representatives believe the Agreement confers substantial benefits upon the Class, particularly as weighed against the risk associated with the inherent uncertain nature of a litigated outcome; the complex nature of the Actions in which the Parties have produced large amounts of discovery, taken and defended depositions, served and pursued third-party subpoenas for documents, retained, disclosed and produced reports of several experts, and briefed class certification to a decision; and the length and expense of continued proceedings through additional fact depositions, expert depositions, third party document productions and depositions, summary judgment briefing, trial, and appeals. Based on their evaluation of such

factors, Class Counsel and Class Representatives have determined that the Settlement, based on the following terms, is in the best interests of the Class.

**D.   Changes to Labels**

1. Monsanto has unilaterally agreed to undertake to change the labels on the Concentrates to further clarify the dilution rates and mixing instructions.  Monsanto agrees that Plaintiffs' lawsuit accelerated this action.  Monsanto will consult with Class Counsel regarding potential label changes, provided however, that the ultimate timing and content of any label changes remain at the sole discretion of Monsanto.

2. After making a label change, Monsanto will have a reasonable period of time to exhaust existing inventories and remove products with the current "Makes up to" neck or shoulder label from the marketplace. Any products sold from Monsanto's inventory with the "Makes up to" neck or shoulder label, through the date Notice is first effected, are included in the Full Release described in this Agreement, and any consumer who purchases such products during the inventory removal period and prior to the date Notice is first effected shall be entitled to make a claim under the structure set forth herein.

**E.   Common Fund**

1.   Within seven (7) calendar days after the notice to putative class members commences following the Court's Preliminary Approval Order, Monsanto shall pay $21.5 million into a "Qualified Settlement Fund" created and maintained by the Claims Administrator, with a separate tax identification number for purposes of this Agreement only (the "Common Fund").

2.   The Common Fund shall cover all expenses associated with the Agreement as approved by the Court, including without limitation, Class Notice, Claims Administration Expenses, Class Member Claims, the Settlement Payment, Class Representative Incentive awards and Class Counsel's legal expenses and attorneys' fees.  Interest on the Settlement Fund shall inure to the benefit of the Class.

3.   All taxes on the income of the Settlement Fund, and any costs or expenses incurred in connection with the taxation of the Settlement Fund shall be paid out of the Settlement Fund, shall be considered to be a cost of administration, and shall be timely paid by the Claims Administrator without prior order of the Court.  The Parties shall have no liability or responsibility for the payment of any such taxes.

4.   In the event that requests for payment per unit (as set forth herein) are made in excess of the amounts available in the Common Fund after deducting all other expenses, then the payment per Claimant shall be reduced on a pro rata basis.

5.   In no case shall Monsanto be required to contribute or pay additional funds to the Common Fund and/or the Settlement set forth herein, beyond the payments agreed hereto, including but not limited to any payments for attorneys' fees, or fees associated with notice and/or administration.

October 4, 2017

### F. Class Member Claims

1.   For each unit of the Roundup® Product (as defined in Paragraph 11 of the Definitions) purchased during the Class Period, Claimants will receive a standardized payment of one-half the weighted average retail price (after rounding).  The weighted average retail price per unit and the payment per unit are set forth below:

| Roundup® Product | Weighted Average Retail Price | Payment Per Unit |
|---|---|---|
| Super Concentrate 35.2 fl. oz. | $42.48 | $21 |
| Super Concentrate 53.7 oz. (0.42 gal.) | $62.88* | $31 |
| Super Concentrate - 64 fl. oz. (1/2 gal.) | $72.64 | $36 |
| Super Concentrate - 128 fl. oz. (1 gal.) | $105.85 | $53 |
| Concentrate Plus 32 oz. (1 qt.) | $21.31 | $11 |
| Concentrate Plus 36.8 oz. | $22.97 | $11.50 |
| Concentrate Plus 40 oz. | $26.40* | $13 |
| Concentrate Plus 64 oz. (1/2 gal.) | $44.54 | $22 |

* Because marketplace data was unavailable for the Super Concentrate 53.7 oz. and Concentrate Plus 40 oz. SKUs, these prices are calculated based on the weighted average price per ounce of the two SKU sizes closest to the unknown SKU (i.e., the average price of the 35.2 oz. and 64 oz. Super Concentrates were used to calculate the 53.7 oz. Super Concentrate price).

2.   Any person who received a full refund directly from Monsanto and/or Scotts with respect to purchases of units included in the Class definition shall not be eligible for a payment as to those units.

### G. Attorneys' Fees, Expenses, and Costs

1.   Class Counsel and Class Representatives shall request attorneys' fees and costs, and incentive awards to be paid from the Common Fund.  Monsanto may respond in any manner it chooses, including opposing or not responding to any such requests.

2.   The Claims Administrator shall pay to Class Counsel from the Common Fund the amount of attorneys' fees and costs awarded by the Court within seven (7) calendar days of entry of Judgment, notwithstanding the filing of any appeals, or any other proceedings which may delay the effective date of the settlement or a final judgment in the case; provided, however, that in the event any fee award, either individually or in connection with the entire settlement is overturned, reduced, vacated, or otherwise modified, Class Counsel shall be obligated to return to the Common Fund any difference between the amount of the original award and any reduced award.

3.   Costs for settlement, notice, claims administration, incentive fees, and any other fees, including attorneys' fees, will be paid from the Common Fund.

October 4, 2017

**H.  Retention of Claims Administrator**

The Parties agree to retain Dahl Administration as Class Administrator to effect Class Notice and Administration.  The Claims Administrator shall assist with various administrative tasks, including, without limitation:

   i.    Arranging for the dissemination of the Class Notice pursuant to the Notice Plan agreed to by the Parties and approved by the Court;

   ii.   Handling returned mail not delivered to Class Members;

   iii.  Making any additional mailings required under the terms of this Agreement or by law;

   iv.   Answering written inquiries from Class Members and/or forwarding such inquires to Class Counsel;

   v.    Receiving and maintaining forms of Class Members who wish to opt out of and be excluded from the Agreement;

   vi.   Establishing a Settlement Website;

   vii.  Establishing a toll-free informational telephone number for Class Members;

   viii. Receiving and processing Claims and distributing payments to Class Members; and

   ix.   Otherwise assisting with administration of the Settlement.

**I.  Timing**

All Claim Forms must be postmarked or received by the Claims Administrator by the Claims Deadline to be considered timely.  The Claims Deadline shall be clearly set forth in the Preliminary Approval Order, the Class Notice, on the Settlement Website, and on the front of the Claim Form.

**J.  Procedure**

1.  Notice will include both direct individual notice to known purchasers, and nationwide digital publication.

2.  All Claims must be submitted with a Claim Form and received by the Claims Administrator.

3.  The Claim Form will be available on the Settlement Website.  The Claim Form will be available to fill out and submit online, for download, or mailed to Class Members upon request by calling or writing to the Claims Administrator.  Class Members may submit their completed and signed Claim Form to the Claims Administrator by mail or online, postmarked or submitted online, on or before the Claims Deadline.

4.   The Claim Form must include a reasonable proof of purchase, or must include an affirmation, under penalty of perjury, of the identity and quantity of the type of Concentrate Plus and/or Super Concentrate that was purchased.  All Claim Forms must include:

> (a) Class Member name, address, and telephone number;
> (b) Identification of the quantity and type of Concentrate Plus and/or Super Concentrate that was purchased;
> (c) The retailer and location (city, state, and street name) of the retailer from which the Concentrate Plus and/or Super Concentrate was purchased; and
> (d) The approximate date(s) or date ranges on or during which the Concentrate Plus and/or Super Concentrate was purchased.

5.   The Claims Administrator shall retain sole discretion in accepting or rejecting the Claim Form.

6.   Each household shall be limited to twenty (20) units purchased during the applicable statutory period, based on the Claimant's state or territory or residence.

7.   The Class Administrator shall pay out Approved Claims in accordance with the terms of this Agreement commencing ten (10) days after the Effective Date or as otherwise ordered by the Court.

8.   Class Members who do not submit a claim or opt-out (i.e., do nothing), will be subject to this Settlement and all of its terms, including but not limited to the releases, and will receive no payment from the Common Fund.

**K.  Opt Out Procedures**

1.   Class Members who wish to opt out of and be excluded from the Agreement must download from the Settlement Website an opt out form, to be made at the discretion of the Claims Administrator, and Class Members must print, complete, and mail the form to the Claim Administrator, at his or her mailing address, postmarked no later than ten (10) days after the filing of the Motion for Final Approval of the Settlement and the Application For Fees or as otherwise ordered by the Court in its Preliminary Approval Order (the "Opt Out Deadline").

2.   The Opt-Out Form must be personally completed and submitted by the Class Member, and so-called "mass" or "class" opt-outs shall not be permitted.

3.   The Claims Administrator shall be responsible for processing opt-outs and objections, if any, including to promptly provide Class Counsel and counsel for Monsanto with copies of same.

**L.  Procedures for Objecting to the Settlement**

Class Members have the right to appear and show cause why the Agreement should not be granted final approval, subject to each of the provisions of this paragraph:

1.  *Written Objection Required.*  Any objection to the Agreement must be in writing, filed with the Court, with a copy served on Class Counsel and counsel for Monsanto at the addresses set forth in the Notice and below, by the Objection Deadline.

2.  *Form of Written Objection.*  Any objection regarding or related to the Agreement shall contain (i) a caption or title that clearly identifies the Action and that the document is an objection, (ii) information sufficient to identify and contact the objecting Class Member or his or her attorney, and (iii) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection (the "Objection").

