## UNITED STATES DISTRICT COURT,
## EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JOSHUA RAWA, ELISABETH MARTIN, ROBERT RAVENCAMP, AMY WARD, CYNTHIA DAVIES, CHRISTOPHER ABBOTT, OWEN OLSON, JEANNIE A. GILCHRIST, ZACHARY SHOLAR, MATTHEW MYERS, JOHN W. BEARD, JR., and MICHAEL OVERSTREET on behalf of themselves, all others similarly situated, and the general public, | Case No.: 4:17-cv-01252-AGF |
| Plaintiffs, | |
| v. | |
| MONSANTO COMPANY, | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

## INTRODUCTION

Plaintiffs and Class Counsel have secured for the Class a substantial, non-reversionary Common Fund, sufficient to provide claimants greater compensation than they might get at trial, while avoiding the risks and expense of litigation, all without having yet been compensated. Class Counsel accordingly now seek fees in the amount of one-third of the Common Fund, plus out-of-pocket expenses, and the Class Representative seek service awards. The requested fees-and-expense award is fair and reasonable in light of the exceptional results obtained for the Class, and the substantial contingency risk Class Counsel undertook on its behalf. In addition, the service awards Plaintiffs request are reasonable compensation for their service to the Class, and to incentivize future volunteer class representatives. Accordingly, the Court should grant the motion.

## ARGUMENT

## I.    CLASS COUNSEL IS ENTITLED TO AN AWARD OF FEES AND COSTS

"In a diversity case such as this, federal courts follow state law regarding an award of

- 1 -

attorney's fees, absent conflict with a federal statute or court rule." *Lift Truck Lease & Serv., Inc. v. Nissan Forklift Corp.*, 2013 WL 6243172, at *2 (E.D. Mo. Dec. 3, 2013) ["*Lift*"] (citing *Weitz Co. v. MH Wash.*, 631 F.3d 510, 528 (8th Cir. 2011)). In Missouri, "attorneys' fees may be awarded when they are provided for in a contract or when they are authorized statutorily." *Berry v. Volkswagen Group of Am., Inc.*, 397 S.W.3d 425, 431 (Mo. 2013) (citations omitted); *see also Lift*, 2013 WL 6243172, at *2. Here, the Court's authority derives from statute, contract, and equity.

"The legislature statutorily authorized recovery of attorneys' fees in class actions brought under MMPA." *Berry*, 397 S.W.3d at 431 (citing Mo. Ann. Stat. § 407.025.2). "Section 407.025.2 provides, 'In any action brought pursuant to this section, the court may in its discretion order, in addition to damages, injunction or other equitable relief and reasonable attorney's fees.'" *id.* at 431 n.4. Although this language is discretionary, "[a]warding attorney's fees to successful plaintiffs is indeed the rule rather than the exception." *See Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024, 1028 (8th Cir. 2000) (citing *Moore v. City of Park Hills*, 945 S.W.2d 1, 2 (Mo. Ct. App. 1997); *Blanchard v. Bergeron*, 489 U.S. 87, 89 n.2 (1989)).

Here—as the Court has already found—"the Settlement Agreement substantially fulfills the purposes and objectives of the class action," Dkt. No. 41, Order Granting Preliminary Approval at 4. Because Plaintiffs achieved the relief sought, they are prevailing, and may seek attorneys' fees. *See Berry*, 397 S.W.3d at 431. "Additionally, the settlement agreement provide[s] for ' . . . attorneys' fees and [costs],'" so "[t]here is no question the trial court ha[s] the authority to award attorneys' fees to [the] Class." *See id*. Finally, "[t]he United States Supreme Court has held that lawyers who recover a 'common fund' are entitled to reasonable attorneys' fees from the fund they created." *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159, at *1 (N.D. Iowa Nov. 9, 2011) (citing *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)).

## II.     CLASS COUNSEL'S FEE REQUEST IS REASONABLE

### A.     A Percentage-of-the-Fund Approach to Calculating Fees is Proper

"District courts have broad discretion in determining appropriate attorneys' fees following a class action settlement." *Id.* (citing *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)). "Courts utilize two main approaches to analyzing a request for attorney fees[,] the 'lodestar' methodology [and] . . . the 'percentage of the benefit' approach." *Barfield v. Sho-Me Power Elec. Co-op.*, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015) (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir.1996)). "It is well established in this circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorney fees in a common-fund settlement." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 628 (S.D. Iowa 2016) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)), *aff'd sub nom. Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017); *In re Xcel Energy, Inc.*, 364 F.Supp.2d 980, 991 (D. Minn. 2005) ("In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" (quoting *Petrovic*, 200 F.3d at 1157)).

"Many district courts within the Eighth Circuit have also determined that the percentage of the benefit approach is *preferable* in cases involving a common fund." *McKeage v. Bass Pro Outdoor World, L.L.C.*, 2015 WL 13637253, at *2 (W.D. Mo. Aug. 11, 2015) (emphasis added) (collecting cases); *see also Wiles v. Sw. Bill Tel. Co.*, 2011 WL 2416291, at *4 (W.D. Mo. June 9, 2011) (citing *In re Tex. Prison Litig.*, 191 F.R.D. 164, 176 (W.D. Mo. 1999)); *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 736 F. Supp. 1007, 1009 (E.D. Mo. 1990) ("[M]any courts, including the Supreme Court, have taken note of the fact that the awarding of a percentage of the recovery in a class action common fund case is a more appropriate and efficient means of calculating an attorneys' fee award."). This is because "this approach most closely aligns the interests of the lawyers with the class, since the more recovered for the class, the more the

attorneys stand to be paid." *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *13 (E.D. Mo. June 30, 2005) (citing *Johnston*, 83 F.3d at 244; *In re BankAmerica Corp. Secs. Litig.*, 228 F.Supp.2d 1061, 1064 (E.D. Mo. 2002)).

