# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JOSHUA RAWA, ELISABETH MARTIN, ROBERT RAVENCAMP, AMY WARD, CYNTHIA DAVIES, CHRISTOPHER ABBOTT, OWEN OLSON, JEANNIE A. GILCHRIST, ZACHARY SHOLAR, MATTHEW MYERS, JOHN W. BEARD, JR., and MICHAEL OVERSTREET on behalf of themselves, all others similarly situated, and the general public,<br><br>        Plaintiffs,<br><br>    v.<br><br>MONSANTO COMPANY,<br><br>        Defendant | Case No. 4:17-cv-01252-AGF |

## OBJECTION OF JAMES MIGLIACCIO

**INTRODUCTION**

The gross $21.5 million settlement fund presented to this Court for final approval will net a nationwide class around $13 million after class counsels' proposed $7.1 million[1] in fees and approximately $1 million in administration expenses[2] are deducted. Whether based on the net or gross recovery, the settlement fund represents an amount less than the $22 million in damages of just the class members situated in the State of California. *See Martin v. Monsanto Co.*, No. 16-cv-2168-JFW, Declaration of Jack Fitzgerald in Support of Plaintiff's Motion for Class Certification, Doc. 51-3, at 23 (C.D. Cal.). Objector James Migliaccio falls within this group of California class members.

It appears class counsel settled for pennies on the dollar because they believed the case could not be certified on a nationwide basis. As class counsel noted, "Monsanto has expressed its intention to zealously oppose any attempts to certify a nationwide class outside the settlement context, and certification of nationwide consumer fraud classes has become at least extremely difficult and, in many cases, impossible." Doc. 42-1, at 10.

The Ninth Circuit Court of Appeals recently discussed the harm of certifying a settlement class without regard to varying state laws under these circumstances:

> If anything, this case highlights the reasons underlying *Amchem*'s warning that district courts must give "undiluted, even heightened, attention in the settlement context," to scrutinize proposed settlement classes. Because the district court made clear that it would be unlikely to certify the same class for litigation purposes, the class representatives were well aware that they would be unlikely to succeed in any efforts to certify a nationwide litigation class. Thus, by "permitting class designation despite the impossibility of litigation, both class counsel and court [were] disarmed." Hyundai and Kia knew that there was little risk that they

---

[1] Doc. 43-1 (requesting one-third of $21.5 million, which is $7.1 million).

[2] Doc. 32, at 7 ("Dahl designed the Notice Plan . . . and estimates notice and administration expenses will range from about $700,000 to $1.3 million for rates from about 2% to about 20%").

1

> would face a nationwide litigation class action if they did not reach a settlement agreement. Accordingly, "[c]lass counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer, and the court [faced] a bargain proffered for its approval without benefit of adversarial investigation."

*In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 702–03 (9th Cir. 2018) (citations omitted).

Despite serious questions concerning whether the nationwide class can or should be certified at all, class counsel seek to hasten approval with the hope that the Court will approve a payment of more than $7 million in attorneys' fees for less than a year's work. Class counsels' failure to provide this Court with any lodestar information, not to mention their advocacy against a lodestar cross-check, should raise grave concerns about the proposed plan.

Class counsel assert they have spent approximately 1,700 hours prosecuting the case (although no records were produced that would allow a determination of how much of that time relates to mediation and settlement as opposed to prosecuting the class action, and how much of it was reasonable and necessary). Dividing $7 million by 1,700 produces an average billing rate of $4,169 per hour. Even adding the 890 hours spent by attorneys in related litigation, the billing rate still amounts to $2,764 per hour. Suffice it to say, any type of lodestar cross-check will expose a substantial windfall.

The settlement class should not be certified based on the evidence currently before the Court. Further, the settlement is inadequate for the approximately 51,000 California members[3] like Mr. Migliaccio, who are positioned for a greater recovery than members from other states. Lumping California members with members of the remaining states marginalizes the California members' claims, and forces them to accept the already modest fund that will be divided by

---

[3] *Martin v. Monsanto Company*, 5:16-cv-02168, Memorandum in Support of Motion for Class Certification, Doc. 51-1, at 1 (Feb. 6, 2017).

millions more class members.

