**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| JOSHUA RAWA, ELISABETH MARTIN, ROBERT RAVENCAMP, AMY WARD, CYNTHIA DAVIES, CHRISTOPHER ABBOTT, OWEN OLSON, JEANNIE A. GILCHRIST, ZACHARY SHOLAR, MATTHEW MYERS, JOHN W. BEARD, JR., and MICHAEL OVERSTREET on behalf of themselves, all others similarly situated, and the general public, | |
| | Case No.: 4:17-cv-01252-AGF |
| Plaintiffs, | |
| v. | |
| MONSANTO COMPANY, | |
| Defendant. | |

**MONSANTO COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION**
**FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Monsanto Company ("Monsanto") submits this opposition to Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards (Dkt. 43).  With respect to attorneys' fees, Monsanto agrees that Class Counsel is entitled to reasonable attorneys' fees from the common fund, but supports an award of no more than the standard 25% of the class fund amount.

While there are some circumstances that could increase that percentage in certain cases, Monsanto does not believe those circumstances are present here.  The vast majority of the time spent by Class Counsel was limited to the confines of a single case; in aggregate, only two factual and two expert depositions were conducted; no case saw any significant hearings or proceedings; and the number of hours spent on the case was relatively low.  For these reasons, an

award of attorneys' fees of not more than 25% of the class fund is reasonable and well in line with established precedent.[1]

## ARGUMENT

### A.  Twenty-Five Percent of the Common Fund Is the Standard Fee Award

Monsanto recognizes that the Settlement Agreement negotiated by Class Counsel obtains a very good result for the class, without risking further expense to either side.  Class Counsel was able to obtain this settlement within a year after filing the initial complaint in California, and spending 1,703 hours on the case to date, which included only two fact depositions, two expert depositions, and no major hearings or proceedings.  *See* Decl. of Jack Fitzgerald ("Fitzgerald Decl."), Dkt. 43-2 at 3–4; Settlement Agreement, Dkt. 32-1 (dated Oct. 4, 2017); Class Action Compl., *Martin v. Monsanto*, No. 5:16-cv-2168 (C.D. Cal. Oct. 13, 2016), ECF No. 1.

For these successful efforts, Monsanto supports Class Counsel receiving 25% of the common fund, $5,375,000.  A 25% fee award in the context of a common-fund settlement is a standard percentage awarded for common-fund class actions.  *Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1157 (8th Cir. 1999) (citing *Court Awarded Attorneys Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 247 n. 32 (3d Cir. 1985) (suggesting that awards in the range of 20 percent to 25 percent are reasonable)); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig*., 364 F. Supp. 2d 980, 989 (D. Minn. 2005) (awarding 25% to firms that spent 10,402 hours over two and a half years in the more complex securities part of the class action); *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate

---

[1] Monsanto also reviewed Class Counsel's declaration regarding costs and service awards of $97,613.92 and $42,500, respectively.  Dkt. 43-2.  Monsanto believes these costs and awards are reasonable and supported by law. *See* Memorandum in Support of Plaintiff's Motion for Attorneys; Fees, Costs, and Service Awards, Dkt. 43-1, Parts III–IV, at 12–15.

explanation in the record of any 'special circumstances' justifying a departure."); *McLaughlin on Class Actions* § 6:24 & n.99 (14th ed.) ("Many courts have recognized 25% of a common fund recovery as a benchmark against which the reasonableness of a fee application may be measured regardless of the method employed"); *Manual on Complex Litigation* § 14.121 (4th ed.) ("25% of a common fund represents a typical benchmark"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("[I]n common fund cases, the 'benchmark' award is 25 percent of the recovery obtained."); *see also Petrovic*, 200 F.3d at 1157 (finding a fee of 24% to be reasonable); *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (affirming 25% of the settlement fund as reasonable attorneys' fees). The standard percentage should be awarded here.

