UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JOSHUA RAWA, ELISABETH MARTIN, ROBERT RAVENCAMP, AMY WARD, CYNTHIA DAVIES, CHRISTOPHER ABBOTT, OWEN OLSON, JEANNIE A. GILCHRIST, ZACHARY SHOLAR, MATTHEW MYERS, JOHN W. BEARD, JR., and MICHAEL OVERSTREET on behalf of themselves, all others similarly situated, and the general public,<br><br>        Plaintiffs,<br>  v.<br><br>MONSANTO COMPANY,<br><br>        Defendant. | Case No.: 4:17-cv-01252-AGF |

## MONSANTO COMPANY'S RESPONSE TO OBJECTION OF JAMES MIGLIACCIO

Monsanto Company ("Monsanto") has expended significant time and resources to reach an acceptable nationwide settlement with Class Counsel. *See* Med.'s Decl. by Ret. J. James F. Holderman, Dkt. 32-2. This settlement represents Monsanto's best and final offer. In the event that this settlement is not approved, Monsanto is fully prepared to zealously litigate this matter. Such a result should not be necessary, though, given the parties' hard-fought efforts to reach a settlement that is fair, adequate, and reasonable. *See In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 699 (E.D. Mo. 2002) ("In assessing whether the proposed settlement protects the interests of absent class members, the Court must determine whether the proposed settlement is fair, adequate and reasonable."). Thus, as described in Plaintiffs' Motion for Final Approval of Nationwide Class Action Settlement (Dkt. 42-1), and in Plaintiffs' Response to Objections (Dkt.

49), this Court should enter an order granting final approval of the parties' nationwide settlement, and reject the objection of James Migliaccio.[1]

Migliccio's objections should be rejected for the following reasons.

***First, a nationwide settlement class is appropriate.*** To be clear, Monsanto agrees with Migliaccio that, had this case been *tried*, serious questions would arise about the manageability of a nationwide class. Migliaccio Obj., Dkt. 46 at 5–7. But, given the uncertainty of the outcome at *trial*, a *settlement* is often, as here, a superior result for all the parties. Accordingly, courts have applied different standards when considering whether to approve classes at *trial* versus in a *settlement*.

The Eighth Circuit recently addressed the different standards for settlement and litigation classes in *Keil v. Lopez*, 862 F.3d 685, 695 (8th Cir. 2017). In *Keil*, the appellate court considered the very same objection raised here: that a settlement did not account "for the varying strengths of different states' unfair trade practice statutes." *Id.* Like the objector in *Keil*, Migliaccio "argues that residents of states with strong consumer protection laws should receive greater benefits under the settlement because they would have recovered more money than residents of states with weaker consumer protection laws." *Id.* at 698–99. The Eighth Circuit flatly rejected that objection on the merits, not only concluding that nothing stood for "the proposition that settlement agreements must account for differences in state law," but also noting that "[i]t is an inherent feature of the class-action device that individual class members will often

---

[1] Monsanto takes no position on the objection of Patrick Sweeney, which only objects to the amount of attorneys' fees. (Dkt. 48). As to attorneys' fees, Class Counsel is entitled to reasonable attorneys' fees from the common fund, but Monsanto does not support an award of more than the standard 25% of the class fund amount. *See* Monsanto Co.'s Opp'n to Pls.' Mot. for Att'ys' Fees, Costs, and Serv. Awards, Dkt. 47.

claim differing amounts of damages." *Id.* at 700 (quoting *Marshall v. Nat'l Football League*, 787 F.3d 502, 520 (8th Cir. 2015)).[2]

The Eighth Circuit also recognized that the manageability risk associated with trial "weighed in favor of approving a settlement." *Id.* at 696 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). Indeed, upon "weighing the uncertainty of relief against the immediate benefit provided in the settlement," the Eighth Circuit concluded "that this factor weighs in favor of approving the settlement." *Id.* at 697.

The Eighth Circuit's opinion applies here. The settlement provides substantial benefits to class members nationwide, while the alternative would be to file, at a minimum, scores of cases. Those multiple cases would waste judicial resources, compel Monsanto to protracted and costly litigation, compel Class Counsel to also spend vast amounts of time and resources to fully pursue this case, and could easily lead to inconsistent results. In contrast to this disparate process, which would increase costs for all parties and reduce class members' damages, a nationwide settlement provides a practical solution for the timely resolution of the identical issues and evidence common and predominating across the settlement class.