3.  *Authorization of Objections Filed by Attorneys Representing Objectors.*  Class Members may object either on their own or through an attorney hired at their own expense, but a Class Member represented by an attorney must sign either the Objection itself, or execute a separate declaration stating that the Class Member authorizes the filing of the Objection.

4.  *Effect of Both Opt-Out and Objection.*  If a Class Member submits both an Opt-Out Form and Objection, the Class Member will be deemed to have opted out of the Agreement, and thus to be ineligible to object.  However, any objecting Class Member who has not timely submitted a completed Opt Out Form for exclusion from the Agreement will be bound by the terms of the Agreement upon the Court's final approval of the Agreement.

## M. Failure to Exhaust Funds

After payments have been made to Class Members, to Class Counsel for attorneys' fees, to Class Representatives for incentive awards, and all other costs associated with the administration of this settlement have been paid or placed in appropriate escrow, any remaining funds will be exhausted through a *cy pres* distribution to a charitable and tax-exempt organization to be mutually determined by the Parties.  In the event that the Parties cannot reach an agreement on the *cy pres* organization(s), the Parties will timely present the issue to the Court for resolution.

## N.  Release of Monsanto, Scotts, and Related Persons

1.  Upon the Effective Date, each of the Class Members will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged Monsanto and Scotts (including, without limitation, all current or former agents, employees, contractors, affiliates, heirs, attorneys, insurers, and assignees thereof) from any and all claims, demands rights, suits, liabilities, injunctive and/or declaratory relief, and causes of action of every nature and description whatsoever, including costs, expenses, penalties, and attorneys' fees, whether known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that any Class Member has or may have against Monsanto arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Actions, which have been, or which could have been asserted in the Actions, and in connection with the conduct of the Actions, that have been brought, could have been brought, or are currently pending in any forum in the United States.

This release and full resolution of all matters relating to the marketing, sale and distribution of the Concentrates during the Class Period, includes, but is not limited to, the marketing, sale and distribution of the Roundup® products as it relates to the allegations and substance of the Class Complaint that was or could have been alleged relating to the "Makes Up to" a certain number of gallons claims, the amount of product that the Roundup® Concentrate products makes, comparisons of the amount of product or active ingredient in Roundup® Concentrate products to Roundup® Ready-to-Use products, or any similar statements on any part of the bottle, label, packaging, instructions, or associated advertising, on any size bottle of the Roundup® Concentrates.  The release does not release any alleged personal injury claims relating to the use of Roundup® Concentrates.

### O.  Release of Plaintiffs

Upon the Effective Date, Monsanto will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, the Class, and Class Counsel from any and all claims, demands, rights, suits, liabilities, and causes of action of every nature and description whatsoever, whether known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that Monsanto has or may have against any of them arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Actions, and in connection with the filing and conduct of the Actions, that have been brought, could have been brought, or are currently pending in any forum in the United States.

### P.  Section 1542 Waiver

All Parties acknowledge Section 1542 of the California Civil Code. Martin and California members of the Class expressly waive and relinquish any rights or benefits available to them under this statute. Cal. Civ. Code § 1542 provides:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

Notwithstanding Cal. Civ. Code § 1542 or any other federal or state statute or rule of law of similar effect, this Agreement shall be given full force and effect according to each and all of its expressed terms and provisions, including those related to any unknown or unsuspected claims, liabilities, demands, or causes of action which are based on, arise from, or are in any way connected with the Action.

### Q.  Notice Under the Class Action Fairness Act

1.  The Class Action Fairness Act of 2005 ("CAFA") requires Monsanto to inform certain federal and state officials about this Agreement.  *See* 28 U.S.C. § 1715.

2.   Under the provisions of CAFA, the Claims Administrator, on behalf of Monsanto, will serve notice upon the appropriate officials within ten (10) calendar days after the Parties file the proposed Agreement with the Court.  See 28 U.S.C. § 1715(b).

3.   The Parties agree that either the Claims Administrator or Monsanto is permitted to provide CAFA notice as required by law and that any such notice shall be done to effectuate the Agreement and shall not be considered a breach of this Agreement or any other agreement of the Parties.

4.   If any of the notified federal or state officials takes any action adversely affecting the validity or enforceability of the Settlement or seeks to impose additional terms or liability on Monsanto for the matters resolved by the Class Released Claims, Monsanto may, at its option, suspend the implementation of the Agreement pending the outcome of the action initiated by the notified federal or state official or may elect to void the Agreement by written notice to Class Counsel.

**R.  Court Approval**

1.   Promptly after executing this Agreement, and no later than October 4, 2017, the Parties will submit to the Court the Agreement, together with its exhibits, and will request that the Court grant preliminary approval of the proposed Agreement, issue a Preliminary Approval Order, and schedule a Final Approval Hearing to determine whether the Agreement should be granted final approval, whether an application for attorneys' fees and costs should be granted, and whether an application for incentive awards should be granted.  As part of the preliminary approval motion, the Parties will request the Court to provisionally certify the Class for settlement purposes, and to formally appoint Class Counsel.  The Parties intend and acknowledge that any such certification and appointment would be for purposes of the Agreement only, and not effective in continuing litigation between the Parties, if any.

2.   A Final Settlement Hearing to determine final approval of the Agreement shall be scheduled as soon as practicable, subject to the calendar of the Court, but no sooner than 90 days after the Preliminary Approval Date.  Upon final approval of the Agreement by the Court at or after the Final Settlement Hearing, the Parties shall seek and obtain from the Court the Judgment.

3.   Objecting Class Members may appear at the Final Approval Hearing and be heard.  The Parties shall have the right, but not the obligation, either jointly or individually, to respond to any objection.

4.   Plaintiffs in the Related Actions that have joined, or will join the *Rawa* action and this Agreement, shall file stipulations to dismiss their claims without prejudice in the respective courts in which they brought such claims.

5.   If this Agreement is not given final approval by the Court, the Parties will seek in good faith to revise the Agreement as needed to obtain Court approval.  Failing this, the Parties will be restored to their respective places in the litigation.  In such event, the terms and provisions of this Agreement will have no further force and effect with respect to the Parties and will not be used in this or in any other proceeding for any purposes, and any Judgment or Order entered by the Court

in accordance with the terms of this Agreement will be treated as vacated. Martin and Monsanto have agreed that, in the event of any such occurrence, the parties shall stipulate to transfer back to the Central District of California the *Martin* action for all further pre-trial and trial proceedings.

### S.  No Public Statements and Media or Public Inquiry Plan

1.  The Parties will refrain (directly, or through counsel or third parties) from any public statements other than a mutually agreed upon written statement.

The Parties and their counsel agree that, in responding to any inquiries from the public media concerning the Action and/or the Agreement, the Parties and their counsel will limit their comments to the provision of factual information as is contained in the Notice, this Agreement, the pleadings, and/or any of the court orders in this Action, and may further state only to the effect that "the matter has been settled to the satisfaction of all Parties subject to Court approval." Nothing in this paragraph shall limit Class Counsel's ability to communicate privately with a Class Member concerning these Actions or the Agreement.  Monsanto or the Claims Administrator may make such public disclosures about the Action and Agreement as any applicable laws require.

### T.  Miscellaneous Provisions

1.  *Entire Agreement.*  This Agreement shall constitute the entire Agreement among the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of this Agreement.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or undertaking concerning any part or all of the subject matter of the Agreement has been made or relied upon except as expressly set forth herein. This Agreement supersedes any prior agreement between the parties, including the Term Sheet executed by the Parties.

2.  *Notices Under This Agreement.*  All notices or mailings required by this Agreement to be provided to or approved by Class Counsel and Monsanto, or otherwise made pursuant to this agreement, shall be provided as follows:

| Class Counsel | Monsanto |
|---|---|
| Jack Fitzgerald<br>  jack@jackfitzgeraldlaw.com<br>The Law Office of Jack Fitzgerald, PC<br>Hillcrest Professional Building<br>3636 Fourth Avenue, Suite 202<br>San Diego, CA 92103<br><br>Sidney W. Jackson, III<br>  sid@jacksonfosterlaw.com<br>Jackson and Foster LLC<br>75 St Michael Street<br>Mobile, AL 36602 | John J. Rosenthal<br>  jrosenthal@winston.com<br>Adam S. Nadelhaft<br>  anadelhaft@winston.com<br>Winston & Strawn LLP<br>1700 K Street, N.W.<br>Washington, D.C. 20006 |

3. *Good Faith*.  The Parties acknowledge that each intends to implement the Agreement. The Parties have at all times acted in good faith and shall continue to, in good faith, cooperate and assist with and undertake all reasonable actions and steps in order to accomplish all required events on the schedule set by the Court, and shall use reasonable efforts to implement all terms and conditions of this Agreement.

4. *Binding on Successors.*  This Agreement shall be binding upon and inure to the benefit of the heirs, successors, assigns, executors, and legal representatives of the Parties to the Agreement and the Released Parties.

5. *Arms-Length Negotiations*.  The Agreement compromises claims that are contested, and the Parties agree that the consideration provided to the Class and other terms of the Agreement were negotiated in good faith and at arms' length by the Parties, and reflect an Agreement that was reached voluntarily, after consultation with competent legal counsel, and guided in part by the Parties' earlier private JAMS mediation sessions with the Honorable James Holderman (Ret.), former Chief Judge of the Northern District of Illinois, and an experienced mediator. The determination of the terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel. Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application.  All Parties agree that this Agreement was drafted by Class Counsel and Monsanto's Counsel at arms' length, and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their attorneys, or the circumstances under which the Agreement was negotiated, made, or executed.