Moreover, because "under the percentage method, the more the attorney succeeds in recovering money for the client, and the fewer legal hours expended to reach that result, the higher dollar amount of fees the lawyer earns," the "approach equates the interests of class counsel with those of the class members and encourages class counsel to prosecute the case in an efficient manner." *McKeage*, 2015 WL 13637253, at *3 (internal quotation marks and alterations omitted) (quoting *In re Xcel Energy, Inc.*, 364 F. Supp. 2d at 992).

"This approach is also consistent with arrangements in the market place for contingency cases, where the individual client generally agrees to a fee based on amount recovered." *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *13 (citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989)). Additionally, "[t]he Eighth Circuit cited a number of [other] benefits that the percentage of the benefit approach has over the lodestar approach in common fund cases." *McKeage*, 2015 WL 13637253, at *3 (citing *Johnston*, 83 F.3d at 245 n.8).

Because the percentage-of-the-fund approach to calculating attorneys' fees "most closely aligns the interests of the lawyers with the class," *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *13 (citation omitted), and the Eighth Circuit has expressed a clear preference for this approach in common fund cases, the Court should, respectfully, apply that approach here. *See*, *e.g.*, *West v. PSS World Med., Inc.*, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014) (awarding fees based on the percentage-of-the-benefit method); *Barfield*, 2015 WL 3460346, at *4 (same); *McKeage*, 2015 WL 13637253, at *3-4 (same); *Wiles*, 2011 WL 2416291, at *4–5 (same).

### B.   Class Counsel's Request for Fees in the Amount of One-Third of the Common Fund is Reasonable in Light of the Excellent Benefit Achieved for the Class

"Under the percentage of the benefit approach, the typical fee recovery amounts to

approximately thirty-three percent"—the amount requested here. *McKeage*, 2015 WL 13637253, at *4 (citing *Stewart v. USA Tank Sales & Erection Co.*, 2014 WL 836212, at *6 (W.D. Mo. Mar. 4, 2014); *In re Xcel Energy*, 364 F. Supp. 2d at 998). In fact, "courts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions," *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) ["*Buckley*"] (quotation and alteration omitted), and the Eighth Circuit has suggested that an award of 38% would be reasonable, *see id.* (fee award amounting to 38% of common fund was "on the high end of the typical range," but court could not "say that it [wa]s unreasonable when compared to other awards within this circuit").

Accordingly, because, "[a]t one-third of the value of the . . . Settlement as a whole, the [requested] . . . award falls within the range of percentage-fee awards found reasonable in the Eighth Circuit," the Court should approve the request. *See Barfield*, 2015 WL 3460346, at *4 (collecting cases); *see also McKeage*, 2015 WL 13637253, at *4 (because "[i]n similar large class action cases within the circuit, percentage awards tend to be near thirty-three percent. . . . an award of thirty-three percent is appropriate" in case involving stipulated actual damages of approximately $7 million); *In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (affirming a 36% fee from $3.5 million common fund); *Buckley*, 849 F.3d at 398-99 (affirming award of one-third of $25.75 million common fund); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 862, 865-66 (8th Cir. 2017) (affirming award of one-third of $60 million common fund); *Barfield*, 2015 WL 3460346, at *4 (approving fees of one-third of $6.5 million common fund); *Wiles*, 2011 WL 2416291, at *4-5 (awarding attorneys one-third of common fund); *Lees v. Anthem Ins. Cos. Inc.*, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding "34% of the actual fund available to Class Members"); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159, at *2-3 (awarding 36% of $18.5 million common fund); *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105, at *3, *8

(D. Minn. Sept. 18, 2006) (awarding 35.5% percent of $15 million common fund); *Bachman v. A.G. Edwards, Inc.*, 344 S.W.3d 260, 265, 267 (Mo. Ct. App. 2011) (affirming award of $21 million in fees, equal to one-third of the common fund); *Yarrington v. Solvay Pharms., Inc.*, 697 F.Supp.2d 1057, 1061, 1067 (D. Minn. 2010) (awarding one-third of $16.5 million common fund).

### C.    Class Counsel's Fee Request is Reasonable in Light of Other Factors

"The Eighth Circuit has also established factors that a court could consider in determining a fee award," including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

*Wiles*, 2011 WL 2416291, at *4 (citing *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931 (8th Cir. 2007); *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).[1] Although "[i]t is unnecessary for the Court to examine exhaustively and explicitly all of the factors that are relevant to the amount of a fee award in every case," *Deluxe Corp. v. MIPS Dataline Am., Inc.*, 2001 WL 476584, at *3 (D. Minn. May 4, 2001) (citing *Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997 (8th Cir. 1999)), analysis here lends further support to the reasonableness of the request.