Even if this Court nevertheless certifies the settlement class and approves the settlement (which it should not), the requested $7.1 million attorneys' fee award should not be allowed without transparency on class counsels' lodestar in light of the mere months it took to achieve the settlement.

## STANDING AND OBJECTION PROCEDURES

Objector's full name, address, and telephone number are as follows: James Migliaccio, 6711 Abanto Street, Carlsbad, CA 92009, (619) 888-9997. Mr. Migliaccio is an individual who purchased Roundup Concentrate Plus and/or Roundup Super Concentrate in California during the class period—i.e., on or after October 13, 2012. Mr. Migliaccio repeatedly purchased these products for personal use—i.e., for his home gardening. *See* Declaration of James Migliaccio, Exhibit "1" hereto, incorporated by reference as though set forth in full. He recalls the packaging on the neck or shoulder of the bottles indicating that the bottle contents made up to a certain number of gallons. *Id.* He has not received a refund with respect to his purchases. *Id.* As such, Mr. Migliaccio is a class member as defined by the class notice and has standing to make this objection. Mr. Migliaccio filed a claim online on the settlement website (claim number 208986). *Id.* Attached hereto as Exhibit "1-A" is a true and correct copy of the confirmation page.

Objector is represented by local counsel, Pete Woods, Haar & Woods, LLP, 1010 Market Street, Suite 1620, Saint Louis, Missouri 63101. Mr. Woods intends to appear on behalf of Mr. Migliaccio at the fairness hearing. Objector is also represented by Christopher Bandas and Robert Clore of Bandas Law Firm, PC, as general counsel in objecting to the settlement. Counsel for the Bandas Law Firm do not presently intend on making an appearance, but reserve the right to do so.

The statement of the objections and the grounds therefore are set forth below. Objector also relies upon the documents contained in the Court's file in support of these objections. Objection is made to any procedures or requirements to object that require information or documents other than those that are contained herein on grounds that such requirements seek irrelevant information to the objections, are vague and unnecessary, are not adequately described in the class notice, are unduly burdensome, are calculated to drive down the number and quality of objections to the settlement and violate Objector's and counsel's due process rights and/or Rule 23. Objector incorporates by reference the arguments and authorities contained in other filed objections, if any, made in opposition to the fairness, reasonableness and adequacy of the proposed settlement, the adequacy of class counsel and to the proposed award of attorneys' fees and expenses to the extent that they are not inconsistent with the contents of Mr. Migliaccio's objection here.

## OBJECTIONS

### I.     The court should not certify the nationwide settlement class.

Even though Rule 23's class certification standards are heightened in the context of a settlement-only class certification, *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997), class counsel submitted essentially nothing for this Court to assure itself concerning a choice-of-law certification analysis or that common questions of law and fact predominate. FED. R. CIV. P. 23(b)(3). The primary cause of action in this nationwide class action is a state consumer law—the Missouri Merchandising Practices Act ("MMPA"). As a threshold matter, class counsels' motion for final approval does not even address whether the MMPA can be applied to the nationwide class or whether each state's law must be applied, whether conflicts in state laws preclude certification, or assuming the MMPA can be applied, whether common issues predominate.

"Although settlement is a relevant factor to consider, '[s]ettlement . . . does not inevitably

signal that class-action certification should be granted more readily than it would be were the case to be litigated." *Claxton v. Kum & Go, L.C.*, 6:14-CV-03385-MDH, 2015 WL 3648776, at *2 (W.D. Mo. June 11, 2015) (quoting *Amchem*, 521 U.S. at 620). "In fact, due to special problems encountered with settlement only classes, 'proposed settlement classes sometimes warrant more, not less, caution on the question of certification.'" *Id.* (quoting *Amchem*, 521 U.S. at 620 n.16).

The California action previously certified a statewide class in the *Martin* litigation (5:16-cv-02168-JFW-SP, Doc. 89), not a nationwide class. The *Martin* court analyzed the commonality of questions under California state law, including breach of warranty claims and violations of the California consumer protection and false advertising statutes. *Id.* at 8-9; *see also Claxton v. Kum & Go, L.C.*, 6:14-CV-03385-MDH, 2015 WL 3648776, at *4 (W.D. Mo. June 11, 2015) (certifying settlement class in order approving settlement in a statewide class action under the MMPA, finding factual and legal issues predominated over individual questions).