## B.  A Fee Award Beyond Twenty-Five Percent Is Not Warranted

"A reasonable attorney's fee is one that is 'adequate to attract competent counsel that does not produce windfalls to attorneys.'" *Video Software Dealers Ass'n v. Webster*, 817 F. Supp. 808, 810 (W.D. Mo. 1993) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (stating same). To aid courts in determining the reasonableness of the amount of attorneys' fees awarded, the Eighth Circuit uses a 12-factor test, which includes:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the attorney's preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 944 n.3 (8th Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). Courts do not have to review every factor, and no one factor is determinative. *See Keil*, 862 F.3d at 703. A brief review of

each factor will show that any award beyond 25% would result in an unreasonable windfall for Class Counsel in this case.

### 1.  The Time and Labor Required

In national consumer class actions, 25% of the common fund is the usual benchmark. Courts generally only depart from the 25% benchmark when attorneys have spent many years and multiple thousands of hours pursuing complex cases.  *See, e.g.*, *McKeage v. Bass Pro Outdoor World, L.L.C.*, 2015 WL 13637253, at *5 (W.D. Mo. Aug. 11, 2015) (awarding 33% while noting that "[P]laintiffs have spent the past six and a half years pursuing this litigation"), *rev'd and remanded on other grounds sub nom. McKeage v. TMBC, LLC*, 847 F.3d 992 (8th Cir. 2017).[2]

While a great result was achieved for the Class, Class Counsel spent a comparatively low 1,703 hours on the case.  *See* Fitzgerald Decl., Dkt. 43-2 at 3–4.  The vast majority of that time was confined to a single case, which took only a year from the date of filing to a signed settlement agreement.  *See* Settlement Agreement, Dkt. 32-1 (dated Oct. 4, 2017); Class Action

---

[2] *See also Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105, at *5, 8 (D. Minn. Sept. 18, 2006) (awarding 35.5% of a common fund where class counsel spent over "30,000 hours investigating and prosecuting the Title VII sex discrimination claims over a four-year period" without "assistance from the EEOC," and where counsel "demonstrated considerable skill and determination"); *Bachman v. A.G. Edwards, Inc.*, 344 S.W.3d 260, 266–67 (Mo. Ct. App. 2011) (awarding 1/3 of common fund where the "litigation leading up to settlement lasted nearly five years," was "procedurally and substantively complex," and dealt with the nuanced field of securities law); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1059 (D. Minn. 2010) (awarding 33% after "extensively litigat[ing] over the past five years" a "complex" case concerning hormone-replacement therapy drugs and expending over 5,453 hours); *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 429 (Mo. 2013) (affirming as appropriate an award representing 25% of the total potential value, and then multiplying that amount by 2.6, in an over-five-year case where 7,910 attorney hours were devoted to the case); *Barfield v. Sho-Me Power Elec. Co-op.*, 2015 WL 3460346, at *5 (W.D. Mo. June 1, 2015) (awarding 33% of the common fund where counsel provided 17,120 hours of legal services); *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016) (noting that the 33.3% was given after over 7,000 documented hours on the case spanning approximately eight years), *aff'd sub nom. Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017) (affirming the percentage of attorneys' fees while noting that the "case has been ongoing since 2008 and has included extensive motion practice, discovery, and settlement negotiations"); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017) (awarding 33% where "Plaintiffs' counsel [had] expended nearly 20,000 hours"); *see also Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 950–51 (D. Minn. 2016) (finding that where a TCPA class action "involved some motion practice… did not raise overly complex legal issues... and therefore did not necessitate a large time commitment by counsel," the requested award of 33% was reduced to 20%).

Compl., *Martin v. Monsanto*, No. 5:16-cv-2168 (C.D. Cal. Oct. 13, 2016), ECF No. 1.  That one case, *Martin*, contained only two fact and two expert depositions.  Apart from those four depositions, no other depositions of any kind occurred in this or any related case.  Moreover, the case was quickly resolved after the class certification phase in *Martin*, without any other major motions requiring briefing or argument in any of the matters, including motions for summary judgment.  In fact, none of the other cases beyond *Martin* even progressed to the point of document discovery and/or depositions.  The time and labor required for this case thus falls well short of other instances where courts have awarded up to a third of the common fund as attorneys' fees.[3]

### 2.   The Novelty and Difficulty of the Questions

Class Counsel avers that this case "involved a number of difficult questions," but in its brief presents only one purported difficulty: the damages model.  Dkt. 43-1 at 7–8.  But Class Counsel did not mention that the judge considering class certification thought the damages model was "simplistic" and merely represented an "adequate" measure of classwide damages.  *Martin v. Monsanto Co*., 2017 WL 1115167, at *8 (C.D. Cal. Mar. 24, 2017).