---

[2] Contrary to Migliaccio's arguments, the Ninth Circuit also agrees with the Eighth Circuit. Migliaccio misconstrues *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679 (9th Cir. 2018), to suggest that class certification would not be possible in any context. But the key issue in *In re Hyundai* was whether the settlement class should have included "used car owners without analyzing whether these class members were exposed to, and therefore could have relied on Hyundai's and Kia's misleading statements." *Id.* at 703; *see also id.* at 705 (citing to *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 (1997), for the proposition that "factual differences among class members, such as the ways that class members were exposed to asbestos and the length of those exposures, translated into significant legal differences, thereby defeating predominance for a settlement class"). In a three-year advertising campaign for "41 different Hyundai models and 35 different Kia models," the appellate panel was essentially troubled that so many products and persons were shoved into a class where there was no "evidence in the record regarding the extent of the advertising campaign" to show common exposure to a uniform advertisement. *Id.* at 704. In contrast, here, there are not 76 different car models with an uncertain advertising campaign. Rather, there was one uniform advertisement on two products to which all purchasers were exposed. In such a case, the Ninth Circuit would likely apply its rationale from *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998), in which it found that a "common nucleus of facts and potential legal remedies dominates this litigation," and that "although some class members may possess slightly differing remedies based on state statute or common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification." Here, just as in *Hanlon*, "the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims." *Id.* at 1022–23.

***Second, California class members are not prejudiced by the settlement.*** Under the terms of the settlement, California class members will be paid the full amount of their valid claims (50 percent of the price of each product purchased)—the same as class members who reside in other states, which is a greater percentage than Plaintiffs were seeking in their complaint. And no class member had to take a pro rata reduction. Thus, in contrast to the cases Migliaccio cites, here, the California class members' interests are not at odds with the interests of other class members. Accordingly, the fact that California class members are treated the same as class members who reside in other states should not affect the approval of this settlement. *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 207 (W.D. Mo. 2017) ("There are no apparent conflicts of interests between the class representatives and settlement class members or among individual settlement class members. There is no indication any of the class representatives were antagonistic to the other members of the classes or did not vigorously pursue the claims.").

***Third, the Settlement Administrator has appropriately eliminated fraudulent claims.*** Dahl Administration ("Dahl") acted within the authority it was granted under the settlement agreement to identify and eliminate fraudulent claims. *See* Settlement Agreement, Dkt. 32-1 at 17 ("[t]he Claims Administrator shall retain sole discretion in accepting or rejecting the Claim Form.").³ Courts have long trusted class action settlement claim administrators to, like Dahl,

---

³ In addition, other parts of the settlement documents expressly empower Dahl to evaluate and exclude claims. For example, the "Definitions" in the settlement agreement clearly state that an "'Authorized Claimant' means any Claimant who has timely and completely submitted *a Claim Form that has been reviewed and validated by the Claims Administrator*." Settlement Agreement, Dkt. 32-1 at 8 (emphasis added). Further, the settlement agreement provides that "[t]he Claims Administrator shall assist with various administrative tasks, including, without limitation: . . . viii. *Receiving and processing Claims* and distributing payments to Class Members; and ix. Otherwise *assisting with administration of the Settlement*." *Id.* at 16 (emphasis added). Moreover, to submit a claim, a claimant must complete a claim form. *See* Notice of Class Action Settlement, Dkt. 32-1 at 29. Directly above the signature line on the claim form, claimants are explicitly instructed to affirm that they "understand that *the Settlement Administrator has authority to review claims for validity, completeness, and potential mistake or fraud*,

4

identify and eliminate fraud. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 667 (7th Cir. 2015) ("[Courts] can rely, as they have for decades, on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court to take into account the size of the claims, the cost of the techniques, and an empirical assessment of the likelihood of fraud or inaccuracy."). Migliaccio has cited no case law to challenge Dahl's authority to eliminate fraudulent claims.

Moreover, far from "rewriting" the settlement agreement, as Migliaccio contends, Dahl operated strictly within the terms of the settlement agreement. The settlement agreement provides that "[e]ach household shall be limited to twenty (20) units purchased during the applicable statutory period." Settlement Agreement, Dkt. 32-1 at 17. Yet, the settlement agreement does not specify that all claims for up to twenty units will be approved. Rather, the settlement agreement (and common sense) provides that claimants are only entitled to claim up to twenty units that were actually purchased. *Id.* at 8 ("'Authorized Claimant' means any Claimant who has timely and completely submitted a Claim Form that has been reviewed and validated by the Claims Administrator."). Dahl exercised its authority under the settlement agreement to approve claims of up to twenty bottles of most products, while invalidating certain implausibly large claims. Under Dahl's administration of the settlement, claimants are still permitted to claim up to twenty bottles of most Roundup® Weed & Grass Killer—just not when doing so is entirely implausible. Accordingly, for five out of the eight products, claimants could receive compensation for up to twenty bottles.