6. *Waiver*.  The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

7. *Modification in Writing Only*.  This Agreement and any and all parts of it may be amended, modified, changed, or waived only by an express instrument in writing signed by the Parties.

8. *Headings.*  The descriptive headings of any paragraph or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

9. *Governing Law.*  This Agreement shall be interpreted, construed and enforced according to the laws of the State of Missouri, without regard to conflicts of law.

10. *Continuing Jurisdiction.*  After entry of the Judgment, the Court shall have continuing jurisdiction over the Action solely for purposes of (i) enforcing this Agreement, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as may be appropriate under court rules or applicable law, including under the All Writs Act.

11. *Agreement Constitutes a Complete Defense.*  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

October 4, 2017

12. *Execution.*  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies (e.g., PDF copies) shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF,** each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all of the undersigned.

ON BEHALF OF Elisabeth Martin, Joshua Rawa, Robert Ravencamp, Amy Ward, Cynthia Davies, Christopher Abbott, Owen Olson, Jeannie Gilchrist, Zachary Sholar, Matthew Myers, John Beard Jr., and Michael Overstreet and the Proposed Settlement Class:

_____Date:  October 4, 2017

ON BEHALF OF Monsanto Company:

*John J. Rosenthal*

_____Date:  October 4, 2017

# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

## NOTICE OF CLASS ACTION SETTLEMENT

*Joshua Rawa et al. v. Monsanto Company*,
No. 4:17-cv-01252-AGF (E.D. Mo.)

### THIS NOTICE CONCERNS YOUR LEGAL RIGHTS
### PLEASE READ IT CAREFULLY

*The United States District Court authorized this Notice.*
*It is not a solicitation from a lawyer. You are not being sued.*

**You may be a Class Member if you purchased:**

**• Roundup® Weed & Grass Killer Concentrate Plus; or**
**• Roundup® Weed & Grass Killer Super Concentrate**

*with the statement, "Makes Up to __ Gallons" on the neck or shoulder of the bottle*



## WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

• The proposed class action settlement will provide the Class with **$21,500,000 (twenty-one million, five hundred thousand dollars)** of monetary relief to pay all aspects of Settlement (the "Common Fund"), including Class Member claims, notice, administration, plaintiffs service awards, legal expenses, and attorneys' fees.

• Class Members will be able to make claims for refunds for the Roundup® Concentrates listed below equivalent to approximately one-half (50%) of their weighted average retail price (after rounding) during the relevant class period. Claims are limited to 20 units per household. If claims exceed the amount left in the Common Fund after all other expenses are deducted, the amount refunded will be reduced *pro rata*. If funds remain in the Common Fund after all claims and expenses, any remaining amounts will be donated *cy pres* to one or more organizations. The specific refund amounts are as follows:

**For more information: www.RoundupConcentrateSettlement.com**

| Roundup® Product | Weighted Average Retail Price | Per-Unit Payment |
|---|---|---|
| Super Concentrate 35.2 fl. oz. | $42.48 | $21 |
| Super Concentrate 53.7 oz. (0.42 gal.) | $62.88 | $31 |
| Super Concentrate - 64 fl. oz. (1/2 gal.) | $72.64 | $36 |
| Super Concentrate - 128 fl. oz. (1 gal.) | $105.85 | $53 |
| Concentrate Plus 32 oz. (1 qt.) | $21.31 | $11 |
| Concentrate Plus 36.8 oz. | $22.97 | $11.50 |
| Concentrate Plus 40 oz. | $26.40 | $13 |
| Concentrate Plus 64 oz. (1/2 gal.) | $44.54 | $22 |

## WHY ARE YOU RECEIVING THIS NOTICE?

• This settlement resolves a class action lawsuit pending in the United States District Court for the Eastern District of Missouri (the "Court") against Monsanto Company, the manufacturer of the above two concentrated Roundup® products. The lawsuit alleges that Monsanto advertised these Roundup® products as making more spray solution than the products were capable of making. Monsanto denies these allegations and any wrongdoing. The two sides disagree on what relief, and how much, could have been won, if any, if the Class won at trial. The settlement avoids costs and risks to you from continuing the lawsuit, provides relief to affected persons like you, and releases Monsanto and others from liability for the related claims. This notice is not an expression of any opinion by the Court with respect to the merits of the respective claims or defenses of the parties.

• If you purchased the above two the Roundup® Concentrate products in the sizes listed above, for your own personal or household use, you may be a member of the settling Class. The Court requires this Notice because you have the right to know about the proposed Settlement and about all of your options before the Court decides whether to approve the Settlement. This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and how to get them.

• All Class Members who purchased the Roundup® Concentrate products during the Class Period who do not exclude themselves from the settlement will be bound by the orders issued by the Court regarding the settlement.

## BACKGROUND ON THE LAWSUIT & SETTLEMENT

The lawsuit seeks to obtain compensation for false advertising and breach of warranty. After the parties engaged in substantial investigation, discovery, and settlement negotiations, plaintiffs and defendants have reached an agreement providing for the settlement of the lawsuit. The terms of the proposed Settlement are set forth in the Settlement Agreement filed with the Court, which is also available online, at www.RoundupConcentrateSettlement.com.

Plaintiffs and Class Counsel have evaluated the information made available in the course of the lawsuit and have taken into account the risks and uncertainties of proceeding with this litigation, including the risks and uncertainties of class certification, prevailing on the merits, proving damages at trial, and prevailing on post-trial motions and appeal. Based upon their consideration of these factors, plaintiffs and Class Counsel believe it is in the best interests of the Class to settle the lawsuit on the terms described below.

Monsanto denies plaintiffs' allegations and any wrongdoing, and the Class's right to recover anything. Nevertheless, it has agreed to settle the lawsuit for the purpose of avoiding the time and expense of further litigation.

**For more information: www.RoundupConcentrateSettlement.com**

THE CLASS

The Court has certified a Settlement Class defined as:

> All persons in the United States, who, during the Class Period, purchased in the United States, for personal or household use and not for resale or distribution, Roundup® Weed & Grass Killer Concentrate Plus ("Concentrate Plus") or Roundup® Weed & Grass Killer Super Concentrate ("Super Concentrate," collectively, the "Concentrates"), in packaging **whose neck or shoulder label stated that the product "makes up to" a specified number of gallons**, other than those who received a full refund, as follows:

| | |
|---|---|
| Super Concentrate 35.2 fl. oz. | "Makes up to 23 Gallons" |
| Super Concentrate 53.7 fl. oz. (0.42 gal.) | "Makes up to 35 Gallons" |
| Super Concentrate 64 fl. oz. (1/2 gal.) | "Makes up to 42 Gallons" |
| Super Concentrate 128 fl. oz. (1 gal.) | "Makes up to 85 Gallons" |
| Concentrate Plus 32 oz. (1 qt.) | "Makes up to 10 Gallons" |
| Concentrate Plus 36.8 oz. | "Makes up to 12 Gallons" |
| Concentrate Plus 40 oz. | "Makes up to 13 Gallons" |
| Concentrate Plus 64 oz. (1/2 gal.) | "Makes up to 21 Gallons" |

The "Class Period" means the applicable statute of limitations for the false advertising law in the state where each Claimant is domiciled, triggered by the date the Complaint was filed in *Martin v. Monsanto Co.*, No. 5:16-cv-02168 (C.D. Cal.) for California residents (October 13, 2016), and by the date the Complaint was filed in *Rawa* for all other states' residents (April 5, 2017).

The products were sold widely at Home Depot, Lowes, and Wal-Mart, in all 50 states and the District of Columbia, and were also available at stores including, but not limited to, Target, Ace Hardware, True Value, Orchard Supply, and Amazon.com.

**A list of the applicable time period for each State is attached to this Notice as Appendix 1. You should check it carefully to ensure your purchase was within the applicable time period.**

### *EXAMPLES OF THE PRODUCTS AT ISSUE*



**For more information: www.RoundupConcentrateSettlement.com**

HOW DO I KNOW IF I AM A CLASS MEMBER?

You are a member of the Class if you purchased one of the products identified in the Class definition above. To be a Class Member, you must have:

- *Purchased Roundup® Concentrate Plus or Roundup® Super Concentrate*

  ◦ Ready-to-Use Roundup® and other Roundup® products are *not* part of the Class

- *During the Class Period*

  ◦ In California – on or after October 13, 2012

  ◦ In Other States – on or after April 5 of the relevant year, as determined by the statute of limitations applicable in your State (see Appendix 1)

- *For personal or household use only (e.g., not commercial use or resale)*

- *The packaging must have said "Makes Up to __ Gallons" on the neck or shoulder of the bottle*

  ◦ The statement was removed from the neck or shoulder of Roundup® Concentrate Plus (but not from Super Concentrate) in or around late 2014.

- *You have not received a full refund with respect to your purchase.*

DO I HAVE A LAWYER IN THE CASE?

The Court has appointed as Class Counsel in this case Jack Fitzgerald, of The Law Office of Jack Fitzgerald, PC, and Sidney W. Jackson III, of Jackson Foster, LLC, and any attorneys at those firms assisting in the representation of the Class in this Action. The Court has determined that Class Counsel are qualified to represent you and all other Class Members. You will not be charged for these lawyers. The lawyers handling the case are experienced in handling similar cases.

Nevertheless, you have the right to consult or retain an attorney of your choice at your own expense to advise you regarding the Settlement and your rights in connection with the Settlement and Final Approval Hearing described below.

HOW WILL THE LAWYERS GET PAID? WILL THE NAMED PLAINTIFFS BE COMPENSATED?