### 1.    The Time and Labor Required

"In a common fund case . . . although time and labor required are appropriate considerations, . . . the amount involved and the results obtained[ ] may be given greater weight when, as in this case, . . . the recovery was highly contingent and that the efforts of counsel were

---

[1] Factors 5 and 12—"the customary fee" and "awards in similar cases"—have already been discussed, *supra* p. 4-6, and will not be repeated here. Plaintiffs also elect not to address the fourth factor (preclusion of other employment).

instrumental in realizing recovery on behalf of the class." *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988). Where "a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record," "the 'time and labor involved' factor need not be evaluated using the lodestar formulation . . . ." *Id.*; *see also*, *e.g.*, *Childs v. Unified Life Ins. Co.*, 2011 WL 6016486, at *15-16 & n.10 (N.D. Okla. Dec. 2, 2011) (finding that "[b]ecause the other *Johnson* factors, combined, warrant approval of the common fund fee sought by class counsel, the Court need not engage in a detailed, lodestar-type analysis of the 'time and labor required' factor," and preliminarily approving one-third of common fund without lodestar analysis (citation omitted)). Here, Class Counsel spent over 1,700 hours prosecuting this case, and their work is not yet completed. Fitzgerald Decl. ¶¶ 10-11. The attorneys previously representing plaintiffs Ravencamp, Ward, Davies, Abbott, Olson, Gilchrist, Sholar, Myers, Bear, and Overstreet, spent more than 890 additional hours on the matter. *See id.* ¶ 12.

## 2.     The Novelty and Difficulty of the Questions Involved

This case involved a number of difficult questions. One of the most important, and contested, was whether Ms. Martin had met her burden at class certification of showing that "damages are capable of measurement on a classwide basis," *Comcast v. Behrend*, 133 S. Ct. 1426, 1433 (2013). The damages model she proposed was based on a unique "underfill" theory, which other litigants have subsequently sought unsuccessfully to copy. *See In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2017 WL 2559615, at *11 (C.D. Cal. June 7, 2017). In opposing certification, Monsanto argued vigorously against plaintiff's model, including through its expert, Dr. Robin Cantor, who submitted a 21-page report detailing purported flaws in the model. While Judge Walter concluded that "[a]lthough Monsanto has pointed out flaws in Plaintiff's damages models through persuasive arguments and expert testimony . . .  those flaws are not sufficient to

defeat class certification," *Martin v. Monsanto Co.*, 2017 WL 1115167, at \*9 (C.D. Cal. Mar. 24, 2017), his decision reflects that the issue was a difficult, and perhaps close one.

### 3.      Whether the Fee is Fixed or Contingent

Class Counsel prosecuted this case on a contingent basis, advancing all costs, and assuming the risk of either non-payment, or at best, no payment for a considerable amount of work over an extended period of time. "Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981); *see also Gilbert v. City of Little Rock, Ark.*, 867 F.2d 1063, 1068 (8th Cir. 1989) ("[T]he district court's enhancement of [counsel's] fee award was proper" based on "the risk of loss due to the contingent nature of the fee."). Accordingly, this factor supports the reasonableness of Class Counsel's fee request.

### 4.      Time Limitations Imposed by the Client or the Circumstances

On October 13, 2016, Ms. Martin filed her complaint against Monsanto in the Central District of California, and the case was assigned to the Honorable John F. Walter. The Central District has a local rule requiring "the proponent of the class . . . file a motion for certification that the action is maintainable as a class action" "[w]ithin 90 days after service" of the complaint, "unless otherwise ordered by the Court." C.D. Cal. Civ. L. R. 23-3. Due to the realities of class action litigation, "[w]hen timely asked," Central District courts "routinely grant[] requests for extensions of the 90–day [deadline]." *See Abramson v. Marriott Ownership Resorts, Inc.*, 2015 WL 12910905, at \*1 (C.D. Cal. Sept. 21, 2015). However, because Judge Walter is known to strictly enforce this rule,[2] although Class Counsel normally seeks an extension of the 90-day

---

[2] *See, e.g.*, *Wilborn v. Greystar Real Estate Partners, LLC*, 2013 WL 12143941 (C.D. Cal. Sept. 10, 2013) (Walter, J.) (striking class allegations for failure to comply with Local Rule 23-3); *Molina v. Café Rio, Inc.*, 2013 WL 7174022 (C.D. Cal. July 12, 2013) (Walter, J.) (same); *Los*

deadline almost as a matter of course in class actions filed in the Central District, here Class Counsel instead committed itself to meeting the ambitious deadline, for fear of prejudicing the Class's ability to obtain certification. *See* Fitzgerald Decl. ¶ 16. To that end, Class Counsel turned immediately to pursuing party and third-party discovery. *Id.* ¶ 17 & Ex. C. Class Counsel used the information obtained to support Ms. Martin's certification motion, filed on February 6, 2017, including to aid its damages expert, Colin B. Weir, in providing a detailed damages model. *See Martin* Dkt. No. 51-16 (Declaration of Colin B. Weir). While Monsanto prepared its opposition, Class Counsel continued to pursue discovery, obtaining additional sales data, and coordinating with Mr. Weir to provide an updated damages estimate. Counsel also prepared Mr. Weir and Ms. Martin for their depositions and defended them on February 9 and 10, 2017. Fitzgerald Decl. ¶ 18.

Moreover, just two days before Ms. Martin's reply in support of class certification was due, on Saturday, February 25, 2017, Monsanto produced several thousand consumer complaints about Roundup Concentrate Plus, which Monsanto had located in responding to a motion to compel plaintiff had filed earlier. Class Counsel reviewed these complaints, incorporating them into the Reply to refute Monsanto's key defenses against class certification. *Id.* ¶ 19.