In light of the varying consumer protection laws among the different states in this nationwide class action, class counsel were right to be concerned about the viability of certification. *See generally* Michael B. Barnett, *The Plaintiffs' Bar Cannot Enforce the Laws: Individual Reliance Issues Prevent Consumer Protection Classes in the Eighth Circuit*, 75 MISS. L. REV. 207 (2010). Rule 23 "makes no reference to choice-of-law issues, but, in nationwide class actions, choice of-law constraints are constitutionally mandated because a party has a right to have her claims governed by the state law applicable to her particular case." *In re Prempro,* 230 F.R.D. 555, 562 (E.D. Ark. 2005); *see also Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 823 (1985). Thus, "an individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action." *In re St. Jude Med., Inc.,* 425 F.3d 1116, 1120 (8th Cir. 2005). If there is a conflict between state laws that could apply, a state's substantive law "must have a significant contact or

5

significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair ." *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312–13 (1981).

Further, "[n]o class action is proper unless all litigants are governed by the same legal rules." *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1015 (7th Cir. 2002). Indeed, "[i]f more than a few of the laws of the fifty states differ, [courts] would face an impossible task of instructing a jury on the relevant law, making class certification inappropriate." *True v. Conagra Foods, Inc.,* 07-00770-CV-W-DW, 2011 WL 176037, at *6 (W.D. Mo. Jan. 4, 2011) (quoting *Foster v. St. Jude Med., Inc.,* 229 F.R.D. 599, 605 (D. Minn. 2005)). The party seeking class certification bears the "burden of providing an extensive analysis of state law variations to determine whether there are insuperable obstacles to class certification." *Id.*

This Court applies Missouri's choice-of-law rules to determine the governing state law. *Stricker v. Union Planters Bank, N.A.,* 436 F.3d 875, 877–88 (8th Cir. 2006). In tort and contract actions, Missouri applies the most significant relationship test. *Horn v. B.A.S.S.,* 92 F.3d 609, 611 (8th Cir.1996). The most significant relationship test carries "a presumption that the state with the most significant relationship is the state where the injury occurred, absent an overriding interest of another state based on the factors articulated in section 6" of the Restatement (Second) of Conflict of Laws. *Wolfley v. Solectron USA, Inc.,* 541 F.3d 819, 823 (8th Cir.2008).

Here, it does not appear class counsel have offered any evidence to defeat the presumption that the law of each individual state should be applied, or for the application of Missouri law. So, the law of the state where each member resides would be applicable. *True v. Conagra Foods, Inc.,* 07-00770-CV-W-DW, 2011 WL 176037, at *8 (W.D. Mo. Jan. 4, 2011)*; see also In re Grand Theft Auto Video Game Consumer Litig.,* 251 F.R.D. 139, 146 (S.D.N.Y.2008).

The issue is then whether there is a conflict among the potential state laws. *True v. Conagra*

6

*Foods, Inc.*, 07-00770-CV-W-DW, 2011 WL 176037, at *8 (W.D. Mo. Jan. 4, 2011). "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996). Of course, "[v]ariations in state law do not necessarily preclude a 23(b)(3) action." *Hanlon*, 150 F.3d at 1022. However, where "the consumer-protection laws of the affected States vary in material ways, no common legal issues favor a class-action approach to resolving [a] dispute." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011).

There is little doubt that "there are significant differences among the States' consumer protection laws." *Thompson v. Jiffy Lube Int'l Inc.*, 250 F.R.D. 607, 625 (D. Kan. 2008).

> Some states require proof of scienter as an element of liability; many do not. Some require proof that the plaintiff relied upon the defendant's allegedly false or misleading representations or conduct, while others require no such proof, and the law of more than a few states is decidedly unsettled on that point. The amount of damages recoverable for a consumer protection violation varies from state to state.