Class Counsel attempts to prop up its damages theory as especially innovative or unique by citing to an unrelated case where different attorneys unsuccessfully attempted to use the same damages theory.  Dkt. 43-1 at 7.  The poor utilization by different attorneys is not remotely persuasive, especially since those attorneys did not allege "that they *received* less [product] than expected; rather, they allege[d] that [the product] did not *perform* as expected."  *In re 5-Hour*

---

[3] Conspicuously, Class Counsel claims that this factor deserves less or no weight in this case, but cites no cases from any court in the Eighth Circuit to support this odd assertion.  *See* Dkt. 43-1 at 6–7.  Yet, many of the in-circuit cases Class Counsel cites for support elsewhere in its brief expressly rely on this time-and-labor-required factor as key in evaluating the reasonableness of attorneys' fees.  *E.g.*, *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (listing time and labor as one of five relevant factors); *Caliguiri v. Symantec Corp*., 855 F.3d 860, 866 (8th Cir. 2017) (listing it as one of seven relevant factors); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig*., 364 F. Supp. 2d 980, 993 (D. Minn. 2005) (one of seven factors considered).

*Energy Mktg. & Sales Practices Litig.*, 2017 WL 2559615, at *11 (C.D. Cal. June 7, 2017) (emphases added).  Clearly, the theories of the cases were inapposite, and the viability of the damages model cannot reasonably be compared between the two disparate theories of fault.[4]

Where a false advertising class action allegation is unexceptional with regard to the novelty and difficulty of the questions involved, courts regularly find that 25% of the common fund is a reasonable amount.  *See, e.g.*, *Mason v. Heel, Inc.*, 2014 WL 1664271, at *9 (S.D. Cal. Mar. 13, 2014) (holding that 25% of the common fund in a false advertising case was reasonable).  Consequently, this factor does not weigh in favor of granting a higher percentage award.

### 3.  The Skill Requisite to Perform the Legal Service Properly

To substantiate Class Counsel's claim that their exceptional skill warrants a higher percentage award, they point to their compliance with the local rules of the Central District of California, obtaining certification within 90 days.  Dkt. 43-1 at 11.  Monsanto acknowledges that Class Counsel is certainly competent and obtained a good result for the class, but merely following the rules of the Court cannot be considered an exceptional skill.

To justify an above-benchmark award under this factor, it must be reasoned that Class Counsel was in some way more outstanding than most capable and successful counsel. Otherwise, this factor would always necessitate a greater-than-usual award for any attorney who prevails.  Similarly, since counsel must be competent and have sufficient skill in order to be appointed to represent the class, something more is needed for this factor.  Other than obtaining a substantial settlement, Class Counsel has not provided any justification as to why their skill

---

[4] Moreover, if, *arguendo*, any difficult questions were in fact present, they have already been properly attributed and reflected in expert witness fees, which make up over half of Class Counsel's submitted costs.  *See* Fitzgerald Decl., Dkt. 43-2 at 5.

warrants more than other successful class counsel.  Accordingly, this factor does not weigh in favor of granting a higher percentage award.

### 4.   The Attorney's Preclusion of Other Employment

While Class Counsel specifically chose not to address this factor (*see* Dkt. 43-1 at 6 n.1), a search on Westlaw of the cases where Mr. Fitzgerald appeared as counsel and where a court order of some sort was issued revealed at least 14 cases since October 13, 2016, the date this case was filed.[5]   Most of these cases were against sophisticated and well-known national brands. Based on this search, it does not appear that this case significantly precluded Mr. Fitzgerald or his firm from pursuing other litigation.  And when viewed in combination with the 1,703 total hours Class Counsel has spent on this case, it seems even less likely that the pursuit of this case precluded Class Counsel from pursuing other cases.  Therefore, this factor should also not be used as justification of a higher award.