---

and to request additional information from Claimants to assist in validating claims." Claim Form, Dkt. 32-1 at 45 (emphasis added).

It is noteworthy that no claimant whose implausible claim was invalidated by Dahl has objected to this settlement. This is very likely because they were trying to make fraudulent claims.

***Fourth, Migliaccio lacks standing to challenge Dahl's administration of the settlement because he will be compensated in full***. Migliaccio lacks standing to challenge Dahl's administration of the settlement because he is not affected by the steps Dahl took to eliminate fraud. In particular, Migliaccio, who objects to Dahl's curtailing of implausible claims, claimed five 53.7 oz. bottles of Super Concentrate, which means he will be fully compensated according to the terms of the settlement agreement. Thus, because Migliaccio is not among the group of individuals affected by Dahl's invalidation of the implausible claims, he lacks Article III standing under the U.S. Constitution to challenge the practice. *Huyer v. Van de Voorde*, 847 F.3d 983, 987 (8th Cir. 2017) (holding that "class members lack standing to appeal aspects of a class action settlement that do not adversely affect their own interests.").

***Fifth, there were minuscule objections to this settlement.*** Only two individuals have objected to the terms of the settlement, constituting an exceedingly small percentage of the over 70,000 individuals who have made valid claims. *See* Ness Suppl. Decl., Dkt. 44-1 at 2. And, as Plaintiffs' described, both of the Objectors are among the most prolific serial objectors in the country. *See Persons*, SERIAL OBJECTOR INDEX, https://www.serialobjector.com/persons (last visited Apr. 5, 2018). Courts often discount the objections of such serial objectors. *See Retta v. Millennium Prods.*, 2017 WL 5479637, at *7 (C.D. Cal. Aug. 22, 2017) ("Courts in the Ninth Circuit have routinely discounted objections from such 'professional' objectors.").

Accordingly, considering the minuscule number of objections and the apparent motivations of the objectors, the negligible level of opposition weighs in favor of approving the

settlement. *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("[T]he district court must consider . . . the amount of opposition to the settlement." (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)))

## CONCLUSION

For the reasons stated above, this Court should overrule the objections of James Migliaccio and grant final approval of the settlement.

Dated: April 9, 2018

Respectfully submitted,

HUSCH BLACKWELL LLP

By: /s/ Erik L. Hansell
    Erik L. Hansell, #51288MO
    190 Carondelet Plaza, Suite 600
    St. Louis, Missouri 63105
    314-480-1500 (telephone)
    314-480-1505 (facsimile)
    Erik.hansell@huschblackwell.com

    John Rosenthal (*pro hac vice*)
    WINSTON & STRAWN LLP
    1700 K Street, N.W.
    Washington, D.C. 20006
    202-282-5000 (telephone)
    202-282-5100 (facsimile)
    jrosenthal@winston.com

    *Attorneys for Defendant Monsanto Company*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of April, 2018, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, Eastern Division, and was served by operation of that Court's electronic filing system, upon the following:

John Joseph Fitzgerald, IV
jack@jackfitzgeraldlaw.com
The Law Office of Jack Fitzgerald, PC
Hillcrest Professional Building
3636 Fourth Ave., Suite 202
San Diego, California 92103

Kevin J. Dolley
kevin@dolleylaw.com
Law Offices of Kevin J. Dolley, LLC
2726 S. Brentwood Boulevard
St. Louis, Missouri 63144

Sidney Warren Jackson, III
sid@jacksonfosterlaw.com
Jackson and Foster, LLC
75 St. Michael Street
Mobile, Alabama 36602

*Attorneys for Plaintiffs*

Peter C. Woods
edmofiling@haar-woods.com
Haar and Woods, LLP
1010 Market Street, Suite 1620
St. Louis, MO 63101

*Attorney for Objector James Migliaccio*

The undersigned hereby certifies that on the 9th day of April, 2018, the foregoing was mailed by United States Postal Service to the following non-participant in Electronic Case Filing:

Patrick Sweeney
6666 Odana Rd.
Suite 116
Madison, WI 53719

/s/ Erik L. Hansell