Class Counsel intends to apply for fees of up to one-third of the Common Fund, and plaintiffs and Class Counsel intend to apply for incentive awards of up to $10,000 for plaintiff Elisabeth Martin and up to $5,000 each for plaintiffs Joshua Rawa and Robert Ravencamp, and up to $2,500 each for the remaining plaintiffs.  These payments would be subtracted from the Common Fund.

YOUR RIGHTS TO PARTICIPATE IN, EXCLUDE YOURSELF FROM, OR OBJECT TO THE SETTLEMENT

The purpose of this Notice is to inform you of this lawsuit so you can make an informed decision as to whether you should remain in or opt out of this Class Action. Your legal rights are affected, and you have a choice to make now. In response to this Notice, you may (1) do nothing, (2) ask to

**For more information: www.RoundupConcentrateSettlement.com**

be excluded from the lawsuit, or (3) object to the proposed Settlement. Those options are summarized in the following table, and then discussed in greater detail below.

| Your Legal Rights and Options in This Lawsuit | |
|---|---|
| **Submit a Claim Form** | The only way to get a monetary payment. Postmark or submit your Claim Form online by [Claim Deadline]. |
| **Ask To Be Excluded** | **Get out of this lawsuit. Get no benefits from it. Keep your rights.**<br><br>If you ask to be excluded you will not be bound by what the Court does in this case and will keep any right you might have to sue Monsanto separately about the same legal claims in this lawsuit. If there is a recovery in this case, including under the proposed Settlement, you will not share in that recovery. |
| **Object** | **Tell the Court why you believe the proposed Settlement is unfair, unreasonable, or inadequate.**<br><br>You may file a written objection no later than [Objection Deadline] and/or appear at the Final Approval Hearing to tell the Court why you believe the proposed Settlement is unfair, unreasonable, or inadequate. |
| **Do Nothing** | **Stay in this lawsuit. Await the outcome. Give up certain rights.**<br><br>By doing nothing, you will get no cash payment and give up any right you may have to sue Monsanto separately about the same legal claims in this lawsuit. |

**1.      Submit a Claim Form**

You must submit a Claim Form to get a monetary payment. Claim Forms may be printed or filed online at the Settlement Website, www.RoundupConcentrateSettlement.com. Claim Forms are simple and easy to complete, requiring (i) contact information; (ii) proof of purchase or an affirmation under penalty of perjury of the identity and quantity purchased; (iii) the retail location (city and state) of the purchase; (iv) the approximate date of purchase, and (v) your affirmation that the information provided is true and correct. In exchange for receiving a monetary payment, under the Settlement Agreement, you will give up your rights to sue Monsanto about the same claims in this lawsuit.

***Claim forms must be postmarked, faxed, or submitted online no later than [Claim Deadline].***

**2.      Exclude Yourself from the Settlement and Do Not Receive Compensation**

If you do not want to be bound by this settlement, you must request to be excluded from the Class. If you request to be excluded from the Class, you will retain any individual rights you have against Monsanto and will not have "released" it from any claims. However, you will ***not*** receive the compensation described above. You may not object to the Settlement under this option. If you wish to be excluded from the Class (also referred to as "opting out"), you must download and print

an Opt-Out Form from the Settlement Website (www.RoundupConcentrateSettlement.com), fill out and sign the form, and mail it to the class action administrator, postmarked on or before [Opt-Out Deadline], at the following address:

Dahl Administration
Attn: Roundup Concentrate Settlement
6465 Wayzata Blvd., Ste. 420
Minneapolis, MN 55426

**3.        Object to the Settlement**

If you want to express an objection to part or all of the Settlement, you may appear at the Final Approval Hearing and/or object to the proposed Settlement. If the Settlement is approved, you will still receive the Settlement compensation and be bound by the Settlement Release.

If you wish to object, you must, no later than [Objection Deadline], electronically file via the Court's ECF system, or deliver to the Clerk of the Court by mail, express mail, or personal delivery, a written objection. The objection must contain (a) a caption or title clearly identifying the action, and that the document is an objection, (b) information sufficient to identify and contact the objecting Class Member or his or her attorney, and (c) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection.

If you wish to appear at the Final Approval Hearing, you should, no later than [Objection Deadline], file with the Court and serve on Class Counsel and Defense Counsel at the addresses set forth below, a Notice of Intent to Appear, either in person or through an attorney.

More detailed instructions and requirements for objecting are set forth in the Court's Preliminary Approval Order, which is available on the Class Settlement Website, at www.RoundupConcentrateSettlement.com.

| <u>Class Counsel</u> | <u>Defense Counsel</u> |
|---|---|
| Jack Fitzgerald | John Rosenthal |
| The Law Office of Jack Fitzgerald, PC | Winston & Strawn LLP |
| 3636 4th Ave., Ste. 202 | 1700 K. Street, N.W. |
| San Diego, CA 92103 | Washington, DC 20006 |

Sidney W. Jackson, III
Jackson & Foster LLC
75 St. Michael Street
Mobile, Alabama 36602

**4.        Do Nothing**

If you do nothing, you will get no money from the Settlement. But, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit or be part of any other lawsuit against Monsanto about the claims in this case.

<u>RELEASE OF CLAIMS</u>

If the Court approves the Settlement and you have not excluded yourself as described above, you will be bound by the Settlement and will be forever barred from suing Monsanto and related

**For more information: www.RoundupConcentrateSettlement.com**

entities for the claims released in the Settlement. This applies whether you currently know about the existence of such claims or not.

Here, the claims you will give up are:

> any and all claims, demands rights, suits, liabilities, injunctive and/or declaratory relief, and causes of action of every nature and description whatsoever, including costs, expenses, penalties, and attorneys' fees, whether known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that any Class Member has or may have against Monsanto and The Scotts Company, LLC ("Scotts"), Monsanto's exclusive marketing and distribution agent for Roundup® consumer products (including, without limitation, all current or former agents, employees, contractors, affiliates, heirs, attorneys, insurers, and assignees thereof) arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Actions, which have been, or which could have been asserted in the Actions, and in connection with the conduct of the Actions, that have been brought, could have been brought, or are currently pending in any forum in the United States.

The release and full resolution of all matters relating to the marketing, sale and distribution of the Concentrates during the Class Period, includes, but is not limited to, the marketing, sale and distribution of the Roundup® products as it relates to the allegations and substance of the Class Complaint that was or could have been alleged relating to the "Makes Up to" certain number of gallons claims, the amount of product that the Roundup® Concentrate products makes, comparisons of the amount of product or active ingredient in Roundup® Concentrate products to Roundup® Ready-to-Use products, or any similar statements on any part of the bottle, label, packaging, instructions, or associated advertising, on any size bottle of the Roundup® Concentrates. The release does not release any alleged personal injury claims relating to the use of Roundup® Concentrates.

In addition, Each Settlement Class Member shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code section 1542 (and equivalent, comparable, or analogous provisions of the laws of the United States or any state or territory thereof, or of the common law). **Section 1542 provides**:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor."**

Notwithstanding Cal. Civ. Code § 1542 or any other federal or state statute or rule of law of similar effect, this Agreement shall be given full force and effect according to each and all of its expressed terms and provisions, including those related to any unknown or unsuspected claims, liabilities, demands, or causes of action which are based on, arise from, or are in any way connected with the Action.

## FINAL APPROVAL HEARING

The Court has scheduled a Final Approval Hearing (also referred to as a "Fairness Hearing") to determine whether the Court should approve the Settlement as fair, reasonable, and adequate to the Class, and whether Judgment should be entered in accordance with the Settlement Agreement. The Court will also consider at the Final Approval Hearing the request of Class Counsel for an

award of attorneys' fees and reimbursement of expenses, as well as the request of the Class Representatives for incentive awards for services rendered on behalf of the Class.

The Final Approval Hearing will occur at [**time and date**] **in Courtroom 12 of the Thomas F. Eagleton U.S. Courthouse, 111 South 10th Street, St. Louis, Missouri 63102.**

Your attendance at the Final Approval Hearing is not required. However, you may be heard orally at the hearing in opposition to the proposed Settlement if you wish. You may also enter an appearance through an attorney retained at your own expense. If you do not enter an appearance through an attorney, and do not object, Class Counsel will represent you at the hearing.

<u>WHERE CAN I GET MORE INFORMATION?</u>

The Notice's description of the case and Settlement is general. For more details of the matters involved in this lawsuit and the Settlement, you may review the Settlement agreement and related pleadings as set forth below.

If you want more detailed information about the lawsuit and proposed Settlement, including reviewing the Settlement documents, you may visit the Settlement Website at www.Roundup ConcentratesSettlement.com, contact Dahl Administration at (952) 562-3600, or contact Class Counsel at (619) 692-3840.

If you wish to review the Court's docket in this case, you may do so at www.pacer.gov, the Court's public access website.