Class Counsel's diligence paid off. On March 24, 2017, Judge Walter certified the California Class, recognizing that "Plaintiff's counsel have [ ] conducted a significant amount of work in identifying and investigating the claims of the class members, and in preparing this motion for class certification within the 90–day deadline under Local Rule 23-3." *Martin*, 2017 WL 1115167, at *5; *see also id.* at *3, *4, *7 (discussing consumer complaint evidence presented by plaintiff to establish key elements of class certification). This factor thus supports the requested fee.

_____

*Angeles County Professional Peace Officers Ass'n v. County of Los Angeles*, 2008 WL 11340318 (C.D. Cal. Dec. 23, 2008) (Walter, J.) (same).

## 5.        The Amount Involved and the Results Obtained

"The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins by Jenkins v. State of Mo.*, 127 F.3d 709, 716 (8th Cir. 1997) (citation omitted); *see also Tusa v. Omaha Auto. Auction Inc.*, 712 F.2d 1248, 1255 (8th Cir. 1983) ("the amount involved and results obtained factor deserves a more weighted consideration"). Here, the Class Member claimants will receive *more* under the terms of the settlement than they could have even if successful at trial. *See* Final Approval Mem. at 8-12. Moreover, despite that the Class's claims for injunctive relief are preempted, *Martin v. Monsanto Co.*, 2017 WL 659014, at *5 (C.D. Cal. Feb. 16, 2017), the lawsuit prompted Monsanto to remove the offending "Makes Up to __ Gallons" statement. *See* Settlement Agreement ¶ D.1. Because the settlement provides excellent relief to the Class, perhaps even better than would have been available at trial (and obtained far more efficiently), this factor supports the reasonableness of the fee request. *See Huyer*, 314 F.R.D. at 626, 629 (results obtained "factor weigh[ed] in favor of settlement" that provided $25,750,000 fund where "$100–$115 million dollars in" damages was at issue, and awarding fees equal to one-third of the common fund, or $8.5 million).

## 6.        The Experience, Reputation, and Ability of the Attorneys

Class Counsel have considerable experience litigation false advertising class actions. *See* Dkt. No. 32-1, Decl. of Jack Fitzgerald in Supp. of Mot. for Preliminary Approval, Exs. 6-7, at pp.49-58 of 58 (ECF header); *see also Martin*, 2017 WL 1115167, at *5 (finding Class Counsel would "fairly and adequately represent the interests of the [California] Class" because they "have had substantial experience with similar class actions and other false advertising litigation, have no conflicts, and will continue prosecuting the action vigorously on behalf of the Class"). Class Counsel's experience, reputation, and ability thus weigh in favor of awarding the requested fee.

### 7. The Skill Required to Litigate the Case

As demonstrated by their obtaining certification of the California class within 90 days, and then a substantial and excellent settlement, Class Counsel has displayed a great deal of skill in litigating this case. This is especially true considering that Monsanto is an extremely well-funded defendant and has highly-capable defense counsel that fought the case vigorously at all times.

### 8. The Undesirability of the Case

Five different plaintiffs' law firms with prominent class action practices declined to join Class Counsel in this matter. Fitzgerald Decl. ¶ 20. Further, it was only after Ms. Martin filed for class certification that Mr. Ravencamp brought his suit, and only after Judge Walter certified the California class that the remaining plaintiffs filed elsewhere throughout the country. Thus, without Class Counsel's work, it is likely that this case would never have been filed, and the Class would have received nothing. This factor thus supports the reasonableness of Class Counsel's request.

### 9. The Nature and Length of the Relationship with the Client

This factor has "little or no bearing on the reasonableness of the fees," *see Clymore v. Far-Mar Co.*, 549 F. Supp. 438, 447 (W.D. Mo. 1982), and is not often discussed absent special circumstances not present here, where no preexisting relationship exists, Fitzgerald Decl. ¶ 21.

### D. The Court Need Not Perform a Lodestar Cross-Check

Although courts sometimes cross-check the percentage-of-the-benefit fee amount against the lodestar amount, "a lodestar analysis is not necessary if the fee does not seem excessive as a percentage of the recovery." *Ramsey v. Sprint Commc'ns Co., L.P.*, 2012 WL 6018154, at *4 (D. Neb. Dec. 3, 2012) (citing *Petrovic*, 200 F.3d at 1157 (Declining to address arguments regarding the lodestar cross-check after "[h]aving found that the district court's approval of the fee under the 'percentage of the fund' approach was proper" where the court "detect[ed] no indication . . . that the award [was] overly generous.")); *see also In re Xcel Energy, Inc.*, 364 F. Supp. 2d at 999

("cross-checking [the requested fee] against [the] lodestar" is "not required" (citing *Petrovic,* 200 F.3d at 1157)). Because the award requested here is "typical," *see McKeage*, 2015 WL 13637253, at *4, and well "within the range of percentage-fee awards found reasonable in the Eighth Circuit," *see Barfield*, 2015 WL 3460346, at *4 (citations omitted), the Court may approve the request without engaging in a lodestar cross-check. *See Lauture v. A.C. Moore Arts & Crafts, Inc.*, 2017 WL 5900058, at *1 (D. Mass. Nov. 28, 2017) (awarding fees equal to one-third of common fund and finding "it unnecessary to perform a lodestar cross-check in order to determine the reasonableness of the fee award" (citation omitted)). Class Counsel will nevertheless submit detailed billing records and hourly rates upon request. Fitzgerald Decl. ¶ 9.