*Id.*

Among other things, the states vary in their requirements related to reliance, and in the availability of damages. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th Cir. 2012) (discussing varying damages and relief available and that California consumer laws at issue have no scienter requirement, whereas many other states consumer protection statutes require scienter) (citing Colo. Rev. Stat. 6–1–105(1)(e), (g), (u) (knowingly); N.J. Stat. Ann. § 56:8–2 (knowledge and intent for omissions); *Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa.Super.2002) (knowledge or reckless disregard)).

Because application of the varying state laws would result in numerous conflicts, the settlement class should not be certified. Even if class counsel had made a showing that Missouri law applied, however, common questions of law and fact do not predominate. Missouri case law

7

does not require reliance to bring an action under the MMPA, *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo. App. 2006); still, some showing of causation (in which the issue of reliance would arise) is arguably required. *In re St. Jude Med., Inc.*, 522 F.3d 836, 839-40 (8th Cir. 2008) (reversing certification under a similar Minnesota statute based on defendants' individualized arguments of reliance or non-reliance). Individualized concerns of reliance or non-reliance on representations concerning the number of gallons of spray solution Monsanto's Roundup Concentrate Plus and Super Concentrate products made will necessarily swamp common issues. On the evidence before the Court, certification of this nationwide settlement class should not be granted.

**II.    Considering the California class damages were in excess of $22 million, the gross $21.5 million settlement to be divided among the 3.5 million member nationwide class renders the representation inadequate as to California members.**

In transferring the *Martin v. Monsanto Company* case to this Court, Judge Walter qualified his order by stating, "that if a proposed nationwide class settlement does not receive final approval, the parties shall stipulate to transfer back to this Court for all further pre-trial and trial proceedings." *Martin*, 5:16-cv-02168-JFW-SP, Doc. 108 (Aug. 23, 2017). Mr. Migliaccio urges that he and his fellow California members would be better served by that result.

The primary beneficiaries of aggregating the California claims with the nationwide class are class counsel (by facilitating a fee request of $7.1 million with a nationwide class), Ms. Martin (with a $10,000 service award), and Monsanto (by limiting its liability). The class was already successfully certified in California, with damages estimates for the 51,000 member class[4] in excess of $22 million. No. 16-cv-2168-JFW, Doc. 51-3, at 23. Instead of proceeding with those numbers

---

[4] *Martin*, 5:16-cv-02168, Doc. 51-1, at 1.

8

under robust California consumer laws,[5] Mr. Migliaccio and other California members have been thrown together in a pool of 3.5 million other class members, some of whom would be entitled to less or even no recovery under their respective state laws, to divide a net $13 million.

Rule 23(a)(4) and the Due Process Clause require that "the representative parties ... fairly and adequately protect the interests of the class," compelling the district court "to uncover conflicts of interest between named parties and the class they seek to represent," as well as the "competency and conflicts of class counsel." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 626 n. 20 (1997); *Nobles v. State Farm Mut. Auto. Ins. Co.*, 10-04175-CV-C-NKL, 2013 WL 12153517, at *6 (W.D. Mo. June 5, 2013) ("[t]he adequacy requirement is intended to guard against potential "conflicts of interest between named parties and the class they seek to represent"). "'It is no answer to say . . . that these conflicts may be ignored because the settlement makes no disparate allocation of resources as between the conflicting classes' for the 'very decision to treat them all the same is itself an allocation decision with results almost certainly different from the results that [the disparate claimants] would have chosen.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 232 (2d Cir. 2016) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 857 (1999)).

Class counsel appear to have sacrificed the interests of Mr. Migliaccio and other California members for their own gain, and as such are inadequate representatives under FED. R. CIV. P. 23(a)(4). *Williams v. BlueHippo Funding, LLC*, 4:07CV00662 SWW, 2008 WL 11346209, at *5 (E.D. Ark. July 15, 2008) ("the parties provide no independent representation for plaintiff

---

[5] California provides "among the strongest" consumer protection laws in the country. *Kreger v. Gen. Steel Corp.*, CIV.A. 07-575, 2010 WL 2902773, at *15 (E.D. La. July 19, 2010) (citing *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 110 Cal.Rptr.2d 145 (Cal.App.2001)); *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1080 (C.D. Cal. 2010) (discussing "California's robust consumer protection laws").