### 5.   The Customary Fee

Class Counsel states that 33% of the common fund is the customary fee in the Eighth Circuit, based on other select cases awarding that amount.  *See* Dkt. 43-1 at 6 n.1.  But these cases are inapposite for the same reasons Monsanto presented above: Those cases involved litigating complex securities and other complex class actions, and involved a substantial number of years and an extraordinary number of hours.  Thus, it cannot be said that those cases are the

---

[5] *Becerra v. Coca-Cola Co.*, 2018 WL 1070823 (N.D. Cal. Feb. 27, 2018); *Boswell v. Costco Wholesale Corp.*, 2017 WL 2727769 (C.D. Cal. Jan. 19, 2017); *Brower v. Campbell Soup Co.*, 243 F. Supp. 3d 1124 (S.D. Cal. 2017), *appeal dismissed*, 2017 WL 4349372 (9th Cir. Sept. 6, 2017); *Claiborne v. Church & Dwight Co.*, 2017 WL 5256752 (S.D. Cal. Nov. 13, 2017); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017); *Jones v. Nutiva, Inc.*, 2017 WL 4680076 (N.D. Cal. Oct. 18, 2017); *Hunter v. Nature's Way Prod., LLC*, 2018 WL 340233 (S.D. Cal. Jan. 9, 2018); *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017); *Martin v. Sanmedica Int'l, LLC*, 2017 WL 5479616 (C.D. Cal. Jan. 12, 2017); *Martin v. Tradewinds Beverage Co.*, 2017 WL 1712533 (C.D. Cal. Apr. 27, 2017), *granting reconsideration*, 2018 WL 313123 (C.D. Cal. Jan. 4, 2018); *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 2017 WL 1174739 (S.D. Cal. Mar. 29, 2017); *Passelaigue v. Getty Images (US), Inc.*, 2018 WL 1156011 (S.D.N.Y. Mar. 1, 2018); *Tracton v. Viva Labs, Inc.*, 2017 WL 4125053 (S.D. Cal. Sept. 18, 2017); *Zemola v. Carrington Tea Co., LLC*, 2017 WL 4922974 (S.D. Cal. Oct. 30, 2017).

applicable custom.  And Class Counsel makes no other effort to explain the how this factor is otherwise applicable, effectively waiving this factor.

### 6.   Whether the Fee Is Fixed or Contingent

Class Counsel relies on two cases to support the reasonableness of its fee request under this factor.  Dkt. 43-1 at 8.  The first, *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), is inapplicable to Class Counsel's percentage-of-the-fund argument because it only references reasonable attorneys' fees under 42 U.S.C. § 1988, which the Supreme Court has repeatedly stated is best determined using the lodestar method.  *E.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Perdue*, 559 U.S. at 551 (also disfavoring the 12-factor *Johnson* method).  The *Jones* case, therefore, cannot give any guidance on whether to enhance a percentage-of-the-fund award.

The second cited case, *Gilbert v. City of Little Rock, Ark.*, 867 F.2d 1063 (8th Cir. 1989), is also inapplicable for several reasons.  First, *Gilbert* also calculated a lodestar amount, not a percentage-of-the-fund amount.  *Gilbert*, 867 F.2d at 1067.  Second, *Gilbert* goes squarely against Class Counsel's other arguments, holding that other factors, like the "'novelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award." *Id.*  And third, *Gilbert* restated Eighth Circuit precedent that required an applicant for attorneys' fees to "demonstrate that enhancement is necessary to attract competent local counsel in light of the risk of loss."  *Gilbert*, 867 F.2d at 1068.  Only after such evidence was presented did the court find that a 10% enhancement of the lodestar amount was proper.  *Id.*  Plus, even if there were evidence here to support an increase in fees based on the contingent fee, the difference

from 25% to 33% of the common fund is not a mere 10% increase, but a far more significant 32% increase.