**DO NOT TELEPHONE OR ADDRESS ANY QUESTIONS ABOUT THE CASE OR SETTLEMENT TO THE CLERK OF THE COURT OR TO THE JUDGE. THEY ARE NOT PERMITTED TO ANSWER YOUR QUESTIONS. THE COURT EXPRESSES NO VIEW AS TO THE MERITS OF ANY CLAIMS OR DEFENSES ASSERTED BY ANY PARTY TO THE ACTION.**

# Exhibit A

**<u>State-by-State Statute of Limitations for False Advertising Claims</u>**

*To qualify to make a claim, you must have purchased the product AFTER the date listed for your state below.*

### One Year

| State | Citation | Time Period Begins |
|---|---|---|
| Alabama | Ala. Code § 8–19–14 | April 5, 2016 |
| Arizona | Ariz. Rev. Stat. Ann. § 12–541(5); *Schellenbach v. GoDaddy.com LLC*, 2017 WL 192920, at *3 (D. Ariz. Jan. 18, 2017) | April 5, 2016 |
| Louisiana | La. Rev. Stat. Ann. § 51:1409(E) | April 5, 2016 |
| Oregon | Or. Rev. Stat. Ann. § 646.638(6) | April 5, 2016 |
| Tennessee | Tenn. Code Ann. § 47–18–110 | April 5, 2016 |

### Two Years

| State | Citation | Time Period Begins |
|---|---|---|
| Alaska | Alaska Stat. § 45.50.531(f) | April 5, 2015 |
| Idaho | Idaho Code Ann. § 48-619 | April 5, 2015 |
| Indiana | Ind. Code Ann. § 24– 5–0.5–5(b) | April 5, 2015 |
| Iowa | Iowa Code Ann. § 714H.5(5) | April 5, 2015 |
| Kentucky | Ky. Rev. Stat. Ann. § 367.220(5) | April 5, 2015 |
| Montana | Mont. Code Ann. § 27–2–211(1); *Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435, 441 (2003) | April 5, 2015 |
| Ohio | Ohio Rev. Code Ann. § 1345.10(C) | April 5, 2015 |
| Texas | Tex. Bus. & Com. Code Ann. § 17.565 | April 5, 2015 |
| Utah | Utah Code Ann. § 13–11–19(8) | April 5, 2015 |
| Virginia | Va. Code Ann. § 59.1–204.1(A) | April 5, 2015 |
| West Virginia | W. Va. Code Ann. § 55–2–12; *Hanshaw v. Wells Fargo Bank, N.A.*, 2015 WL 5345439, at *9 (S.D.W. Va. Sept. 11, 2015) | April 5, 2015 |

| State | Citation | Time Period Begins |
|---|---|---|
| Wisconsin | Wis. Stat. Ann. § 425.307(1) | April 5, 2015 |
| Wyoming | Wyo. Stat. Ann. § 40– 12–109 | April 5, 2015 |

**Three Years**

| State | Citation | Time Period Begins |
|---|---|---|
| Colorado | Colo. Rev. Stat. Ann. § 6-1-115 | April 5, 2014 |
| Connecticut | Conn. Gen. Stat. Ann. § 42-110g(f) | April 5, 2014 |
| Delaware | Del. Code Ann. tit. 10, § 8106(a); *Pender v. Daimlerchrysler Corp.*, 2004 WL 2191030, at *3 (Del. Super. Ct. July 30, 2004) | April 5, 2014 |
| District of Columbia | D.C. Code § 28-3905(a) | April 5, 2014 |
| Illinois | 815 Ill. Comp. Stat. Ann. 505/10a(e) | April 5, 2014 |
| Kansas | Kan. Stat. Ann. § 60- 512; Alexander v. Certified Master Builders Corp., 268 Kan. 812, 824, 1 P.3d 899, 908 (2000) | April 5, 2014 |
| Maryland | Md. Code Ann., Cts. & Jud. Proc. § 5-101; Palermino v. Ocwen Loan Servicing, LLC, No. CV TDC-14- 0522, 2015 WL 6531003, at *3 (D. Md. Oct. 26, 2015) | April 5, 2014 |
| Mississippi | Miss. Code. Ann. § 15-1-49(1); Archer v. Nissan Motor Acceptance Corp., 633 F. Supp. 2d 259, 265 (S.D. Miss. 2007) | April 5, 2014 |
| New York | Gould v. Helen of Troy Ltd., 2017 WL 1319810, at *2 (S.D.N.Y. Mar. 30, 2017) | April 5, 2014 |
| Oklahoma | Greer v. SunTrust Mortg., Inc., No. 13-CV-0402-CVE-FHM, 2013 WL 5520010, at *7 (N.D. Okla. Oct. 3, 2013) | April 5, 2014 |
| South Carolina | S.C. Code Ann. § 39- 5-150 | April 5, 2014 |
| Washington | Wash. Rev. Code Ann. § 19.86.120(A) | April 5, 2014 |

**Four+ Years**

| State | Citation | Time Period Begins |
|---|---|---|
| Arkansas | Ark. Code Ann. § 4- 88-115 | April 5, 2013 |
| California | Cal. Bus. & Prof. Code § 17208; *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1140 (C.D. Cal. 2010) | October 13, 2012 |
| Florida | Fla. Stat. Ann. § 95.11(3)(f); *Matthews v. Am. Honda Motor Co.*, 2012 WL 2520675, at *4 (S.D. Fla. June 6, 2012) | April 5, 2013 |
| Georgia | Ga. Code Ann. § 9-3- 31; *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1204 (11th Cir. 1997) | April 5, 2013 |
| Hawaii | Haw. Rev. Stat. Ann. § 480-24; *Martin v. GMAC Mortg. Corp.*, 2011 WL 6002617, at *10 (D. Haw. Nov. 30, 2011) | April 5, 2013 |
| Massachusetts | Mass. Gen. Laws Ann. ch. 260, § 5A | April 5, 2013 |
| Maine | Me. Rev. Stat. tit. 14, § 752; *State v. Bob Chambers Ford, Inc.*, 522 A.2d 362, 364 (Me. 1987) | April 5, 2013 |
| Michigan | Mich. Comp. Laws Ann. § 445.911(7) | April 5, 2013 |
| Minnesota | Minn. Stat. Ann. § 541.05(1); *Drobnak v. Andersen Corp.*, 2008 WL 80632, at *4 (D. Minn. Jan. 8, 2008) | April 5, 2013 |
| Missouri | Mo. Ann. Stat. § 516.120(2); *Snelling v. HSBC Card Servs., Inc.*, 2015 WL 3621091, at *8 (E.D. Mo. June 9, 2015) | April 5, 2013 |
| Nebraska | Neb. Rev. Stat. Ann. § 87-303.10 | April 5, 2013 |
| Nevada | Nev. Rev. Stat. Ann. § 11.190(2)(d) | April 5, 2013 |
| New Hampshire | N.H. Rev. Stat. Ann. § 358-A:3(IV-a); N.H. Rev. Stat. Ann. § 508:4(I); *Bougopoulos v. Altria Grp., Inc.*, 954 F. Supp. 2d 54, 65 (D.N.H. 2013) | April 5, 2013 |
| New Jersey | N.J. Stat. Ann. § 2A:14-1; *Marchi v. Hudson City Sav. Bank*, 2017 WL 628476, at *4 (D.N.J. Feb. 15, 2017) | April 5, 2013 |

| State | Citation | Time Period Begins |
|---|---|---|
| New Mexico | N.M. Stat. Ann. § 37- 1-4; *Nance v. L.J. Dolloff Assocs., Inc.*, 126 P.3d 1215, 1220 | April 5, 2013 |
| North Carolina | N.C. Gen. Stat. Ann. § 75-16.2 | April 5, 2013 |
| North Dakota | N.D. Cent. Code Ann. § 28-01-16(2); *Bostow v. Lundell Mfg. Co.*, 376 N.W.2d 20, 22 (N.D. 1985) | April 5, 2013 |
| Pennsylvania | 42 Pa. Stat. and Cons. Stat. Ann. § 5527(b); Jacobs v. Halper, 116 F. Supp. 3d 469, 480 (E.D. Pa. 2015) | April 5, 2013 |
| Rhode Island | *Kennedy v. Acura*, No. 01-4063, 2002 WL 31331373, at *6 (R.I. Super. Aug. 28, 2002) | April 5, 2013 |
| South Dakota | S.D. Codified Laws § 37-24-33 | April 5, 2013 |
| Vermont | Vt. Stat. Ann. tit. 12, § 511; *In re Monty*, 2013 WL 2481531, at *4 (Bankr. D. Vt. June 10, 2013) | April 5, 2013 |

# Exhibit 3

**COURT APPROVED LEGAL NOTICE - You might get a payment from the Class Action Settlement described in this Notice.**

This settlement resolves a class action lawsuit against Monsanto Company, alleging that Monsanto advertised Roundup® Concentrate Plus and Roundup® Super Concentrate (collectively, the "Products") as making more spray solution than the products were capable of making. Monsanto denies these allegations and any wrongdoing. The two sides disagree on what relief, and how much, could have been won, if any, if the Class won at trial. The settlement avoids costs and risks to you from continuing the lawsuit, provides relief to affected persons like you, and releases Monsanto and others from liability for the related claims.

**Why did you receive this notice?** You received this notice because you may have purchased during the Class Period, in the United States, for personal or household use and not for resale or distribution, one or more of the following Concentrates whose neck or shoulder label stated that the product "makes up to" a specified number of gallons: Super Concentrate sold in 35.2 fl. oz.; 53.7 oz. (0.42 gal.), 64 fl. oz. (1/2 gal.) and 128 fl. oz. (1 gal.); or Concentrate Plus sold in 32 oz. (1 qt.), 36.8 oz.; 40 oz. and 64 oz. (1/2 gal.).

**How to Make a Claim.** You must submit a claim by going to www.RoundupConcentrateSettlement.com and submitting (or printing and mailing) a claim form. Class Members may make a claim by submitting either proof(s) of purchase or an affirmation under penalty of perjury of the identity and quantity purchased. Any person who received a full refund is excluded from the Class definition. The claim deadline is [DATE].

**Settlement Terms.** The proposed class action settlement will provide for **$21,500,000.00** to pay Class Member claims, notice, administration, plaintiffs' service awards, and legal expenses and attorneys' fees. Claimants will receive a refund of approximately 50% of the average retail price of the products. Refund amounts vary from $11 to $53 depending on the size of the unit, and claimants may seek refunds for valid purchases up to a maximum of twenty (20) units. If the Court approves the Settlement and you have not excluded yourself as described above, you will be bound by the Settlement and forever barred from suing Monsanto and related entities for the claims released in the Settlement. The released claims are described in detail at www.RoundupConcentrateSettlement.com.