## III.     CLASS COUNSEL'S REQUEST FOR COSTS IS REASONABLE

"[C]ounsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *3 (D. Minn. July 13, 2015) (citing Fed. R. Civ. P. 23; *Boeing Co.*, 444 U.S. at 478; *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d at 1066-67). Class Counsel has incurred $97,613.92 in costs reasonably necessary to conduct the litigation, which are detailed in <u>Appendix 1</u>.[3] The majority were for Ms. Martin's damages expert and the mediation. *See* Fitzgerald Decl. ¶¶ 13-14. The Court should grant Class Counsel's request for reimbursement of these expenses. *See, e.g.*, *West*, 2014 WL 1648741, at *1 ("the amount requested for costs, which included expenditures related to mediation, travel, expert fees, and depositions, is reasonable." (citing *Keslar v. Bartu*, 201 F.3d 1016, 1017 (8th Cir. 2000)).

---

[3] This includes reasonable costs incurred by plaintiffs in the related actions, who joined this action on September 22, 2018, and whose reasonable expenses total $4,114.29. *See* Fitzgerald Decl. ¶ 15.

IV. **SERVICE AWARDS OF $10,000 FOR PLAINTIFF MARTIN, $5,000 EACH FOR PLAINTIFFS RAWA AND RAVENCAMP, AND $2,500 EACH FOR THE REMAINING CLASS REPRESENTATIVES ARE REASONABLE**

"In the Eighth Circuit, courts routinely approve service award payments to class representatives for their assistance to a plaintiff class." *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 2012 WL 2512750, at *11 (D. Minn. June 29, 2012) (citations omitted). "Courts have recognized the propriety of such awards, for 'without a named plaintiff there can be no class action,' and hence serving in that capacity 'confer[s] a benefit on the (other) beneficiaries of the common fund.'" *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 951 (D. Minn. 2016) (quoting *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir.1992)). "Whether to approve such an award and, if so, the appropriate amount thereof is reserved to the discretion of the Court." *Id.* (citing *In re U.S. Bancorp*, 291 F.3d at 1038). Here, incentive awards of $10,000 to plaintiff Martin, $5,000 each to plaintiffs Rawa and Ravencamp, and $2,500 each to the remaining plaintiffs are reasonable in light of their work in successfully prosecuting this action, and assistance in achieving such an excellent result for the Class.

A. **Ms. Martin**

Ms. Martin participated in every aspect of this action, devoting many hours assisting Class Counsel in the successful prosecution of this matter, including reviewing case documents; sitting for deposition; answering interrogatories, searching for, collecting and producing documents; and reviewing and approving the Settlement Agreement. Fitzgerald Decl. ¶¶ 22-29. And it was her demonstrated typicality and adequacy that resulted in Judge Walter certifying the California class, which led to the settlement. *See Martin*, 2017 WL 1115167, at *4-5. Her request for a service award of $10,000 is thus reasonable. *See Huyer*, 314 F.R.D. at 629 (awarding $10,000 to named plaintiffs who "were deposed, participated in discovery, and maintained contact with class counsel over the course of this multi-year litigation"). Indeed, "courts in this circuit regularly grant service

awards of $10,000 or greater," *Caligiuri*, 855 F.3d at 867 (awarding $10,000 to each named plaintiff (citing *Buckley*, 847 F.3d at 941; *Zilhaver v. UnitedHealth Group, Inc.*, 646 F.Supp.2d 1075, 1085 (D. Minn. 2009) (awarding named plaintiffs $15,000 each from $17 million common fund))); *see also Lees*, 2015 WL 3645208, at *4 ($10,000 award); *Nobles v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 12616695, at *2 (W.D. Mo. Mar. 4, 2014) ($10,000 awards).

### B.    Mssrs. Rawa & Ravencamp

Rawa's and Ravencamp's requests for $5,000 service awards are also reasonable. It was Mr. Rawa's action that provided the forum for this settlement, and without his involvement, the matter was not likely to settle on a nationwide basis. Mr. Ravencamp was second to file his suit against Monsanto, after only Ms. Martin, and was the only other plaintiff to file prior to certification of the California class. Accordingly, incentive awards of $5,000 to plaintiffs Rawa and Ravencamp are fair and reasonable. *See Risch v. Natoli Eng'g Co., LLC*, 2012 WL 4357953, at *3 (E.D. Mo. Sept. 24, 2012) (Fleissig, J.) ($5,000 incentive award was "reasonable and appropriate" (citations omitted)); *Khaliki v. Helzberg's Diamond Shops, Inc.*, 2012 WL 12903778, at *2 (W.D. Mo. Mar. 9, 2012) (plaintiff was "deserving of" $5,000 award where "the effort the Named Plaintiff devoted to this matter contributed to the overall result and benefited the class" (citing *In re Aquila ERISA Litig.*, 2007 WL 4244994, at *3 (W.D. Mo. Nov. 29, 2007))); *Yarrington*, 697 F. Supp. 2d at 1069 (approving $5,000 awards "[i]n light of [plaintiffs'] considerable effort and risk undertaken to obtain the outstanding result for the Class"); *In re Employee Ben. Plans Sec. Litig.*, 1993 WL 330595, at *7 (D. Minn. June 2, 1993) ($5,000 award "appropriate" in recognition of "the public service they have rendered by seeking to enforce the . . . laws, and the benefit that they have conferred on a large class of purchasers"). Indeed, "the $5,000 payments requested here are at the modest end of the spectrum, especially considering the total amount of the [Common] Fund." *See Yarrington*, 697 F. Supp. 2d at 1069 (collecting cases

awarding between $5,000 and $15,000).