9

subgroups and no assurance that Williams is operating under a proper understanding of her representational responsibilities").

### III. This Court Should Not Approve the Administrator's Rewriting of the Settlement Agreement or the Class Notice.

As part of the settlement agreement, the parties agreed that "[e]ach household shall be limited to twenty (20) units purchased during the applicable statutory period, based on the Claimant's state or territory or residence." Doc. 32-1, at 11. The settlement further specified that the "[a]greement and any and all parts of it may be amended, modified, changed, or waived only by an express instrument in writing signed by the Parties." *Id.* at 16. In accordance with the agreement, the Class Notice advised class members that "[c]laims are limited to 20 units per household." Class Notice, at 1.

On March 21, 2018, in light of an excess of claims ($27 million as of a few weeks ago, Doc. 42-1, at 5) and concerns for fraud, the administrator advised that there would be new limitations for certain bottles. Doc. 44-1. According to the administrator, claims for the three most expensive products "represented a much greater percentage of bottles claimed than were actually sold during the claims period, and a much larger volume of Roundup than could be reasonably purchased by a consumer during the claim period." Doc. 44-1, at 2. The administrator therefore "excluded any claims over 18 bottles for Super Concentrate 53.7 oz, over 16 bottles for Super Concentrate 64 oz., and over 14 bottles for Super Concentrate 128 oz." *Id.* The administrator's new limitation is not in the settlement or class notice, and unfairly punishes members who purchased products above these amounts, but fell within the 20 bottle limit. Members who purchased up to 20 bottles should be entitled to the relief promised in the settlement and Class Notice. If a claim for the number of bottles between the 20 bottle limit and the new restrictions set by the administrator had been deemed fraudulent, then why did the parties agree to allow claims

10

for these purchases in the first place? Essentially, class counsel are asking that the administrator be permitted to rewrite the terms of the agreement. But, the parties should be held to the terms set forth in the settlement agreement and promised in the Class Notice; the administrator should not be permitted to unilaterally undo the agreement/promise. *See D.E.W., Inc.* v. *Local 93, Laborers' Int'l Union of N. Am.*, 957 F.2d 196, 200 (5th Cir. 1992) ("A court cannot disregard as surplusage the succeeding provisions of a contract; it must give effect to all."). Alternatively, the parties should execute an amended settlement and re-issue notice with an attendant objection procedure.

## IV. Some minimal lodestar disclosure should be required considering the brevity of the litigation relative to the $7.1 million fee request.

This Court should not indulge class counsels' request to award fees without any idea how much lodestar class counsel have invested in the case. As this Court has observed before, "[t]he starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate [ ]." *Risch v. Natoli Eng'g Co., LLC*, 4:11CV1621 AGF, 2012 WL 4357953, at *4 (E.D. Mo. Sept. 24, 2012) (quoting *Fish v. St. Cloud State Univ.,* 295 F.3d 849, 851 (8th Cir. 2002)).

Of course, the percentage of the fund method is appropriate for calculating fees from a common fund, and generally "awards in the range of 20 percent to 25 percent are reasonable." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999) (finding a 24 percent fee reasonable and citing the Report of the Third Circuit Task Force, 108 F.R.D. 237, 247 n.32 (3d Cir. 1985)). Still, a lodestar cross-check "is sometimes warranted to double-check the result of the 'percentage of the fund' method" where there is some indication that the award may be overly generous. *Petrovic*, 200 F.3d at 1157.

There is more than just an "indication" that $7.1 million in fees is overly generous here. If we assume an average billing rate of $400 per hour, class counsels' lodestar for 1,700 hours

11

(assuming all 1,700 hours were reasonable and necessary) would be $680,000. If that's true, class counsel are asking for more than ten times their lodestar, which is not just excessive, but unconscionable. *See Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 943 (D. Minn. 2016) (rejecting a request for 33% fees where the cross-check revealed a similar multiplier and instead awarding 20%).