In addition, this factor is "judged from the attorney's fee expectations when [s]he accepted the case." *Johnson v. Ga. Highway Exp., Inc*., 488 F.2d 714, 718 (5th Cir. 1974). In the Ninth Circuit, where this case was brought, 25% is the clear standard for attorneys' fees. *E.g.*, *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002). Accordingly, when Class Counsel accepted the case, the reasonable expectation for fees would have been 25% of the common fund.

### 7. Time Limitations Imposed by the Client or the Circumstances

Class Counsel chose to file the first case in the Central District of California well aware of its local rules and 90-day class certification timeline. Essentially, Class Counsel now argues that Judge Walter's reputed enforcement of the local rules merits a significant increase in the percentage of the common fund awarded. The necessary implication of Class Counsel's argument is that if a plaintiff's counsel voluntarily files cases before a district or a judge known to have strict timelines, counsel can benefit from higher fees.

Of course, that is not the case. *Johnson* explained this factor as "[p]riority work that delays the lawyer's other legal work is entitled to some premium." *Johnson*, 488 F.2d at 718; *see also Klinger v. Neb. Dep't of Corr. Servs*., 909 F. Supp. 1329, 1338–39 (D. Neb. 1995), *vacated on other grounds sub nom. Klinger v. Dep't of Corr*., 107 F.3d 609 (8th Cir. 1997) (properly applying this factor when "counsel's other legal work was seriously delayed or redistributed in order to give priority to this case" and the "liability trial was uniquely intensive in terms of length of trial days, number and management of exhibits, orchestration of inmate and

corrections witnesses").  Nothing was offered by Class Counsel to suggest that this case delayed any other work.  Accordingly, this factor does not weigh in favor of an increased fee.

### 8.  The Amount Involved and the Results Obtained

Again, Monsanto recognizes that the Settlement Agreement negotiated by Class Counsel obtains a very good result for the class.  As of today, there have been approximately $10.73 million in valid claims made against the common fund.  Class Counsel should be compensated for this settlement.  But as discussed, given all of the other factors, there is no reason to increase the percentage above the standard 25%.

### 9.  The Experience, Reputation, and Ability of the Attorneys

Class Counsel conflates having sufficient and substantial experience to be appointed Class Counsel in the first place with extra skill or experience.  Being appointed class counsel cannot be enough to allow for incentives, or else all class counsel would receive above 25%. Instead, class counsel must demonstrate a special skill needed to properly prosecute this case. *Cf. Johnson*, 488 F.2d at 719 (providing as an example for this factor how an "attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others").  Thus, this factor does not weigh in favor of an increased fee in this case.

### 10. The Undesirability of the Case

This factor, as presented in *Johnson*, dealt with the economic impact of taking on a sometimes-unpopular case, like eradicating discrimination, where community biases could lead to financial hardships.  *Johnson*, 488 F.2d at 719.  There is no such element here, nor does Class Counsel claim that there is.  Instead, Class Counsel infers that the complexity or viability of the legal theory made the case undesirable, but if that were a consideration in this factor, then it

would merely repeat and multiply other factors, such as the novelty and difficulty of the question involved and/or the skill needed to litigate the case.

In fact, no reason was offered as to why the firms that purportedly passed on pursuing the case did so.  *See* Fitzgerald Decl. ¶ 20, Dkt. 43-2 at 7.  Moreover, several similar cases were in fact later filed by other firms throughout the country.  As such, this factor does not weigh in favor of an increased fee.

### 11. The Nature and Length of the Relationship with the Client

Class Counsel makes no argument here, and admits that no preexisting relationship existed. Fitzgerald Decl. ¶ 21, Dkt. 43-2 at 8; Dkt. 43-1 at 11.  Thus, Class Counsel implicitly admits that this factor does not weigh in favor of an increased fee.

### 12. Awards in Similar Cases

Class Counsel broadly points to the cases it cited, presumably noting similarity merely because those cases also had a common fund.  Dkt. 43-1 at 6 n.1 (referencing pp. 4–6).  But Class Counsel has not identified a single Missouri Merchandising Practices Act (MMPA) case where a similar award was given.  Thus, there is no precedent for an increased award in an MMPA case such as this one.