**Other Options.** If you don't want to be legally bound by the Settlement, you must exclude yourself by [DATE]. If you wish to be excluded from the Class, you must download and print an Opt-Out Form from www.RoundupConcentrateSettlement.com, fill out and sign the form, and mail it to the class action administrator, postmarked on or before [DATE], at: Dahl Administration, Attn: Roundup Concentrate Settlement, 6465 Wayzata Blvd., Ste. 420, Minneapolis MN 55426. You may elect to object to the Settlement. If you wish to object, you must electronically file via the Court's ECF system, or deliver to the Clerk of the Court, a written objection by [DATE]. The objection must contain certain specific information listed in the detailed notice at www.RoundupConcentrateSettlement.com.

**Hearing.** The Court will hold a Hearing on [DATE] to consider whether to approve the Settlement, a request for attorneys' fees and costs, and an incentive payment to each of the Class Representatives. You may also appear at the hearing, in person or through your attorney. You do not have to appear at the hearing.

**How To Get More Information.** Visit www.RoundupConcentrateSettlement.com or call the settlement administrator at 1-xxx-xxx-xxxx.

Dahl Administration
Attn: Roundup Concentrate Settlement
6465 Wayzata Blvd., Ste. 420
Minneapolis MN 55426

**NOTICE OF CLASS ACTION SETTLEMENT**

The United States District Court has
authorized this notice.
This is not a solicitation from a lawyer.

**If you purchased Roundup® Weed &
Grass Killer Concentrate Plus or
Roundup® Weed & Grass Killer Super
Concentrate with the statement
"Makes Up to ___ Gallons" on the neck
or shoulder of the bottle, you may be
entitled to compensation as a result of
a settlement in the class action
captioned**
*Joshua Rawa, et al. v. Monsanto
Company*, No.  4:17-cv-01252-AGF (E.D.
Mo.)

\*BARCODE\* «SeqID»

<<ClaimantName>>
<<Addr1>>
<<Addr2>>
<<City>> <<State>> <<ZIP>>

# Exhibit 4

| CLAIM FORM<br>*Joshua Rawa, et al. v. Monsanto Co.,*<br>Case No. 4:17-CV-01252-AGF (E.D. MO.) | | |
|---|---|---|
| Must be <u>received</u><br><u>online</u> or <u>postmarked</u>, if<br>mailed, no later than <mark>[DATE]</mark> | MONSANTO ROUNDUP CONCENTRATE SETTLEMENT<br>C/O DAHL ADMINISTRATION<br>PO BOX 3614<br>MINNEAPOLIS MN 55403-0614<br><mark>Toll-Free: 1-XXX-XXX-XXXX</mark><br>Website: www.RoundupConcentrateSettlement.com | Please Print or Type |

**Instructions:  Please fill out the following form completely and submit it online or mail the form to:**

DAHL ADMINISTRATION

ATTN: ROUNDUP CONCENTRATE SETTLEMENT

6465 WAYZATA BLVD., STE. 420

MINNEAPOLIS MN 55426

Information provided in this form will not be provided to Monsanto and will be kept confidential by the Settlement Administrator.  To be eligible to receive a cash refund from the Settlement Fund, this form must be postmarked or submitted online by <mark>[Date]</mark>.

| Section I - Class Member Information |
|---|

Claimant Name:

Street Address:

City:                                                                                                              State:          Zip Code:

Telephone:

| Section II - Purchase Information |
|---|

I made, for personal or household use, t h e f o l l o w i n g  purchases of Roundup® Concentrate Plus in the 32 oz. (1 qt.), 36.8 oz., 40 oz., or 64 oz. bottle, and/or Roundup® Super Concentrate in the 35.2 oz., 53.7 oz. (0.42 gal.), 64 oz. (1/2 gal.), or 128 oz. (1 gal.) bottle, as pictured below, and I did not return any units purchased that are being claimed.

**Concentrate Plus 32 oz. (1q).**



**Quantity Purchased:** _____

**Retail Location Purchased:**

_____

Name

_____

Street

_____

City                                                                    State

**Approximate Date of Purchase(s):** _____

**Super Concentrate 35.2 oz.**



**Quantity Purchased:** _____

**Retail Location Purchased:**

_____
Name
_____
Street
_____
City                                                                State

**Approximate Date of Purchase(s):** _____

**Concentrate Plus 36.8 oz.**



**Quantity Purchased:** _____

**Retail Location Purchased:**

_____
Name
_____
Street
_____
City                                                                State

**Approximate Date of Purchase(s):** _____

**Super Concentrate 53.7 oz. (0.42 gal.)**



**Quantity Purchased:** _____

**Retail Location Purchased:**

_____
Name
_____
Street
_____
City                                                                State

**Approximate Date of Purchase(s):** _____

**Concentrate Plus 40 oz.**





Quantity Purchased: _____

Retail Location Purchased:

_____
Name
_____
Street
_____
City                                                            State

**Approximate Date of Purchase(s):** _____

**Super Concentrate 64 oz. (1/2 gal.)**



Quantity Purchased: _____

Retail Location Purchased:

_____
Name
_____
Street
_____
City                                                            State

**Approximate Date of Purchase(s):** _____

**Concentrate Plus 64 oz. (1/2 gal)**



Quantity Purchased: _____

Retail Location Purchased:

_____
Name
_____
Street
_____
City                                                            State

**Approximate Date of Purchase(s):** _____

**Concentrate Super 128 oz. (1 gal)**

**Quantity Purchased:** _____

**Retail Location Purchased:**

_____
Name
_____
Street
_____
City                                                          State

**Approximate Date of Purchase(s):** _____

| Section IV – Refunds |
|:---:|

☐   I have not received a full refund(s) associated with the purchase of the above products.  If so, please indicate below the product(s) on which you received a full refund.

_____

| Section V – Proof of Purchase |
|:---:|

Check one of the following regarding the verification of your claims:

☐   I have included with this Claim Form a reasonable proof of purchase.

☐   I declare under penalty of perjury that the identity and quantity of the type of Concentrate Plus and/or Super Concentrate which I claim to have purchased is true and correct.

| Section VI – Affirmation |
|:---:|

By submitting this claim form, I certify that that the information provided above is true and correct. I understand that the Settlement Administrator has authority to review claims for validity, completeness, and potential mistake or fraud, and to request additional information from Claimants to assist in validating claims.

SIGNATURE: _____      DATE: _____

I agree that my digital signature is the legal equivalent of my manual signature on this Claim Form.

**CLAIMS MUST BE SUBMITTED ONLINE OR POSTMARKED NO LATER THAN [DATE].**

# Exhibit 5

**OPT-OUT FORM**

*Johsua Rawa et al. v. Monsanto Co.*,
Case No. 4:17-CV-01252-AFG (E.D. Mo.)

> **This is NOT a claim form. It EXCLUDES you from this Class Action Settlement.**
> **DO NOT use this form if you wish to remain IN the Class Action Settlement.**

Name of Class Member:_____

Address: _____
           Street          City      State    Postal Code
Telephone: _____
           Area Code / Phone No. (Ext. if applicable)
Email: _____
           (you are encouraged to provide your email address, but this is not required)

If you exclude yourself, you will no longer be a Class Member, will not be bound by any judgment in this lawsuit, and will not participate in the proposed Settlement or any recovery obtained on behalf of the Class Members, but you will retain the right to pursue your own lawsuit. If you wish to be *included* in the class action, do *not* return this form..

If you wish to opt out of (put another way, exclude yourself from) this Class Action Settlement, please check the box below.

☐     **By checking this box, I affirm I wish to be excluded from this Class Action Settlement.**

By signing below, I also affirm under penalty of perjury that, to the best of my knowledge, I have purchased at least one bottle of Roundup® Concentrate Plus 32 oz. (1 qt.), 36.8 oz., 40 oz., or 64 oz., or Roundup® Super Concentrate 35.2 oz., 53.7 oz. (0.42 gal.), 64 oz. (1/2 gal.), or 128 oz. (1 gal.), during the Class Period for personal, family, or household use, and not for resale.

_____      _____
    Date Signed               Signature of Class Member or Executor,
                               Administrator, or Personal Representative

The consequences of returning this Opt-Out Form are explained in the Notice of Class Action Settlement at www.RoundupConcentrateSettlement.com.

**If you choose to opt out, you must complete, sign, and mail this Opt Out Form to the Class Action Administrator, at the following address, by regular U.S. mail in an envelope that is postmarked NO LATER THAN [DATE]:**

> Dahl Administration
> Attn: Roundup Concentrate Settlement
> 6465 Wayzata Blvd., Ste. 420
> Minneapolis, MN 55426

# Exhibit 6

1  **THE LAW OFFICE OF JACK FITZGERALD, PC**
2  JACK FITZGERALD (SBN 257370)
   *jack@jackfitzgeraldlaw.com*
3  TREVOR M. FLYNN (SBN 253362)
   *trevor@jackfitzgeraldlaw.com*
4  MELANIE PERSINGER (SBN 275423)
   *melanie@jackfitzgeraldlaw.com*
5  Hillcrest Professional Building
6  3636 Fourth Avenue, Suite 202
   San Diego, California 92103
7  Phone: (619) 692-3840
8  Fax: (619) 362-9555

9  **JACKSON & FOSTER, LLC**
10 SIDNEY W. JACKSON, III (admitted *pro hac vice*)
11 75 St. Michael Street
   Mobile, Alabama 36602
12 Phone: (251) 433-6699
   Fax: (251) 433-6127
13
   ***Counsel for Plaintiff and the Putative Class***
14

15          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
16

17
   ELISABETH MARTIN, on behalf of        Case No.: 5:16-cv-02168-JFW (SPx)
18 herself, all others similarly situated, and
   the general public,                   **DECLARATION OF SIDNEY W.**
19                                        **JACKSON, III IN SUPPORT OF**
                                          **MOTION FOR CLASS**
20          Plaintiff,                    **CERTIFICATION**
21          v.
                                          Date:     March 13, 2017
22 MONSANTO COMPANY,                      Time:     1:30 p.m.
                                          Judge:    Hon. John F. Walter
23          Defendant.                    Location: Courtroom 7A, 7th Floor
24

25

26

27

28

I, Sidney W. Jackson, III, declare as follows:

1.    I am counsel for plaintiff in this action, am admitted *pro hac vice*, and make this declaration based on my own personal knowledge.