### C.    The Remaining Plaintiffs

The remaining plaintiffs' request for an even more modest $2,500 is similarly reasonable because the filing of their lawsuits provided further incentive for Monsanto to settle this action. *Compare Hashw*, 182 F. Supp. 3d at 952 (awarding $15,000 where "there is some indication that [plaintiff] participated in discovery, even though he was not deposed and there has been no specific accounting . . . of the time he devoted to this case"); *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 2012 WL 2512750, at *11. The Court should, accordingly, find an award of $2,500 is fair and reasonable for plaintiffs Ward, Davies, Abbott, Olson, Gilchrist, Sholar, Myers, Bear, and Overstreet. *See Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, 2013 WL 4855308, at *4 (E.D. Mo. Sept. 11, 2013) (Fleissig, J.) (awarding $2,500 incentive award); *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 220 (W.D. Mo. 2017) (same); *Thorkelson v. Publ'g House of the Evangelical Lutheran Church in Am.*, 2013 WL 12149693, at *3 (D. Minn. Apr. 8, 2013) (awarding $2,500 and $5,000 to plaintiffs "in recognition of [their] efforts . . . to gather and communicate information to counsel and act as the public face of the litigation").

Moreover, the total of all incentive awards, $42,500, constitutes less than 0.2% of the Common Fund, which further supports the reasonableness of the awards. *See Sauby v. City of Fargo*, 2009 WL 2168942, at *3 (D.N.D. July 16, 2009) (total incentive award of $15,000 was "fair, reasonable, and justified" where it constituted 1%[4] of $1.5 million class recovery).

### <u>CONCLUSION</u>

The Court should grant the Motion.

---

[4] The court incorrectly calculated that $15,000 was ".01 percent" of the $1.5 million common fund.

Dated: March 13, 2018                    Respectfully Submitted,

                              By:     */s/ Jack Fitzgerald*

                                      Jack Fitzgerald (*Pro Hac Vice*)
                                      *jack@jackfitzgeraldlaw.com*
                                      THE LAW OFFICE OF JACK FITZGERALD, PC
                                      Hillcrest Professional Building
                                      3636 Fourth Avenue, Suite 202
                                      San Diego, California 92103
                                      Phone: (619) 692-3840
                                      Fax: (619) 362-9555

                                      Sidney W. Jackson, III (*Pro Hac Vice*)
                                      *sid@jacksonfosterlaw.com*
                                      JACKSON & FOSTER, LLC
                                      75 St. Michael Street
                                      Mobile, Alabama 36602
                                      Phone: (251) 433-6699
                                      Fax: (251) 433-6127

                                      Kevin J. Dolley (# 54132MO)
                                      *kevin@dolleylaw.com*
                                      LAW OFFICES OF KEVIN J. DOLLEY, LLC
                                      2726 S. Brentwood Blvd.
                                      St. Louis, Missouri 63144
                                      Phone: (314) 645-4100
                                      Fax: (314) 736-6216
                                      (Local Counsel for Plaintiffs)

                                      ***Class Counsel***

## APPENDIX 1: DETAILED COSTS & EXPENSES

*The Law Office of Jack Fitzgerald*

| Date | Expense | Amount |
|---|---|---|
| 9/6/2016 | Home Depot – exemplar Roundup purchases | $260.16 |
| 10/13/2016 | Filing Fee – Martin v. Monsanto | $400.00 |
| 12/13/2016 | Payment to damages expert, Colin Weir | $650.00 |
| 4/5/2017 | Payment to State Bar of San Francisco for Jack Fitzgerald Certificates of Good Standing for use in Missouri Pro Hac Vice application | $25.00 |
| 1/17/2017 | Round Trip Flight to St. Louis for Monsanto 30(b)(6) Deposition | $671.87 |
| 1/26/2017 | Uber to airport for St. Louis trip | $7.13 |
| 1/26/2017 | The Counter - JF Breakfast at SAN for St. Louis Trip | $13.41 |
| 1/27/2017 | Ritz Carlton Hotel - JF Accommodations for Monsanto 30(b)(6) Deposition | $485.47 |
| 1/27/2017 | Sports Bar, STL Airport - JF Meal on Trip home from Monsanto 30(b)(6) Deposition | $34.00 |
| 1/28/2017 | JF Uber from Airport to Office, arriving home from Monsanto 30(b)(6) Deposition | $14.18 |
| 2/7/2017 | Check to Colin Weir for Consulting Work on Monsanto | $325.00 |
| 2/9/2017 | JF Parking at LAX to pick up Colin Weir for deposition | $7.00 |
| 2/10/2017 | Hilton LAX Bistro - JF Breakfast for Elisabeth Martin deposition | $12.23 |
| 2/10/2017 | Parking in Wells Fargo center, JF & SJ, Elisabeth Martin deposition | $42.00 |
| 2/11/2017 | Hilton LAX - JF room for Elisabeth Martin deposition | $269.35 |
| 3/9/2017 | Payment to TSG for Jim Guard deposition court reporter coverage | $4,899.45 |
| 3/9/2017 | Payment to TSG for Jim Guard videographer coverage | $1,235.00 |
| 4/5/2017 | Filing Fee – Rawa v. Monsanto | $400.00 |
| 4/10/2017 | Payment to Economics & Technology, Inc. for Colin Weir expert services | $44,290.68 |
| 4/12/2017 | JF PHV Fee - E.D. Mo. | $100.00 |
| 5/4/2017 | Check to NYS Clerk for TAC Certificate of Good Standing for Monsanto MO PHV | $5.00 |
| 5/10/2017 | TAC PHV Fee - E.D. Mo. | $100.00 |
| 5/22/2017 | Southwest - JF Flight to Chicago for Monsanto Mediation | $585.96 |
| 5/22/2017 | Southwest - MRP Flight to Chicago for Monsanto Mediation | $585.96 |
| 6/12/2017 | Wire transfer to JAMS for Judge Holderman Mediation June 21, 2017 | $10,775.00 |
| 6/20/2017 | Uber from Home to SAN for trip to Chicago for Monsanto mediation | $16.81 |
| 6/20/2017 | Uber from Midway to Palmer House for Monsanto mediation | $24.16 |
| 6/21/2017 | Hilton Palmer House - MRP Accommodation for Monsanto mediation | $362.77 |