Class counsels' $7.1 million request for less than a year of litigation calls for exercise of this Court's fiduciary duty to protect the interests of the absent class members through a lodestar cross-check. *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (court has a "fiduciary responsibility . . . when awarding attorney fees because often persons with small individual stakes will not file objections and the defendant who created the fund has little interest in how the fund is allocated between the class and class counsel") (citing *In re BankAmerica Corp. Sec. Litig.*, 228 F.Supp.2d 1061, 1064 (E.D.Mo.2002)); *see also In re Wireless Telephone Federal Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005) (courts must act "as a fiduciary, serving as a guardian of the rights of absent class members"). It should also be noted that Missouri law would appear to require a lodestar cross-check. *Bachman v. A.G. Edwards, Inc.*, 344 S.W.3d 260, 267 (Mo. Ct. App. 2011) (factors considered in awarding fees include the lodestar cross-check) (citing *Byrd*, 956 S.W.2d at 388; *In re Alcolac, Inc., Litigation*, 945 S.W.2d 459, 461 (Mo. App. W.D. 1997)).

### V. Even without class counsels' lodestar, the results do not support class counsels' proposed $7.1 million fee.

The relevant factors do not support class counsels' request for 33%. *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931 (8th Cir. 2007); *Johnson v. Georgia Highway Exp.*, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). The Court can't even consider the most important factor—the amount involved and the result obtained—because class counsel have not provided an estimate of the

12

damages sustained by the nationwide class. So, there is nothing against which the settlement results (a net benefit of around $13 million for the 3.5 million member class) can be compared.

On a macro scale, class counsels' insistence that the class members are getting a better result than what they could have achieved at trial is rank speculation. Doc. 42-1, at 10 ("claimants will obtain refunds likely exceeding what they could get at trial"). California class members alone are giving up $22 million in estimated damages for the $13 million net settlement. Even more so, the net recovery is some undefined miniscule percentage of the nationwide class damages.

Other factors weigh strongly against the proposed 33% fee. Class counsels' time and labor do not justify it. Class counsel chose not to disclose their lodestar, but it took them less than a year to reach settlement. Doc. 32, at 1, 5-6 (California litigation, transferred to this District, commenced on October, 13 2016, settlement negotiations started in June, 2017, and parties reached a tentative nationwide settlement in July, 2017); Doc. 32-1, at 17 (settlement formalized on October 4, 2017); *see Hashaw*, 182 F. Supp. 3d at 943 (declining to award 33% where the case was stayed for mediation approximately one year after it was filed and lodestar cross-check revealed a lodestar multiplier close to ten). That is far less than the average three years it takes to reach a class action settlement. Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards*, 7 JOURNAL OF EMPIRICAL LEGAL STUDIES 811, 820 (Dec. 2010). Class counsel declined to address the preclusion of other employment factor (Doc. 43-1, at 1 n..1) likely because the brevity of the litigation posed little to no impact on their securing other employment. And, class counsels' discussion of the "undesirability" of the case is laughable considering sixteen other firms brought virtually the same lawsuit in the related actions. Doc. 43-2, at 4.

The novelty and complexity of the litigation does not move the ball forward either. In the *Martin* litigation, Mr. Fitzgerald conceded that "[t]his is a straightforward . . . consumer fraud

13

action." *Martin*, No. 5:16-cv-02168-JFW (Doc. 51-1, at 1). Likewise, awards in similar cases do not justify the requested 33% fees either. Similar cases have produced fees in the 20% to 25% range. *See e.g., Kindler v. Mitsubishi Motors Credit of Am., Inc.*, 4:09-CV-00315-ODS, 2011 WL 13177287, at *4 (W.D. Mo. Apr. 20, 2011) (awarding 20% of a settlement fund in an MMPA class action settlement); *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (upholding award of 25% in a false advertising Magnum-Moss class action where the lodestar cross-check revealed a 2.7 multiplier). Indeed, empirical data shows mean and median fees for consumer class actions is 26% and 25%, respectively. *See* Theodore Eisenberg, Geoffrey P. Miller, Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 NEW YORK UNIV. L. REV. 937, 952 (Dec. 2016).[6]

The cases cited by class counsel with higher percentages are generally not MMPA class actions and involve far more protracted litigation with low lodestar multipliers. For example, a district court awarded a one-third fee of $2.1 million in *Barfield v. Sho-Me Power Elec. Co-op*, where class counsel expended 17,120 hours over multiple years with a lodestar of $7.6 million. 2:11-CV-4321NKL, 2015 WL 3460346, at *5 (W.D. Mo. June 1, 2015). Class counsel here worked one-tenth the number of hours but seek three times what the attorneys received in *Barfield*.