### C.  Class Counsel Should Provide Information for a Lodestar Cross-Check

The Court has complete discretion to compare the reasonableness of a percentage-of-recovery approach by cross-checking it with a lodestar calculation, and indeed this has become common practice.[6]  When hours spent on a case are comparatively low, the lodestar method or

---

[6] *E.g.*, *Johnston v. Comerica Mortg. Corp*., 83 F.3d 241, 246 (8th Cir. 1996); *Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1157 (8th Cir. 1999) ("[U]se of the 'lodestar' approach is sometimes warranted to double-check the result of the 'percentage of the fund' method."); *Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969, 975 (8th Cir. 2016) ("Frequently, the court may find it useful to 'double-check' the fee using both methods [the lodestar method and the percentage-of-benefit method].."); *Caligiuri v. Symantec Corp*., 855 F.3d 860, 866 (8th Cir. 2017) (citing *Petrovic* and noting, with approval, that the court below "verified the reasonableness of the award by cross-checking it against the lodestar method"); *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011)

cross-check is all the more prudent.  *E.g.*, *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 950 (D. Minn. 2016) ("[H]ere the percentage approach 'would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage' accordingly." (quoting *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *7 (N.D. Cal. Aug. 29, 2014)).  But while Class Counsel offered to submit detailed billing records (Dkt. 43-1 at 9), it has not done so.  To ensure that a percentage-of-recovery method does not result in an excessive windfall, this Court should request that information and either employ the lodestar method, or use it to cross-check the appropriate percentage.

## CONCLUSION

Monsanto believes that Class Counsel is legally entitled to reasonable attorneys' fees, but that only 25% of the common fund is proper, warranted, and reasonable.

Dated: March 27, 2018                          Respectfully submitted,

                                               HUSCH BLACKWELL LLP

                                               By: /s/ Erik L. Hansell
                                                    Erik L. Hansell, #51288MO
                                                    190 Carondelet Plaza, Suite 600
                                                    St. Louis, Missouri 63105
                                                    314-480-1500 (telephone)
                                                    314-480-1505 (facsimile)
                                                    Erik.hansell@huschblackwell.com

---

("[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead."); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (using lodestar to decrease an award from 25% to 4%; also generally discussing settlements, risk, and other duplicative factors within percentage-of-funds awards); 2 McLaughlin on Class Actions § 6:24 & n.112 (14th ed.) ("In furtherance of the objective of ensuring a reasonable figure in relation to the benefit obtained for the class, even if the percentage of recovery method is used, circuit courts encourage the practice of requiring documentation of hours as a 'cross-check' on the reasonableness of the requested percentage"; also collecting national cases in the corresponding footnote); *see also Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 429 (Mo. 2013) (en banc) (in an MMPA action, turning to a lodestar analysis to find a "reasonable" amount of attorneys' fees); *Claxton v. Kum & Go, L.C.*, 2015 WL 3648776, at *5 n.5 (W.D. Mo. June 11, 2015) (using a lodestar calculation in an MMPA class action to determine the reasonableness of attorneys' fees).

John Rosenthal (*pro hac vice*)
Winston & Strawn LLP
1700 K Street, N.W.
Washington, DC 20006
202-282-5000 (telephone)
202-282-5100 (facsimile)
jrosenthal@winston.com

*Attorneys for Defendant Monsanto Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 27th day of March, 2018, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, Eastern Division, and was served by operation of that Court's electronic filing system, upon the following:

John Joseph Fitzgerald, IV
jack@jackfitzgeraldlaw.com
THE LAW OFFICE OF JACK FITZGERALD, PC
Hillcrest Professional Building
3636 Fourth Ave., Suite 202
San Diego, California 92103

Kevin J. Dolley
kevin@dolleylaw.com
LAW OFFICES OF KEVIN J. DOLLEY, LLC
2726 S. Brentwood Boulevard
St. Louis, Missouri 63144

Sidney Warren Jackson, III
sid@jacksonfosterlaw.com
JACKSON AND FOSTER, LLC
75 St. Michael Street
Mobile, Alabama 36602

*Attorneys for Plaintiffs*

/s/ Erik L. Hansell