2.    I became licensed to practice law in the State of Alabama in 1982 following my graduation from The Cumberland School of law at Samford University in Birmingham, Alabama. Since that time, my practice has concentrated in civil litigation. I have tried approximately 50-60 jury trials in state and federal courts. For the last several years, my practice has involved representing plaintiffs and consumers. These cases include defective products, medical negligence, automobile accidents, maritime and Jones Act injuries, premise liability, pharmaceutical injuries, and intentional torts involving commercial fraud, insurance fraud, insurance bad faith and malicious prosecution.

3.    Many of the cases I have handled involve complex products and issues. This includes automobile tires, restraint systems, fuel fed fires, and crash worthiness, personal water craft, all-terrain vehicles, industrial equipment, and drugs such as zyprexa and asbestos. One case, *Kumho Tire v. Carmichael*, 522 U.S. 137 (1999), was heard by the United States Supreme Court and became the third prong of the "Daubert trilogy."

[continued on following page]

1

*Martin v. Monsanto Company*, Case No. 5:16-cv-02168-JFW (SPx)
DECLARATION OF SIDNEY W. JACKSON, III IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

4.     I have been involved in numerous class actions. I was the lead counsel for class actions in Arkansas and Alabama involving the sale of Supplemental Health Care Policies to persons on Medicaid. I was a member of the *Castano v. American Tobacco* litigation before that national class action was decertified by the Fifth Circuit. Afterwards, my law firm was involved in the Attorneys Generals' class action against the tobacco company which resulted in a $200 billion settlement. I was associate class action counsel in the case of *Avery v. State Farm* in Illinois, which resulted in a $2.3 billion verdict at trial. I have been admitted *pro hac vice* and have represented clients in class actions, MDLs, or individually in multiple jurisdictions throughout the country.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 6th day of February, 2017, in Mobile, Alabama.

By:     /s/ Sidney W. Jackson, III
        Sidney W. Jackson, III

2

# **Exhibit 7**

# The Law Office of Jack Fitzgerald, PC

Hillcrest Professional Building | 3636 Fourth Avenue, Suite 202 | San Diego, California 92103
Phone: (619) 692-3840 | Fax: (619) 362-9555
www.jackfitzgeraldlaw.com

---

## Firm Resume – October 2017

### Overview

Founded in 2013, The Law Office of Jack Fitzgerald, PC is primarily engaged in complex litigation, with an emphasis on consumer protection and intellectual property, including through class actions. We investigate marketplace fraud, and represent consumers and companies against entities that falsely advertise or otherwise market their products in a deceptive, misleading, or unfair manner. We have substantial experience in many different industries, including foods, dietary supplements, homeopathic remedies, cosmetics, fashion and accessories, computer hardware and software, telecommunications, music, sports, database protection and privacy, financial services, medical products, health services, and Internet/e-commerce marketing methods.

### Attorneys

**Jack Fitzgerald**

Mr. Fitzgerald is an accomplished class action attorney who has been appointed class counsel in numerous cases and helped victimized consumers recover millions of dollars. Mr. Fitzgerald is also a successful appellate advocate. His efforts briefing and presenting oral argument led the Ninth Circuit Court of Appeals to issue an important pro-consumer decision in ***Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015)**. Other representative matters include:

>***Boswell et al. v. Costco Wholesale Corp.*, No. 8:16-cv-00278-DOC-DFM (C.D. Cal.)** – Allegations that Costco misleadingly and unlawfully advertised its Kirkland brand coconut oil as healthy. Case recently settled for a $775,000 common fund and Costco's agreement to cease using "health" claims to market coconut oil. On July 26, 2017, the court granted plaintiffs' motion for preliminary approval (Dkt. No. 116).

>***Martin v. Monsanto Co.*, 2017 WL 1115167 (C.D. Cal. Mar. 24, 2017)** – Obtained certification of damages class pursuant to Rule Fed. R. Civ. P. 23(b)(3) in action alleging that Monsanto overstated the amount of spray solution its Roundup Concentrate herbicides made.

>***Cumming v. BetterBody Foods & Nutrition, LLC*, No. 37-2016-00019510-CU-BT-CTL (San Diego Super. Ct.)** – Allegations that BetterBody misleadingly and unlawfully advertised its coconut oil products as healthy, despite that scientific evidence demonstrates coconut oil consumption increases risk of cardiovascular heart disease, stroke, and death. Case settled prior to filing for a $1.1 million common fund and BetterBody's agreement to remove all challenged health and wellness claims from the labels of its coconut oil products. Court granted settlement final approval on February 24, 2017.

***Belardes v. Capay Inc.*, No. 37-2014-00041774-CU-MC-CTL (San Diego Super. Ct.)** – Allegations that Capay unlawfully charged 49,416 Californians for unordered merchandise by enrolling unsuspecting consumers in its home produce delivery service, Farm Fresh to You, and violated the California Rosenthal Fair Debt Collection Practices Act by attempting to collect on fraudulent debts resulting from the unordered merchandise. Obtained settlement cancelling more than $3 million in disputed debt, providing nearly $400,000 in free deliveries, and obligating Capay to engage in a variety of business practice changes to ensure problems did not reoccur, as well as to send to customers a corrective message. In approving the settlement on December 4, 2015, the Court found the action **"resulted in the enforcement of an important right affecting the public interests,"** and noted the **"excellent results obtained for the Class and general public."**

***Gallucci v. Boiron, Inc.*, No. 11-cv-2039-JAH (S.D. Cal.)** – Allegations that Boiron misleadingly marketed homeopathic products. Obtained nationwide settlement that included $5 million and significant changes to Boiron's marketing practices. *Gallucci v. Boiron, Inc.*, 2012 WL 5359485 (S.D. Cal. Oct. 31, 2012). Following oral arguments in which Mr. Fitzgerald appeared on behalf of the certified class, the Ninth Circuit affirmed the court's final settlement approval. *Gallucci v. Gonzales*, 603 Fed. Appx. 533 (9th Cir. Feb. 24, 2015).

***In re Ferrero Litigation*, No. 11-cv-205-H-KSC (S.D. Cal.)** – Allegations that Ferrero misleadingly advertised Nutella spread as a healthy breakfast for children. Obtained certification of a California class, *In re Ferrero Litig.*, 278 F.R.D. 552 (S.D. Cal. 2011), then a settlement that provided the class monetary and injunctive relief, which the Honorable Marilyn L. Huff characterized as an **"excellent result[] obtained for the class,"** *In re Ferrero Litig.*, 2012 WL 2802051, at *4 (S.D. Cal. July 9, 2012). In July 2014, the Ninth Circuit upheld the settlement approval, noting that **"counsel's procurement of monetary and injunctive relief appears to have been an exceptional result."** *In re Ferrero Litig.*, 583 Fed. App'x 665, 667 (9th Cir. 2014). Mr. Fitzgerald argued both the class certification and final approval motions below, and the appeal.

***In re Apple & AT&T iPad Unlimited Data Plan Litigation*, No. 10-cv-2553-RMW (N.D. Cal.)** – Allegations that, when they announced the first iPad, Apple and AT&T engaged in a "bait and switch" scheme by promising a no-contract, unlimited data plan during the three-month pre-order period, then got rid of the plan within a week after iPads started shipping. In March 2014, the Honorable Ronald M. Whyte approved a settlement that required defendants to refund iPad purchasers who made a claim $40 each, as well as to make available a more favorable data plan for certain purchasers.

***In re Qunol CoQ10 Liquid Labeling Litigation*, No. 11-cv-173-DOC (C.D. Cal.)** – Allegations that defendants misleadingly labeled a dietary supplement as providing "six times more absorption." Obtained certification of a nationwide class, *Bruno v. Quten Research Institute, LLC*, 280 F.R.D. 524 (C.D. Cal. 2011), and avoided decertification following the Ninth Circuit's decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), *see Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012). Obtained class settlement obligating defendants to provide refunds and refrain from advertising the product as providing six times more absorption. *Bruno v. Quten Research Institute, LLC*, 2013 WL 990495 (C.D. Cal. Mar. 13, 2013).

*In re Quaker Oats Labeling Litigation*, No. 10-cv-502-RS (N.D. Cal.) – Allegations that Quaker labeled food products containing artificial trans fat with misleading health and wellness claims. In July 2014, the Honorable Richard Seeborg granted final approval to a settlement that required Quaker to remove partially hydrogenated vegetable oils containing artificial trans fat from a wide variety of bar and oatmeal products.