| Date | Expense | Amount |
|------|---------|--------|
| 6/21/2017 | Reilly's Daughter, Chicago - Meal for JF & MRP returning after mediation | $52.49 |
| 6/22/2017 | JF Uber Home from SAN after mediation | $33.23 |
| 6/22/2017 | Hilton Palmer House - JF Accommodation for Monsanto mediation (including JF lunch and JF, SJ & MRP drinks after dinner) | $362.77 |
| 7/6/2017 | Southwest - JF flight to Chicago for Second Monsanto Mediation | $282.98 |
| 7/6/2017 | Hotel room for JF for Second Monsanto Mediation | $274.25 |
| 7/10/2017 | Rosebud Prime - Dinner for JF & SJ in Chicago night before second round mediation. | $168.00 |
| 7/10/2017 | Uber - JF ride from Midway to Hyatt Place for Monsanto 2nd round mediation | $28.08 |
| 7/11/2017 | White Sox Pub - JF dinner after Monsanto 2nd round mediation, before flight home | $26.28 |
| 7/11/2017 | Uber - JF ride from Chicago to Midway after Monsanto 2nd round mediation | $34.39 |
| 7/12/2017 | Uber - JF ride from SAN to office after Monsanto 2nd round mediation | $12.22 |
| 8/10/2017 | Check to JAMS for Monsanto mediation | $278.98 |
| 9/6/2017 | Check to Colin Weir for Invoice # 201706768 | $812.50 |
| 9/11/2017 | DTI - Transcript of Colin Weir deposition | $2,525.00 |
| 10/10/2017 | Check to JAMS for Judge Holderman's time resolving settlement agreement dispute. | $3,307.48 |
| 10/12/2017 | Check to Economics & Technology Inc. for Colin Weir services | $325.00 |
| 2/5/2018 | Check to DTI for Martin v. Monsanto deposition transcript. | $251.10 |
| 3/12/2018 | Southwest - JF flight to St. Louis for Final Approval Hearing | $203.98 |
| 3/13/2018 | Hotel room in St. Louis for Final Approval Hearing (Hilton) | $271.20 |
| 9/6/2016 | Deadlines - October 2016 - September 2017 | $180.00 |
| 10/18/2016 | AMS - total service fees for Martin & Rawa October 2016 - August 2017 | $5,136.46 |
| | Local Counsel Expenses | $2,765.00 |
| | **Subtotal =** | **$83,928.98** |

*Jackson & Foster, LLC*

| Date | Expense | Amount |
|------|---------|--------|
| 1/11/2017 | Air Travel to LA for Ms. Martin's Depo | $489.10 |
| 1/26/2017 | Air Travel to St. Louis for Mr. Guard's Depo | $427.00 |
| 1/26/2017 | Uber Technologies, Inc. Travel Expense LA Ms. Martin's Depo | $72.27 |
| 1/27/2017 | Mobile Airport Travel Expense LA Ms. Martin's Depo | $18.00 |
| 1/27/2017 | Ritz Carlton - St. Louis, MO Mr. Guard's Depo | $733.83 |
| 1/28/2017 | Ritz Carlton - St. Louis, MO Mr. Guard's depo | $42.84 |
| 1/28/2017 | United Airlines Travel Expense for Mr. Guard's Depo | $7.99 |
| 2/09/2017 | Travel Traders - Los Angeles Ms. Martin's Depo | $22.83 |