The *McKeage* opinion cited by class counsel (Doc. 43-1, at 3-5, 12) was actually reversed by the Eighth Circuit on fees (though not on the basis of the percentage awarded). *McKeage v. TMBC*, 847 F.3d 992, 997 (8th Cir. 2017). Still, the thirty-three percent award was for 6 ½ years of labor by class counsel with essentially no lodestar multiplier. *McKeage v. Bass Pro Outdoor World, L.L.C.*, 2015 WL 13637253, at *2 (W.D. Mo. Aug. 11, 2015). Class counsel cite an award of 34% of the fund available, but neglect to inform the Court that it amounted to 26% of the gross fund, the relevant figure here. *Lees v. Anthem Ins. Cos. Inc.*, 2015 WL 3645208, at *4 (E.D. Mo.

---

[6] Accessible at https://ssm.com/abstract=2904194.

14

June 10, 2015). Significantly, the court declined to award more in light of abbreviated litigation, and the fact that settlement discussions began around six months after the case was filed. *Id.* at *4; *see also Caligiuri v. Symantec Corp.*, 855 F.3d 860, 862, 865-66 (8th Cir. 2017) (affirming award of one-third where class counsel expended nearly 20,000 hours and the lodestar multiplier was below 2); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (upholding a one-third fee litigated between 2008 and 2015 with a 1.82 lodestar multiplier*); Wiles v. Sw. Bill Tel. Co.*, 09-4236-CV-C-NKL, 2011 WL 2416291, at *4 (W.D. Mo. June 9, 2011) (awarding a one-third fee in a case in which class counsel "expended tremendous time and energy" with a 2.3 lodestar multiplier); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, C 10-4038-MWB, 2011 WL 5547159, at *3 (N.D. Iowa Nov. 9, 2011) (in a case where class counsel achieved a settlement in excess of the value of damages estimated by the Department of Justice, the court awarded 36% where the lodestar cross-check revealed a 1.35 multiplier and the reported lodestar was "quite modest"); *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105, at *3, *8 (D. Minn. Sept. 18, 2006) (awarding 35.5% where class counsel devoted more than 30,0000 hours over four years).

Class counsel worked less than a year on this case, but ask for compensation comparable to attorneys who labored many times that long. To the extent the class is certified and the settlement is approved (which it should not be), this Court should limit class counsel to a reasonable fee commensurate with their lodestar, and under no circumstance in excess of 20%-25%.

## CONCLUSION

Objector requests that this Court not certify the class, find representation inadequate, and reject the settlement outright. In the alternative, Objector requests that the proposed award of attorneys' fees be rejected or, at minimum, substantially reduced.

DATED: March 27, 2018

Respectfully submitted,

**HAAR & WOODS, LLP**

*/s/ Peter C. Woods*
Peter C. Woods - #32132
1010 Market Street, Suite 1620
St. Louis, Missouri 63101
(314) 241-2224
(314) 241-2227 Fax
petewoods@haar-woods.com
*Attorneys for Objecting Class Member James Migliaccio*

### Certificate of Service

The undersigned certifies that today he filed the foregoing objection and associated exhibits on ECF which will send electronic notification to all attorneys registered for ECF thus effectuating service. The undersigned further certifies he caused to be served via USPS First Class Mail, postage prepaid, a copy of this Objection and associated exhibits upon the following.

DATED: March 27, 2018

Class Counsel
Jack Fitzgerald
The Law Office of Jack Fitzgerald, PC
3636 4th Ave., Ste. 202
San Diego, CA 92103

Class Counsel
Sidney W. Jackson, III
Jackson & Foster LLC
75 St. Michael Street
Mobile, AL 36602

Defense Counsel
John Rosenthal
Winston & Strawn LLP
1700 K Street, N.W.
Washington, DC 20006

*/s/ Peter C. Woods*
Peter C. Woods