*In re Nucoa Real Margarine Labeling Litigation*, No. 10-cv-927-MMM (C.D. Cal.) – Action alleging that Smart Balance, Inc. misleadingly marketed as "healthy" a stick margarine containing artificial trans fat. In June 2012, the Honorable Margaret M. Morrow approved a settlement in which defendant established a fund to provide consumers with refunds, and agreed to remove the trans fat from Nucoa margarine.

*Rosen v. Unilever United States, Inc.*, No. 09-cv-2563-JW (N.D. Cal.) – Action alleging that Unilever misleadingly marketed soft spread and stick margarines containing artificial trans fat. In June 2011, the Honorable James Ware granted final approval of a settlement that required Unilever to reformulate 40 brand-name and private-label margarines to remove partially hydrogenated vegetable oil containing artificial trans fat.

Mr. Fitzgerald previously was an associate in the New York office of Baker & Hostetler LLP, and the Palo Alto office of Mayer Brown LLP. He obtained his J.D. from New York University in 2004, where he was Editor of the Law Review, and graduated from Cornell University *magna cum laude* in 2001, with a B.A. in American Studies.

Mr. Fitzgerald was admitted to practice law in New York in 2005 and California in 2008. He is admitted to practice before several federal courts throughout the country, as well as the United States Court of Appeals for the Ninth Circuit.

**Thomas A. Canova**

Mr. Canova is a seasoned attorney with considerable experience, for many years as a partner at prominent "AmLaw 100" law firms. He has been engaged in numerous high-profile litigations, including a substantial number of cases involving false advertising, deceptive trade practices, unfair competition, antitrust violations, and patent, trademark, and copyright infringement.

These include Mr. Canova's role co-managing a complex 5-year litigation on behalf of Hewlett-Packard Company against the world's largest remanufacturer of ink jet cartridges, and serving as lead trial counsel for the opening witness and for the false advertising claims in a 3-month jury trial in Federal Court in San Jose (jury verdict of willful false advertising and willful patent and trademark infringement, rejection of antitrust counterclaims, multi-million dollar judgment and permanent injunction).

Mr. Canova was also a member of the formidable Securities Investor Protection legal team representing the Trustee in the huge Madoff bankruptcy investigations and litigations in this country and around the world, which to date have recovered billions of dollars for defrauded investors.

**4** | P a g e

Mr. Canova's class action experience includes cases against Getty Images, Wal-Mart, CVS, Target, GNC, Coca-Cola, Pepsi, Goya, Restaurant Depot, Revlon, and Sony, among others. He is a member of the Consumer Attorneys of San Diego.

Additional matters in which Mr. Canova has been engaged include:

False advertising, deceptive trade practices, and trademark infringement case on behalf of IDT, the country's largest pre-paid telephone calling card company, against several competitors, concerning voice prompts, advertisements, and promotional marketing materials, defrauding consumers as to the number of minutes provided at various expense (Mediation Proceeding in Federal Court in New Jersey).

False advertising, unfair competition, trade secret misappropriation, and copyright infringement case on behalf of Exact Solutions, Inc., a leading software performance-monitoring company, against former Directors of Marketing and Technology (preliminary injunction in the U.S. and criminal and civil seizures of infringing source code in India).

False advertising and trademark and trade dress infringement case on behalf of Isaly Klondike against Kraft/Sealtest, resulting in finding of willful violations (permanent injunction and cash settlement of $8.5 million).

False advertising and trademark infringement case on behalf of Hy-Tape International, the country's leading supplier of surgical tape (Mediation Proceeding in Federal Court in New York).

Federal Court trademark injunction contempt litigation on behalf of L'Oreal against the country's largest "diverter" of salon-only hair care products.

Federal Court trademark and unfair competition case, successfully defending Jansport against false claims of infringement and dilution.

Litigations and arbitrations in Texas and London, establishing Relix Records' exclusive worldwide rights to copyrighted music compositions and recordings (permanent injunction and damages awards of $2 million).

Patent "diaper wars" involving two federal jury trials (Texas and South Carolina) and foreign (Canadian) counterpart litigation, successfully defending Kimberly-Clark against Procter & Gamble's claims of chemical patent infringement.

Internet/e-commerce "business method" patent litigations, successfully defending Barnes & Noble against Amazon's "One Click" patent in Federal Court in Seattle, and successfully defending Microsoft and Expedia against Priceline's "Name Your Price" patent in Federal Court in Connecticut.

Computer copyright infringement case in Federal Court in San Francisco, *Apple v. Microsoft and HP*, resulting in judicial determination that Apple's graphical user interface incorporating

overlapping windows and desktop metaphor originated with Xerox and IBM, was not within the scope of any protectable Apple copyrights, and was not infringed by Microsoft's Windows software or HP's New Wave software.

Computer industry trademark, copyright, and trade dress litigations and administrative proceedings involving *ex parte* seizures with U.S. Marshals throughout the country, freezing of assets, coordination with international seizures in South America and Eastern Europe, seizure of imports by U.S. Customs, and multi-million dollar settlements.

Nationwide luxury goods trademark enforcement and anti-counterfeiting campaign on behalf of Burberry, involving marketplace investigations, U.S. Customs and local law enforcement seizures, destruction of substantial quantities of counterfeit product, and coordination with international enforcement activities against foreign manufacturers and suppliers.

In addition, for many years, Mr. Canova represented NBA Properties for league-wide sports-related intellectual property matters, including trademark clearance, "prosecution" of domestic and foreign trademark and copyright applications, opposition and cancellation proceedings before the U.S. Trademark Trial and Appeal Board, licensing and other transactional matters, and advising as to advertising, press, publicity, and infringement issues.  Such work was fundamental to expansion of the league (Miami Heat, Orlando Magic, Charlotte Hornets, Toronto Raptors, Vancouver Grizzlies), and the international expansion of NBA games and merchandising.

Mr. Canova also has devoted considerable time *pro bono* at leading nonprofits including Volunteer Lawyers for the Arts, Riverkeeper, Rock the Earth, and New York Athletic Club, as well as a nonprofit involved in voter protection for Presidential and Congressional elections. He also served *pro bono* at the New York State Office of Attorney General, providing trial support for a major 5-state federal Clean Air Act litigation.

Mr. Canova previously was a partner at Pennie & Edmonds LLP and Baker & Hostetler LLP. A graduate of Hamilton College and New York Law School, he is a member of the New York State Bar (not admitted to the California Bar). He is also admitted to practice before numerous Federal Courts, and The Supreme Court of the United States.

**Trevor M. Flynn**

Mr. Flynn is an experienced trial attorney who has conducted dozens of trials and arbitrations, and hundreds of contested evidentiary hearings.

He has litigated complex securities cases, representing large groups of investors, including in connection with the massive financial fraud involving Peregrine Systems, Inc., resulting in a $26 million judgment. Mr. Flynn also has longstanding experience litigating matters involving unfair business practices, common law fraud, breach of fiduciary duty, malpractice, and employment (wage and hour) violations.

Mr. Flynn has served the community of San Diego for many years as both a lawyer for a San Diego 501(c)(3) non-profit law firm, and as a Deputy County Counsel for San Diego County. Mr. Flynn was recognized as a 2012 Attorney of the Year for his non-profit work.

Mr. Flynn received his B.A. from U.C. San Diego and his J.D. from the University of San Diego School of Law, where he was a leading member of the school's renowned National Mock Trial Team, and also interned at the school's Legal Clinic on cases involving child support arrears, unlawful tenant detainer, and termination of social security disability benefits.

**Melanie Persinger**

Ms. Persinger is an experienced class action attorney who has been appointed class counsel in numerous complex consumer protection and false advertising cases. She also has been an integral part of the litigation team in class actions involving the false advertising of coconut oils, high-sugar foods, and foods made with artificial trans fat, including against companies like General Mills, Kellogg, Post, Nutiva, Nature's Way, Costco, Kroger, Kraft, Quaker, Johnson & Johnson, Smart Balance, and many others. Ms. Persinger's class counsel appointments include:

*Gallucci v. Boiron, Inc.*, **No. 11-cv-2039-JAH (S.D. Cal.)** – Allegations that Boiron misleadingly marketed homeopathic products. Obtained nationwide settlement including $5 million common fund and "meaningful injunctive relief." *Gallucci v. Boiron, Inc.*, 2012 WL 5359485 (S.D. Cal. Oct. 31, 2012).

*In re Qunol CoQ10 Liquid Labeling Litigation*, **No. 11-cv-173-DOC (C.D. Cal.)** – Obtained class settlement obligating defendants to provide refunds and refrain from advertising product as providing six times more absorption. *Bruno v. Quten Research Institute, LLC*, 2013 WL 990495 (C.D. Cal. Mar. 13, 2013).

*In re Ferrero Litigation*, **No. 11-cv-205-H-KSC (S.D. Cal.)** – Obtained certification of a California class, *In re Ferrero Litig.*, 278 F.R.D. 552 (S.D. Cal. 2011), then a settlement that provided the class monetary and injunctive relief, which the Honorable Marilyn L Huff characterized as an **"excellent result[] obtained for the class,"** *In re Ferrero Litig.*, 2012 WL 2802051, at *4 (S.D. Cal. July 9, 2012). In July 2014, the Ninth Circuit upheld the settlement approval, noting that **"counsel's procurement of monetary and injunctive relief appears to have been an exceptional result."** *In re Ferrero Litig.*, 583 Fed. App'x 665, 667 (9th Cir. 2014).

In addition to her several years of class action practice, Ms. Persinger is a Registered Patent Agent.

Ms. Persinger graduated from San Diego State University, *magna cum laude*, with distinction in Civil Engineering. She received her J.D. from the University of Michigan Law School, where she was awarded Honors in Legal Practice, and was Contributing Editor of the *Michigan Telecommunications & Technology Law Review*.