| Date | Expense | Amount |
|---|---|---|
| 2/11/2017 | Hilton Hotels LA Ms. Martin's depo | $427.32 |
| 2/11/2017 | Atlanta Airport Meal Ms. Martin's Depo | $40.02 |
| 2/11/2017 | Mobile Airport Parking Ms. Martin's Depo | $27.00 |
| 4/03/2017 | Home Depot purchased product | $155.84 |
| 4/17/2017 | Courts/USDC-MO-E Court filing fees PHV | $100.00 |
| 5/11/2017 | Law Offices of Kevin Dolley Attorney Fees | $1,000.00 |
| 5/24/2017 | Hampton Inns Ravencamp's Court hearing K.C., Mo. | $148.24 |
| 5/26/2017 | Agent Fee Air Travel | $35.00 |
| 5/26/2017 | Agent Fee Air Travel | $10.00 |
| 5/26/2017 | Travel Leader meet Rawa/ Court Hearing Ravencamp - Travel to MO | $1,119.60 |
| 6/04/2017 | Southwest Airlines Kansas City to St. Louis meeting with Rawa | $203.98 |
| 6/04/2017 | Hereford House for Ravencamp - Lodging | $77.24 |
| 6/05/2017 | BP gas for rental car - Ravencamp | $8.30 |
| 6/05/2017 | Twin Peaks meal for Ravencamp court | $27.51 |
| 6/05/2017 | Bristol meals meeting with Mr Rawa | $163.54 |
| 6/05/2017 | Bristol meals meeting with Mr Rawa | $26.13 |
| 6/05/2017 | Avis rental car meeting with Mr Rawa | $78.70 |
| 6/06/2017 | Hilton - Independence, MO Court Hearing Ravencamp | $148.12 |
| 6/07/2017 | Courtyard Marriott - St.Louis, MO meeting with Mr Rawa | $210.74 |
| 6/15/2017 | Focus Group - Roundup (California) Payment to participants | $825.00 |
| 6/16/2017 | Ashbury Hotel Focus Group Mobile, AL | $302.46 |
| 6/16/2017 | Ashbury Hotel Focus Group Mobile, AL | $28.31 |
| 6/20/2017 | Miller's Pub Chicago, IL Mediation meals | $121.48 |
| 6/22/2017 | Residence Inn Chicago Mediation | $621.25 |
| 6/22/2017 | UNITED Travel airfare for mediation Chicago, IL | $367.45 |
| 7/19/2017 | UNITED Travel Second Mediation Chicago, IL | $367.45 |
| 7/19/2017 | SW SBEIH COMPANY meal Chicago Second Mediation | $55.78 |
| 7/19/2017 | Mobile Airport Authority parking Chicago second mediation | $18.00 |
| 7/19/2017 | Residence Inn Chicago lodging second mediation | $339.29 |
| 7/19/2017 | Taxi Service Chicago | $49.15 |
| 7/19/2017 | Chilis Bar Chicago meal | $26.91 |
| 8/08/2017 | UA Inflt 0162921397306HOUSTTON TX | $15.98 |
| 8/08/2017 | AGENT FEE 8900714813907TRAVEL LEADERAL | $35.00 |
| 4/16/2018 | Air Travel to St. Louis for hearing | $576.00 |
| | Subtotal = | $9,570.65 |

*Shank & Moore, LLC*

| Date | Expense | Amount |
|---|---|---|
| 2/3/2018 | Roundup exemplar products purchased at Walmart | $78.22 |
| 2/9/2018 | Filing of the Petition | $114.63 |
| 4/05/2017 | Charges from Hatfield Process Service for service of Petition on Monsanto Co. | $77.00 |
| | Subtotal = | $269.85 |

*Rapier Law Firm*

| Date | Expense | Amount |
|------|---------|--------|
| 6/1/2017 | Filing Fee – Olson v. Monsanto Co., No. 17-cv-1333-STV (D. Colo) | $400 |
| | Pro Hac Vice admission, District of Colorado | $216 |
| | Subtotal = | **$616.00** |

*Finn & Yeoman*

| Date | Expense | Amount |
|------|---------|--------|
| 5/7/2017 | Travel to NC to meet with Clif Smith about case | $546.96 |
| 5/7/2017 | Renaissance Hotels Raleigh, NC | $493.38 |
| 5/22/2017 | Filing Fee - Abbott v. Monsanto Co., No. 3:17-cv-00315 (W.D. Ky.) | $400.00 |
| | Subtotal = | **$1,440.34** |

*Patrick Beard Schulman and Jacoway, PC*

| Date | Expense | Amount |
|------|---------|--------|
| 6/6/2017 | Filing Fee – Myers v. Monsanto, No. 17-cv-02045 (N.D. Ga.) | $400.00 |
| 6/14/2017 | Service Fees Atlanta Legal Services | $75.00 |
| 6/19/2017 | Filing Fee – Beard v. Monsanto, No. 17-cv-171-CLC (E.D. Tenn.) | $400.00 |
| 6/26/2017 | Service Fees Roger Clemens, Pl | $68.00 |
| 7/25/2017 | Court Electronic Records – Research | $45.10 |
| | Subtotal = | **$988.10** |

*McClain DeWees PLLC*

| Date | Expense | Amount |
|------|---------|--------|
| 6/2/2017 | Filing Fee – Sholar v. Monsanto, No. 17-cv-100-SEB (S.D. Ind.) | $400 |
| | Subtotal = | **$400.00** |

*Pritchett & Burch, PLLC*

| Date | Expense | Amount |
|------|---------|--------|
| 6/2/2017 | Filing Fee – Gilchrist v. Monsanto Co., No. 17-cv-00266-FL (E.D.N.C.) | $400 |
| | Subtotal = | **$400.00** |

| Firm | Subtotal |
|------|----------|
| The Law Office of Jack Fitzgerald, PC | $83,928.98 |
| Jackson & Foster, LLC | $9,570.65 |
| Shank & Moore, LLC | $269.85 |
| Rapier Law Firm | $616.00 |
| Finn & Yeoman | $1,440.34 |
| Patrick Beard Schulman and Jacoway, PC | $988.10 |
| McClain DeWees PLLC | $400.00 |

| | |
|---|---|
| Pritchett & Burch, PLLC | $400.00 |
| **Total =** | **$97,613.92** |